1  ELECTRONIC FRONTIER FOUNDATION
   CINDY COHN (145997)
2  cindy@eff.org
   LEE TIEN (148216)
3  tien@eff.org
   KURT OPSAHL (191303)
4  kurt@eff.org
   KEVIN S. BANKSTON (217026)
5  bankston@eff.org                    TRABER & VOORHEES
   CORYNNE MCSHERRY (221504)           BERT VOORHEES (137623)
6  corynne@eff.org                     bv@tvlegal.com
   JAMES S. TYRE (083117)              THERESA M. TRABER (116305)
7  jstyre@eff.org                      tmt@tvlegal.com
   454 Shotwell Street                 128 North Fair Oaks Avenue, Suite 204
8  San Francisco, CA  94110            Pasadena, CA  91103
   Telephone:  415/436-9333            Telephone:  626/585-9611
9  415/436-9993 (fax)                  626/ 577-7079 (fax)

10  Attorneys for Plaintiffs

11  [Additional counsel appear on signature page.]

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14

15  TASH HEPTING, GREGORY HICKS,         )  No. C-06-0672-JCS
    CAROLYN JEWEL and ERIK KNUTZEN on    )
16  Behalf of Themselves and All Others Similarly )  CLASS ACTION
    Situated,                            )
17                                       )  AMENDED COMPLAINT FOR DAMAGES,
                           Plaintiffs,   )  DECLARATORY AND INJUNCTIVE
18                                       )  RELIEF
            vs.                          )
19                                       )
    AT&T CORP., AT&T INC. and DOES 1-20, )
20  inclusive,                           )
                                         )
21                         Defendants.   )  DEMAND FOR JURY TRIAL
                                         )
22  _____  )

23

24

25

26

27

28

1.      Plaintiffs, by and through their attorneys, bring this action on behalf of themselves and all others similarly situated, and allege upon personal knowledge and belief as to their own acts, and upon information and belief (based on the investigation of counsel) as to all other matters, as to which allegations Plaintiffs believe substantial evidentiary support exists or will exist after a reasonable opportunity for further investigation and discovery, as follows:

## PRELIMINARY STATEMENT

2.      This case challenges the legality of Defendants' participation in a secret and illegal government program to intercept and analyze vast quantities of Americans' telephone and Internet communications, surveillance done without the authorization of a court and in violation of federal electronic surveillance and telecommunications statutes, as well as the First and Fourth Amendments to the United States Constitution.

3.      In December of 2005, the press revealed that the government had instituted a comprehensive and warrantless electronic surveillance program that violates the Constitution and ignores the careful safeguards set forth by Congress.  This surveillance program, purportedly authorized by the President at least as early as 2001 and primarily undertaken by the National Security Agency ("NSA") without judicial review or approval, intercepts and analyzes the communications of millions of Americans.  Prior to this revelation, Plaintiffs and class members had no reasonable opportunity to discover the existence of the surveillance program or the violations of law alleged herein.

4.      But the government did not act – and is not acting – alone.  The government requires the collaboration of major telecommunications companies to implement its unprecedented and illegal domestic spying program.

5.      Defendants AT&T Corp. and AT&T Inc. maintain domestic telecommunications facilities over which millions of Americans' telephone and Internet communications pass every day.

AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF –
C-06-0672-JCS                                                                                          - 1 -

1  They also manage some of the largest databases in the world containing records of most or all

2  communications made through their myriad telecommunications services.

3         6.     On information and belief, AT&T Corp. has opened its key telecommunications

4  facilities and databases to direct access by the NSA and/or other government agencies, intercepting

5  and disclosing to the government the contents of its customers' communications as well as detailed

6  communications records about millions of its customers, including Plaintiffs and class members.

7         7.     This collaboration began before AT&T Corp. was acquired by AT&T Inc. (formerly

8  known as SBC Communications, Inc.).  On information and belief, Defendants continue to assist the

9  government in its secret surveillance of millions of ordinary Americans.

10        8.     Plaintiffs are suing to stop this illegal conduct and hold Defendants responsible for

11 their illegal collaboration in the surveillance program, which has violated the law and damaged the

12 fundamental freedoms of the American public.

13                              **JURISDICTION AND VENUE**

14        9.     This court has subject matter jurisdiction over the federal claims pursuant to Article

15 III of the United States Constitution and 28 U.S.C. §1331, 28 U.S.C. §2201, 50 U.S.C. §1810, 18

16 U.S.C. §§2520 and 2707, and 47 U.S.C. §605, and over the state claims pursuant to 28 U.S.C.

17 §§1332 and 1367.

18        10.    Plaintiffs are informed, believe and thereon allege that Defendants have sufficient

19 contacts with this district generally and, in particular, with the events herein alleged, that Defendants

20 are subject to the exercise of jurisdiction of this court over the person of such Defendants and that

21 venue is proper in this judicial district pursuant to 28 U.S.C. §1391.

22        11.    Plaintiffs are informed, believe and thereon allege that, based on the places of

23 business of the Defendants identified above and/or on the national reach of Defendants, a substantial

part of the events giving rise to the claims herein alleged occurred in this district and that Defendants and/or agents of Defendants may be found in this district.

12. **Intradistrict Assignment**: Assignment to the San Francisco/Oakland division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events and omissions giving rise to this lawsuit occurred in this district and division.

## PARTIES

13. Plaintiff Tash Hepting, a customer service manager, is an individual residing in San Jose, California. Hepting has been a subscriber and user of AT&T Corp.'s residential long distance telephone service since at least June 2004, and has used it to call internationally as well as domestically.

14. Plaintiff Gregory Hicks is an individual residing in San Jose, California. Hicks, a retired Naval Officer and systems engineer, has been a subscriber and user of AT&T Corp.'s residential long distance telephone service since February 1995. He has regularly used this service for calls to foreign countries including Korea, Japan and Spain.

15. Plaintiff Carolyn Jewel is an individual residing in Petaluma, California. Jewel, a database administrator and author, has been a subscriber and user of AT&T Corp.'s Worldnet dial-up Internet service since approximately June 2000. She uses this service for web browsing and to send and receive email, including with correspondents in foreign countries such as England, Germany, and Indonesia.

16. Plaintiff Erik Knutzen is an individual residing in Los Angeles, California. Knutzen, a photographer and land use researcher, was a subscriber and user of AT&T Corp.'s Worldnet dial-up Internet service from at least October 2003 until May 2005. He used this service to send and receive personal and professional emails, with both domestic and international correspondents, and for web browsing, including visits to web sites hosted outside of the United States.

AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF –
C-06-0672-JCS                                                                                    - 3 -

17.     Defendant AT&T Corp. is a New York corporation with its principal place of business in the State of New Jersey.

18.     Defendant AT&T Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas.

19.     Both AT&T Corp. and AT&T Inc. are telecommunications carriers, and both offer electronic communications service(s) to the public and remote computing service(s).

20.     On or around November 18, 2005, SBC Communications Inc. (SBC) acquired AT&T Corp.  At closing, a wholly-owned subsidiary of SBC merged with and into AT&T Corp., and thus AT&T Corp. became a wholly-owned subsidiary of SBC.  SBC adopted AT&T, Inc. as its name following completion of its acquisition of AT&T Corp.

21.     Prior to the acquisition and merger, AT&T Corp. and SBC both had a significant business presence in California for many years.  The new AT&T Inc. and its subsidiary, AT&T Corp., continue to have a significant business presence in California.

22.     AT&T Corp. operates through two principal divisions, its business services division and its consumer services division.  AT&T Business Services provides a variety of communications services to domestic and multi-national businesses and government agencies.  AT&T Consumer Services provides a variety of communications services to mass-market customers.  These services include traditional long distance voice services such as domestic and international dial and toll-free services, as well as operator-assisted services.  In addition, AT&T Consumer Services provides residential dial-up and DSL Internet services through its "Worldnet" service, as well as offering all-distance services, which bundle AT&T's facilities-based long distance services with local services.

23.     AT&T Corp.'s communications facilities constitute one of the world's most advanced communications networks, spanning more than 50 countries.

24.     By the end of 2004, on an average business day, AT&T Corp.'s network handled over 300 million voice calls as well as over 4,000 terabytes (million megabytes) of data, including traffic from AT&T Business Services and AT&T Consumer Services, approximately 200 times the amount of data contained in all the books in the Library of Congress.

25.     By the end of 2004, AT&T Corp. provided long distance service (including both stand-alone and bundled) to approximately 24.6 million residential customers.   Before the acquisition, AT&T Corp.'s bundled local and long distance service was available in 46 states, covering more than 73 million households.

26.     By the end of 2004, AT&T Corp. provided its residential Worldnet Internet services to approximately 1.2 million customers.  Even prior to its being acquired by SBC, AT&T Corp. was the second largest Internet provider in the country, primarily serving businesses in addition to its Worldnet customers.

27.     The new AT&T Inc. constitutes the largest telecommunications provider in the United States and one of the largest in the world.  AT&T Inc. is the largest U.S. provider of both local and long distance services, serving millions of customers nationwide.   AT&T Inc.'s international voice service carries more than 18 billion minutes per year, reaching approximately 240 countries, linking approximately 400 carriers and offering remote access in approximately 149 countries around the globe.

28.     AT&T Inc. is the country's largest provider of broadband DSL Internet service, and its backbone Internet network carries approximately 4,600 terabytes of data on an average business day to nearly every continent and country.

29.     According to the *Description of the Transaction, Public Interest Showing, and Related Demonstrations* filed by AT&T Corp. and SBC with the Federal Communications Commission in anticipation of the merger:

AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF –
C-06-0672-JCS                                                                                                    - 5 -

1

AT&T is a significant provider of telecommunications and information technology services to the federal government. AT&T provides network services, systems integration and engineering, and software development services to a broad range of government agencies, including those involved in national defense, intelligence, and homeland security. AT&T's federal customers include the White House, the State Department, the Department of Homeland Security, the Department of Defense, the Department of Justice, and most branches of the armed forces. AT&T's support of the intelligence and defense communities includes the performance of various classified contracts. To undertake this work, AT&T employs thousands of individuals who hold government security clearances, and it maintains special secure facilities for the performance of classified work and the safeguarding of classified information. In addition to providing services to critical government agencies responsible for national security, both AT&T and SBC support the national security infrastructure through their participation in all of the key fora for supporting U.S. government national security objectives.

30.    On information and belief, this characterization was substantially correct when filed, and is substantially correct as to the current AT&T Corp. and AT&T Inc.

31.    Plaintiffs are currently unaware of the true names and capacities of Defendants sued herein as Does 1-20, and therefore sue these Defendants by using fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Upon information and belief each fictitiously named Defendant is responsible in some manner for the occurrences herein alleged and the injuries to Plaintiffs and class members herein alleged were proximately caused in relation to the conduct of Does 1-20 as well as the named Defendants. Hereafter, Defendants AT&T Corp. and Does 1-8 are referred to collectively as "AT&T Corp.," and Defendants AT&T Inc. and Does 9-15 are referred to collectively as "AT&T Inc."

## FACTUAL ALLEGATIONS RELATED TO ALL COUNTS

### THE NSA SURVEILLANCE PROGRAM

32.    The NSA began a classified surveillance program ("the Program") shortly after September 11, 2001 to intercept the telephone and Internet communications of people inside the United States without judicial authorization, a program that continues to this day.

33. The President has stated that he authorized the Program in 2001, that he has reauthorized the Program more than 30 times since its inception, and that he intends to continue doing so.

34. The Attorney General has admitted that, absent additional authority from Congress, the electronic surveillance conducted by the Program requires a court order under the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. §§1801, *et seq*.).

35. The President and other government officials have admitted that the NSA does not seek judicial review of the Program's interceptions before or after the surveillance, whether by the Foreign Intelligence Surveillance Court or any other court.

36. Neither the President nor the Attorney General personally approves the individual targets of the Program's electronic surveillance before communications are intercepted.

37. Instead, NSA operational personnel identify particular persons, telephone numbers or Internet addresses as potential surveillance targets, and NSA shift supervisors approve those targets.

38. On information and belief, besides actually eavesdropping on specific conversations, NSA personnel have intercepted large volumes of domestic and international telephone and Internet traffic in search of patterns of interest, in what has been described in press reports as a large "data-mining" program.

39. On information and belief, as part of this data-mining program, the NSA intercepts millions of communications made or received by people inside the United States, and uses powerful computers to scan their contents for particular names, numbers, words or phrases.

40. Additionally, on information and belief, the NSA collects and analyzes a vast amount of communications traffic data to identify persons whose communications patterns the government believes may link them, even if indirectly, to investigatory targets.

41.     On information and belief, the NSA has accomplished its massive surveillance operation by arranging with some of the nation's largest telecommunications companies, including Defendants, to gain direct access to the telephone and Internet communications transmitted via those companies' domestic telecommunications facilities, and to those companies' records pertaining to the communications they transmit.

**AT&T PROVIDES THE GOVERNMENT WITH DIRECT
ACCESS TO ITS DOMESTIC TELECOMMUNICATIONS NETWORK**

42.     On information and belief, AT&T Corp. has provided and continues to provide the government with direct access to all or a substantial number of the communications transmitted through its key domestic telecommunications facilities, including direct access to streams of domestic, international and foreign telephone and Internet communications.

43.     On information and belief, AT&T Corp. has installed and used, or assisted government agents in installing or using, interception devices and pen registers and/or trap and trace devices on or in a number of its key telecommunications facilities for use in the Program.

44.     On information and belief, the interception devices acquire the content of all or a substantial number of the wire or electronic communications transferred through the AT&T Corp. facilities where they have been installed.

45.     On information and belief, the pen registers and/or trap and trace devices capture, record or decode the dialing, routing, addressing and/or signaling information ("DRAS information") for all or a substantial number of the wire or electronic communications transferred through the AT&T Corp. facilities where they have been installed.

46.     On information and belief, using these devices, government agents have acquired and are acquiring wire or electronic communications content and DRAS information directly via remote or local control of the device, and/or AT&T Corp. has disclosed and is disclosing those

communications and information to the government after interception, capture, recording or decoding.

47.     On information and belief, AT&T Corp. used or assisted in the use of these devices to acquire wire or electronic communications to which Plaintiffs and class members were a party, and to acquire DRAS information pertaining to those communications.  On information and belief, Defendants continue to do so.

### AT&T HAS PROVIDED AND CONTINUES TO PROVIDE THE GOVERNMENT WITH DIRECT ACCESS TO DATABASES CONTAINING ITS STORED TELEPHONE AND INTERNET RECORDS

48.     Defendants AT&T Corp. and AT&T Inc. have provided at all relevant times and continue to provide electronic communication services to the public, *i.e*., services that provide to users thereof the ability to send or receive wire or electronic communications.

49.     Defendants AT&T Corp. and AT&T Inc. have provided at all relevant times and continue to provide computer or storage processing services to the public, by means of wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and/or by means of computer facilities or related electronic equipment for the electronic storage of such communications.

50.     Plaintiffs and class members are, or at pertinent times were, subscribers to or customers of one or more of those services.

51.     On information and belief, AT&T Corp. has provided and continues to provide the government with direct access to its databases of stored telephone and Internet records, which are updated with new information in real time or near-real time.

52.     On information and belief, AT&T Corp. has disclosed and is currently disclosing to the government records concerning communications to which Plaintiffs and class members were a party, and there is a strong likelihood that Defendants will disclose more of the same in the future.

53.     As reported by the Los Angeles Times, "AT&T has a database code-named Daytona that keeps track of telephone numbers on both ends of calls as well as the duration of all land-line calls. . . .  After Sept. 11, intelligence agencies began to view it as a potential investigative tool, and the NSA has had a direct hookup into the database. . . ."  Joseph Menn and Josh Meyer, *U.S. Spying is Much Wider, Some Suspect*, L.A. TIMES, Dec. 25, 2005, at A1.  On information and belief, this report is substantially correct.

54.     Daytona is a database management technology originally developed and maintained by the AT&T Laboratories division of AT&T Corp., and is used by AT&T Corp. to manage multiple databases.

55.     Daytona was designed to handle very large databases and is used to manage "Hawkeye," AT&T Corp.'s call detail record ("CDR") database, which contains records of nearly every telephone communication carried over its domestic network since approximately 2001, records that include the originating and terminating telephone numbers and the time and length for each call.

56.     On information and belief, this CDR database contains records pertaining to Plaintiffs' and class members' use of AT&T Corp. long distance service and dial-up Internet service, including but not limited to DRAS information and personally identifiable customer proprietary network information (CPNI) that AT&T Corp. obtained by virtue of its provision of telecommunications service.

57.     As of September 2005, all of the CDR data managed by Daytona, when uncompressed, totaled more than 312 terabytes.

58.     The Daytona system's speed and powerful query language allow users to quickly and easily search the entire contents of a database to find records that match simple or complex search parameters.  For example, a Daytona user can query the Hawkeye database for all calls made to a

particular country from a specific area code during a specific month and receive information about all such calls in about one minute.

59.     Daytona is also used to manage AT&T Corp.'s huge network-security database, known as Aurora, which has been used to store Internet traffic data since approximately 2003.  The Aurora database contains huge amounts of data acquired by firewalls, routers, honeypots and other devices on AT&T Corp.'s global IP (Internet Protocol) network and other networks connected to AT&T Corp.'s network, including but not limited to DRAS information and personally identifiable CPNI that AT&T Corp. obtained by virtue of its provision of telecommunications service.

60.     On information and belief, the Aurora database managed and/or accessed via Daytona contains records or other information, including but not limited to DRAS information and CPNI, pertaining to Plaintiffs' and class members' use of AT&T Corp.'s Internet services.

61.     On information and belief, AT&T Corp. has provided the government with direct access to the contents of the Hawkeye, Aurora and/or other databases that it manages using Daytona, including all information, records, DRAS information and CPNI pertaining to Plaintiffs and class members, by providing the government with copies of the information in the databases and/or by giving the government access to Daytona's querying capabilities and/or some other technology enabling the government agents to search the databases' contents.

62.     AT&T Inc. has begun a transition process designed to integrate the former SBC's telecommunications network with AT&T Corp.'s network, ultimately leading into unified IP-based networks.  AT&T Inc. intends to use AT&T Corp.'s IP network in place of the fee-based transiting and backbone access arrangements it currently has with third parties.  In addition, others aspects of both companies will be integrated.  For example, SBC Laboratories and AT&T Laboratories will be combined into AT&T Labs to provide technology research and development exclusively to the subsidiaries of AT&T Inc.

63.     On information and belief, the facilities and technologies of AT&T Corp, including without limitation the Daytona system and those transmission facilities to which the government has been given direct access as alleged above, are being or will imminently be used by AT&T Inc. to transmit the communications of its customers and to store DRAS information and other records pertaining to those communications.  Similarly, the facilities and technologies of the former SBC are being or will imminently be used to transmit the communications of AT&T Corp. customers including Plaintiffs and class members.

64.     On information and belief, there is a strong likelihood that Defendants will continue to intentionally intercept, disclose, divulge and use Plaintiffs' and class members' communications and records in cooperation with the Program.

## CLASS ACTION ALLEGATIONS

65.     Pursuant to Federal Rules of Civil Procedure, Rule 23 (a) and (b), Plaintiffs Hepting, Hicks, Jewel and Knutzen bring this action on behalf of themselves and a Nationwide Class of similarly situated persons defined as:

> All individuals in the United States that are current residential subscribers or customers of Defendants' telephone services or Internet services, or that were residential telephone or Internet subscribers or customers at any time after September 2001.

66.     The Nationwide Class seeks certification of claims for declaratory relief, injunctive relief and damages pursuant to 50 U.S.C. §1810, 18 U.S.C. §2520, 47 U.S.C. §605, and 18 U.S.C. §2707, in addition to declaratory and injunctive relief for violations of the First and Fourth Amendments.

67.     Plaintiffs Hepting, Hicks, Jewel and Knutzen also bring certain of the claims, identified, on behalf of the following California Subclass:

> All individuals that are residents of the State of California and that are current residential subscribers or customers of Defendants' telephone services or Internet services, or that were residential telephone or Internet subscribers or customers at any time after September 2001.

68.     The California Subclass seeks certification of claims for declaratory and injunctive relief, and for restitution pursuant to the Unfair Competition Law (Cal. Bus. and Prof. Code §§17200, *et seq*.).

69.     Excluded from the Nationwide Class and California Subclass are the officers, directors, and employees of Defendants, and the legal representatives, heirs, successors, and assigns of Defendants.

70.     Also excluded from the Nationwide Class and California Subclass are any foreign powers, as defined by 50 U.S.C. §1801(a), or any agents of foreign powers, as defined by 50 U.S.C. §1801(b)(1)(A), including without limitation anyone who knowingly engages in sabotage or international terrorism, or activities that are in preparation therefore.

71.     This action is brought as a class action and may properly be so maintained pursuant to the provisions of the Federal Rules of Civil Procedure, Rule 23.  Plaintiffs reserve the right to modify the Nationwide Class and the California Subclass definitions and the class period based on the results of discovery.

72.     **Numerosity of the Nationwide Class and California Subclass**:  Members of the Nationwide Class and California Subclass are so numerous that their individual joinder is impracticable.  The precise numbers and addresses of members of the Nationwide Class and California Subclass are unknown to the Plaintiffs.  Plaintiffs estimate that the Nationwide Class consists of millions of members and the California Subclass consists of hundreds of thousands of members.  The precise number of persons in both the Nationwide Class and California Subclass and their identities and addresses may be ascertained from Defendants' records.

73.     **Existence of Common Questions of Fact and Law**:  There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Nationwide Class and California Subclass.  These common legal and factual questions include:

1        (a)      Whether Defendants, acting as agents or instruments of the government, have

2 violated the First and Fourth Amendment rights of Nationwide Class members, or are currently

3 doing so;

4        (b)      Whether Defendants have subjected Nationwide Class members to electronic

5 surveillance, or have disclosed or used information obtained by electronic surveillance of the

6 Nationwide Class members, in violation of 50 U.S.C. §1809, or are currently doing so;

7        (c)      Whether Defendants have intercepted, used or disclosed Nationwide Class

8 members' communications in violation of 18 U.S.C. §2511, or are currently doing so;

9        (d)      Whether Defendants have divulged or published the existence, contents,

10 substance, purport, effect, or meaning of Nationwide Class members' communications in violation

11 of 47 U.S.C. §605(a), or are currently doing so;

12        (e)      Whether Defendants have divulged the contents of Nationwide Class

13 members' communications in violation of 18 U.S.C. §2702(a)(1) or (a)(2), or are currently doing so;

14        (f)      Whether Defendants have divulged subscriber information or other records

15 pertaining to Nationwide Class members in violation of 18 U.S.C. §2702(a)(3), or are currently

16 doing so;

17        (g)      Whether Defendants' interception, use or disclosure of California Subclass

18 members' communications, or the disclosure of subscriber information or other records pertaining to

19 California Subclass members, constitutes unfair, unlawful and/or fraudulent business practices in

20 violation of California's Unfair Competition Law;

21        (h)      Whether Plaintiffs and California Subclass members are entitled to restitution,

22 disgorgement of profits, or other equitable relief to remedy Defendants' unfair, unlawful and/or

23 fraudulent business practices;

24        (i)      Whether Plaintiffs and class members are entitled to recover compensatory,

25 statutory and punitive damages, whether as a result of Defendants' fraudulent, illegal and deceitful

26 conduct, and/or otherwise; and

27        (j)      Whether Plaintiffs and class members are entitled to an award of reasonable

28 attorneys' fees, pre-judgment interest, and costs of this suit.

74. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Nationwide Class and California Subclass because Plaintiffs are or were subscribers to the Internet and telephone services of Defendants. Plaintiffs and all members of the Nationwide Class and California Subclass have similarly suffered harm arising from Defendants' violations of law, as alleged herein.

75. **Adequacy**: Plaintiffs are adequate representatives of the Nationwide Class and California Subclass because their interests do not conflict with the interests of the members of the classes they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intends to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Nationwide Class and California Subclass.

76. This suit may also be maintained as a class action pursuant to Federal Rules of Civil Procedure, Rule 23(b)(2) because Plaintiffs and both the Nationwide Class and California Subclass seek declaratory and injunctive relief, and all of the above factors of numerosity, common questions of fact and law, typicality and adequacy are present. Moreover, Defendants have acted on grounds generally applicable to Plaintiffs and both the Nationwide Class and California Subclass as a whole, thereby making declaratory and/or injunctive relief proper.

77. **Predominance and Superiority**: This suit may also be maintained as a class action under Federal Rules of Civil Procedure, Rule 23(b)(3) because questions of law and fact common to the Nationwide Class and California Subclass predominate over the questions affecting only individual members of the classes and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual class member may be relatively small, especially given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Furthermore, it would be

virtually impossible for the class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Moreover, even if class members themselves could afford such individual litigation, the court system could not.  Individual litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal issue of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale and comprehensive supervision by a single court.

## COUNT I

**Violation of Plaintiffs' and Class Members' Rights Under the First and Fourth Amendments to the United States Constitution (Plaintiffs Hepting, Hicks, Jewel and Knutzen and the Nationwide Class [Including the California Subclass] vs. Defendants)**

78.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

79.     On information and belief, Plaintiffs and class members have a reasonable expectation of privacy in their communications, contents of communications, and/or records pertaining to their communications transmitted, collected, and/or stored by AT&T Corp.

80.     On information and belief, Plaintiffs and class members use AT&T Corp.'s services to speak or receive speech anonymously and to associate privately.

81.     On information and belief, the above-described acts of interception, disclosure, divulgence and/or use of Plaintiffs' and class members' communications, contents of communications, and records pertaining to their communications occurred without judicial or other lawful authorization, probable cause, and/or individualized suspicion.

82.     On information and belief, at all relevant times, the government instigated, directed and/or tacitly approved all of the above-described acts of AT&T Corp.

83.    On information and belief, at all relevant times, the government knew of and/or acquiesced in all of the above-described acts of AT&T Corp., and failed to protect the First and Fourth Amendment rights of the Plaintiffs and class members by obtaining judicial authorization.

84.    In performing the acts alleged herein, AT&T Corp. had at all relevant times a primary or significant intent to assist or purpose of assisting the government in carrying out the Program and/or other government investigations, rather than to protect its own property or rights.

85.    By the acts alleged herein, AT&T Corp. acted as an instrument or agent of the government, and thereby violated Plaintiffs' and class members' reasonable expectations of privacy and denied Plaintiffs and class members their right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the Constitution of the United States, and additionally violated Plaintiffs' and class members' rights to speak and receive speech anonymously and associate privately under the First Amendment.

86.    By the acts alleged herein, AT&T Corp.'s conduct proximately caused harm to Plaintiffs and class members.

87.    On information and belief, AT&T Corp.'s conduct was done intentionally, with deliberate indifference, or with reckless disregard of, Plaintiffs' and class members' constitutional rights.

88.    On information and belief, there is a strong likelihood that Defendants are now engaging in and will continue to engage in the above-described violations of Plaintiffs' and class members' constitutional rights, as agents of the government, and that likelihood represents a credible threat of immediate future harm.

89.    Wherefore, Plaintiffs and class members pray for this court to declare that AT&T Corp. has violated their rights under the First and Fourth Amendments to the United States Constitution, and enjoin Defendants and their agents, successors and assigns from violating the

AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF –
C-06-0672-JCS

1    Plaintiffs' and class members' rights under the First and Fourth Amendments to the United States

2    Constitution.

3                                           **COUNT II**

4    **Electronic Surveillance Under Color of Law in Violation of 50 U.S.C. §1809 (Plaintiffs**
     **Hepting, Hicks, Jewel and Knutzen and the Nationwide Class [Including the California**
5                              **Subclass] vs. Defendants)**

6           90.     Plaintiffs repeat and incorporate herein by reference the allegations in the preceding

7    paragraphs of this complaint, as if set forth fully herein.

8
            91.     In relevant part, 50 U.S.C. §1809 provides that:
9

10          (a)     Prohibited activities – A person is guilty of an offense if he intentionally – (1)
            engages in electronic surveillance under color of law except as authorized by statute;
11          or (2) discloses or uses information obtained under color of law by electronic
            surveillance, knowing or having reason to know that the information was obtained
12          through electronic surveillance not authorized by statute.

13          92.     In relevant part 50 U.S.C. §1801 provides that:

14          (f)     "Electronic surveillance" means – (1) the acquisition by an electronic,
            mechanical, or other surveillance device of the contents of any wire or radio
15          communication sent by or intended to be received by a particular, known United
            States person who is in the United States, if the contents are acquired by intentionally
16          targeting that United States person, under circumstances in which a person has a
            reasonable expectation of privacy and a warrant would be required for law
17          enforcement purposes; (2) the acquisition by an electronic, mechanical, or other
            surveillance device of the contents of any wire communication to or from a person in
18          the United States, without the consent of any party thereto, if such acquisition occurs
            in the United States, but does not include the acquisition of those communications of
19          computer trespassers that would be permissible under section 2511(2)(i) of Title 18;
            (3) the intentional acquisition by an electronic, mechanical, or other surveillance
20          device of the contents of any radio communication, under circumstances in which a
            person has a reasonable expectation of privacy and a warrant would be required for
21          law enforcement purposes, and if both the sender and all intended recipients are
            located within the United States; or (4) the installation or use of an electronic,
22          mechanical, or other surveillance device in the United States for monitoring to
            acquire information, other than from a wire or radio communication, under
23          circumstances in which a person has a reasonable expectation of privacy and a
            warrant would be required for law enforcement purposes.
24
            93.     On information and belief, AT&T Corp. has intentionally acquired, by means of a
25

26   surveillance device, the contents of one or more wire communications to or from Plaintiffs and class

27   members or other information in which Plaintiffs or class members have a reasonable expectation of

28   privacy, without the consent of any party thereto, and such acquisition occurred in the United States.

AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF –
C-06-0672-JCS                                                                      - 18 -

94.      By the acts alleged herein, AT&T Corp. has intentionally engaged in electronic surveillance (as defined by 50 U.S.C. §1801(f)) under color of law, but which is not authorized by any statute, and AT&T Corp. has intentionally subjected Plaintiffs and class members to such electronic surveillance, in violation of 50 U.S.C. §1809.

95.      Additionally or in the alternative, by the acts alleged herein, AT&T Corp. has intentionally disclosed or used information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by statute.

96.      AT&T Corp. did not notify Plaintiffs or class members of the above-described electronic surveillance, disclosure, and/or use, nor did Plaintiffs or class members consent to such.

97.      On information and belief, there is a strong likelihood that Defendants are now engaging in and will continue to engage in the above-described electronic surveillance, disclosure, and/or use of Plaintiffs' and class members' wire communications described herein, and that likelihood represents a credible threat of immediate future harm.

98.      Plaintiffs and class members have been and are aggrieved by Defendants' electronic surveillance, disclosure, and/or use of their wire communications.

99.      Pursuant to 50 U.S.C. §1810, which provides a civil action for any person who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of 50 U.S.C. §1809, Plaintiffs and class members seek equitable and declaratory relief; statutory damages for each Plaintiff and class member of whichever is the greater of $100 a day for each day of violation or $1,000; punitive damages as appropriate; and reasonable attorneys' fees and other litigation costs reasonably incurred.

## COUNT III

**Interception, Disclosure and/or Use of Communications in Violation of 18 U.S.C. §2511
(Plaintiffs Hepting, Hicks, Jewel and Knutzen and the Nationwide Class
[Including the California Subclass] vs. Defendants)**

100.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

101.    In relevant part, 18 U.S.C. §2511 provides that:

(1) Except as otherwise specifically provided in this chapter any person who – (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection . . . [or](d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection . . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C. §2511 further provides that:

(3)(a) Except as provided in paragraph (b) of this subsection, a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient.

102.    By the acts alleged herein, AT&T Corp. has intentionally intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept, Plaintiffs' and class members' wire or electronic communications in violation of 18 U.S.C. §2511(1)(a); and/or

103.    By the acts alleged herein, AT&T Corp. has intentionally disclosed, or endeavored to disclose, to another person the contents of Plaintiffs' and class members' wire or electronic communications, knowing or having reason to know that the information was obtained through the interception of wire or electronic communications in violation of 18 U.S.C. §2511(1)(c); and/or

104.    By the acts alleged herein, AT&T Corp. has intentionally used, or endeavored to use, the contents of Plaintiffs' and class members' wire or electronic communications, while knowing or

having reason to know that the information was obtained through the interception of wire or electronic communications in violation of 18 U.S.C. §2511(1)(d); and/or

105.   On information and belief, AT&T Corp. has intentionally divulged the contents of Plaintiffs' and class members' wire or electronic communications to persons or entities other than the addressee or intended recipient, or the agents of same, or other providers of wire or electronic communication service, while those communications were in transmission on AT&T Corp.'s electronic communications services, in violation of 18 U.S.C. §2511(3)(a).

106.   AT&T Corp. did not notify Plaintiffs or class members of the above-described intentional interception, disclosure, divulgence and/or use of their wire or electronic communications, nor did Plaintiffs or class members consent to such.

107.   On information and belief, there is a strong likelihood that Defendants are now engaging in and will continue to engage in the above-described intentional interception, disclosure, divulgence and/or use of Plaintiffs' and class members' wire or electronic communications, and that likelihood represents a credible threat of immediate future harm.

108.   Plaintiffs and class members have been and are aggrieved by Defendants' intentional interception, disclosure, divulgence and/or use of their wire or electronic communications.

109.   Pursuant to 18 U.S.C. §2520, which provides a civil action for any person whose wire or electronic communications have been intercepted, disclosed or intentionally used in violation of 18 U.S.C. §2511, Plaintiffs and class members seek equitable and declaratory relief; statutory damages for each Plaintiff and class member of whichever is the greater of $100 a day for each day of violation or $10,000; punitive damages as appropriate; and reasonable attorneys' fees and other litigation costs reasonably incurred.

**COUNT IV**

**Unauthorized Publication and/or Use of Communications in Violation of 47 U.S.C. §605
(Plaintiffs Hepting, Hicks, Jewel and Knutzen and The NationwideClass
[Including the California Subclass] vs. Defendants)**

110.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

111.    In relevant part, 47 U.S.C. §605 provides that:

(a)    Practices prohibited – Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority.

112.    AT&T Corp. received, assisted in receiving, transmitted, or assisted in transmitting, Plaintiffs' and class members' interstate or foreign communications by wire or radio.

113.    By the acts alleged herein, AT&T Corp. divulged or published the existence, contents, substance, purport, effect, or meaning of such communications, by means other than through authorized channels of transmission or reception, in violation of 47 U.S.C. §605.

114.    On information and belief, such divulgence or publication was willful and for purposes of direct or indirect commercial advantage or private financial gain.

115.    AT&T Corp. did not notify Plaintiffs or class members of the divulgence or publication of their communications, nor did Plaintiffs or class members consent to such.

116.    On information and belief, there is a strong likelihood that Defendants are now engaging in and will continue to engage in the above-described divulgence or publication of Plaintiffs' and class members' wire or radio communications, and that likelihood represents a credible threat of immediate future harm.

AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF –
C-06-0672-JCS                                                                                                   - 22 -

117.    Plaintiffs and class members have been and are aggrieved by Defendants' divulgence or publication of their wire or radio communications.

118.    Pursuant to 47 U.S.C. §605(e)(3)(A), which provides a civil action for any person whose wire or electronic communications have been divulged or published in violation of 47 U.S.C. §605(a), Plaintiffs and class members seek temporary and final injunctions on such terms as the Court deems reasonable to prevent or restrain such violations; statutory damages of not less than $1,000 or more than $10,000 for each violation aggrieving each Plaintiff and class member, as the Court considers just; in the Court's discretion, an increase in the reward of damages to each Plaintiff and class member by an amount of not more than $100,000 for each violation; and the recovery of full costs, including reasonable attorneys' fees.

## COUNT V

### Divulgence of Communications Contents in Violation of 18 U.S.C. §§2702(a)(1) and/or (a)(2) (Plaintiffs Hepting, Hicks, Jewel and Knutzen and the Natiowide Class [Including the California Subclass] vs. Defendants)

119.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

120.    In relevant part, 18 U.S.C. §2702 provides that:

(a)     Prohibitions. – Except as provided in subsection (b) – (1) a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service; and (2) a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service – (A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service; (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing. . . .

121.    On information and belief, AT&T Corp. knowingly divulged to one or more persons or entities the contents of Plaintiffs' and class members' communications while in electronic storage

by an AT&T Corp. electronic communication service, and/or while carried or maintained by an AT&T Corp. remote computing service, in violation of 18 U.S.C. §§2702(a)(1) and/or (a)(2).

122.    AT&T Corp. did not notify Plaintiffs or class members of the divulgence of their communications, nor did Plaintiffs or class members consent to such.

123.    On information and belief, there is a strong likelihood that Defendants are now engaging in and will continue to engage in the above-described divulgence of Plaintiffs' and class members' communications while in electronic storage by Defendants' electronic communication service(s), and/or while carried or maintained by Defendants' remote computing service(s), and that likelihood represents a credible threat of immediate future harm.

124.    Plaintiffs and class members have been and are aggrieved by Defendants' above-described divulgence of the contents of their communications.

125.    Pursuant to 18 U.S.C. §2707, which provides a civil action for any person aggrieved by knowing or intentional violation of 18 U.S.C. §2702, Plaintiffs and class members seek such preliminary and other equitable or declaratory relief as may be appropriate; statutory damages of no less than $1000 for each aggrieved Plaintiff or class member; punitive damages as the Court considers just; and reasonable attorneys' fees and other litigation costs reasonably incurred.

### COUNT VI

**Divulgence Of Communications Records In Violation Of 18 U.S.C. §2702(A)(3)**
**(Plaintiffs Hepting, Hicks, Jewel and Knutzen and the Nationwide Class**
**[Including the California Subclass] vs. Defendants)**

126.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

127.    In relevant part, 18 U.S.C. §2702 provides that:

(a)      Prohibitions. – Except as provided in subsection (b) – (3) a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity.

AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF –
C-06-0672-JCS                                                                                              - 24 -

128.    On information and belief, AT&T Corp., a provider of remote computing service and electronic communication service to the public, knowingly divulged records or other information pertaining to Plaintiffs and class members to a governmental entity in violation of 18 U.S.C. §2702(a)(3).

129.    AT&T Corp. did not notify Plaintiffs or class members of the divulgence of these records and other information pertaining to them and their use of AT&T Corp. services, nor did Plaintiffs or class members consent to such.

130.    On information and belief, there is a strong likelihood that Defendants are now engaging in and will continue to engage in the above-described divulgence of records or other information pertaining to Plaintiffs and class members, and that likelihood represents a credible threat of immediate future harm.

131.    Plaintiffs and class members have been and are aggrieved by Defendants' above-described divulgence of records or other information pertaining to Plaintiffs and class members.

132.    Pursuant to 18 U.S.C. §2707, which provides a civil action for any person aggrieved by knowing or intentional violation of 18 U.S.C. §2702, Plaintiffs and class members seek such preliminary and other equitable or declaratory relief as may be appropriate; statutory damages of no less than $1000 for each aggrieved Plaintiff or class member; punitive damages as the Court considers just; and reasonable attorneys' fee and other litigation costs reasonably incurred.

### COUNT VII

**Unfair, Unlawful And Deceptive Business Practices**
**(Plaintiffs Hepting, Hicks, Jewel and Knutzen and the California Subclass vs. Defendants)**

133.    Plaintiffs repeat and incorporate herein by reference the allegations in the preceding paragraphs of this complaint, as if set forth fully herein.

134.    Defendants have engaged in unfair, unlawful and/or fraudulent business practices as set forth above.

135.     By engaging in the acts and practices described herein, Defendants have committed one or more unfair business practices within the meaning of Bus. & Prof. Code §§17200, *et seq*. Specifically, Defendants' business practices offend the public policies set forth in California Constitution Art. 1, section 1.

136.     Defendants' above-described deceptive and misleading acts and practices have deceived and/or are likely to deceive Plaintiffs and other California Subclass members.  Plaintiffs were, in fact, deceived as to the terms and conditions of services provided by defendants.  Plaintiffs and California Subclass members have suffered harm as a result of Defendants' misrepresentations and/or omissions.

137.     Defendants' acts and practices are also unlawful because, as described above, they violate the First and Fourth Amendments to the United States Constitution, 50 U.S.C. §1809, 18 U.S.C. §2511, 47 U.S.C. §605, 18 U.S.C. §2702(a)(1) and/or (a)(2), and 18 U.S.C. §2702(a)(3).

138.     AT&T Corp.'s acts and practices are also unlawful because they violate 18 U.S.C. §3121.

139.     In relevant part, 18 U.S.C. §3121 provides that:

(a)     In general. – Except as provided in this section, no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this title or under the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1801 *et seq*.).

As defined by 18 U.S.C. §3127:

(3) the term "pen register" means a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication, but such term does not include any device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider or any device or process used by a provider or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of its business;

(4) the term "trap and trace device" means a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify

AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF –
C-06-0672-JCS                                                                                        - 26 -

the source of a wire or electronic communication, provided, however, that such information shall not include the contents of any communication;

140.     On information and belief, AT&T Corp. installed or used pen registers and/or trap and trace devices without first obtaining a court order under 18 U.S.C. §3123 or under the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. §§1801, *et seq.*), and continue to do so.

141.     On information and belief, the pen registers and/or trap and trace devices installed and used by AT&T Corp. have captured, recorded, or decoded, and continue to capture, record or decode, dialing, routing, addressing or signaling information pertaining to Plaintiff and/or California Subclass members' wire or electronic communications.

142.     AT&T Corp. did not notify Plaintiffs or California Subclass members of the installation or use of pen registers and/or trap and trace devices, nor did Plaintiffs or California Subclass members consent to such.

143.     AT&T Corp.'s acts and practices are also unlawful because they violate 47 U.S.C. §222, which in relevant part provides that:

 (c)     Confidentiality of customer proprietary network information – (1) Privacy requirements for telecommunications carriers – Except as required by law or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary network information by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to individually identifiable customer proprietary network information in its provision of (A) the telecommunications service from which such information is derived, or (B) services necessary to, or used in, the provision of such telecommunications service, including the publishing of directories.

144.     AT&T Corp. is a telecommunications carrier that obtains and has obtained customer proprietary network information by virtue of its provision of telecommunications service.

145.     On information and belief, AT&T Corp. used, disclosed and/or provided to government entities individually identifiable customer proprietary network information pertaining to Plaintiffs and California Subclass members, and continue to do so.

146.     AT&T Corp. did not notify Plaintiffs or California Subclass members of the disclosure and/or provision of their personally identifiable customer proprietary network information to government entities, nor did Plaintiffs or California Subclass members consent to such.

147.     Plaintiffs and the California Subclass have suffered injury in fact and have lost money or property as a result of such unfair and unlawful business practices.  Such injuries and losses include, but are not limited to, the service fees and other fees and charges paid to AT&T Corp. Neither the Plaintiffs nor any reasonable California Subclass member would have paid such fees and charges for AT&T Corp. services had they first known of AT&T Corp.'s unlawful acts and practices.

148.     On information and belief, there is a strong likelihood that Defendants are now engaging in and will continue to engage in the above-described electronic surveillance, disclosure, and/or use of Plaintiffs' and class members' wire communications, and that likelihood represents a credible threat of immediate future harm.

149.     Plaintiffs and the California Subclass seek restitution, disgorgement, injunctive relief and all other relief from Defendants allowed under §§17200, *et seq*.  Plaintiffs and the California Subclass also seek attorneys' fees pursuant to Cal. Code Civ. Proc. §1021.5, as well as such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs for themselves and all others similarly situated respectfully request that the Court:

A.     Declare that Defendants' participation in the Program as alleged herein violates applicable law including without limitation:

(i)     The First and Fourth Amendments to the United States Constitution, 50 U.S.C. §1809, 18 U.S.C. §2511, 47 U.S.C. §605, and 18 U.S.C. §2702, as to Plaintiffs and the Nationwide Class; and

1        (ii)      Cal. Bus. & Prof. Code §§17200, *et seq.*, as to Plaintiffs and the

2 California Subclass.

3      B.     Award equitable relief, including without limitation, a preliminary and permanent

4 injunction prohibiting Defendants' continued or future participation in the Program:

5        (i)      Pursuant to the First and Fourth Amendments to the United States

6 Constitution, 50 U.S.C. §1810, 18 U.S.C. §2520(b)(1), 47 U.S.C. §605(e)(3)(b)(i), and 18 U.S.C.

7 §2707(b)(1), as to the Plaintiffs and the Nationwide Class; and

8        (ii)      Pursuant to Cal. Bus. & Prof. Code §§17200, *et seq.*, as to Plaintiffs

9 and California Subclass;

10     C.     Award statutory damages to the extent permitted by law to each Plaintiff and class

11 member in the sum of:

12        (i)      $100 per day for each day of violation of 50 U.S.C. §1809 aggrieving

13 that Plaintiff or class member or $1,000, whichever is greater, pursuant to 50 U.S.C. §1810(a);

14        (ii)      $100 a day for each violation of 18 U.S.C. §2511 aggrieving that

15 Plaintiff or class member or $10,000, whichever is greater, pursuant to 18 U.S.C. §2520(c)(2)(A);

16        (iii)     Not less than $1,000 or more than $10,000 for each violation

17 aggrieving that Plaintiff or class member, as the court considers just, pursuant to 47 U.S.C.

18 §605(e)(3)(C)(i)(II); and

19        (iv)      $1000 pursuant to 18 U.S.C. §2707(c);

20     D.     Award punitive damages to the extent permitted by law to each Plaintiff and class

21 member, including without limitation:

22        (i)      An appropriate sum pursuant to 50 U.S.C. §1810(b);

23        (ii)      An appropriate sum pursuant to 18 U.S.C. §2520(b)(2); and

24        (iii)     Not more than $100,000 per violation of 47 U.S.C. §605(a) aggrieving

25 that Plaintiff or class member, in the court's discretion, pursuant to 47 U.S.C. §605(e)(3)(C)(ii);

26     E.     Award to Plaintiffs attorneys' fees and other costs of suit to the extent permitted by

27 law, including without limitation pursuant to 50 U.S.C. §1810(c), 18 U.S.C. §2520(b)(3), 47 U.S.C.

28 §605(e)(3)(B)(iii), 18 U.S.C. §2707(b)(3), and Cal. Code Civ. Proc. §1021.5;

1    F.    Award restitution, disgorgement, preliminary and permanent injunctive relief and all

2  other relief allowed under §§17200, *et seq*. to Plaintiffs and the California Subclass;

3    G.    Grant such other and further relief as the Court deems just and proper.

4                                **JURY DEMAND**

5    Plaintiffs hereby request a jury trial for all issues triable by jury including, but not limited to,

6  those issues and claims set forth in any amended complaint or consolidated action.

7  DATED:  February 22, 2006                LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
8                                           REED R. KATHREIN
                                            JEFF D. FRIEDMAN
9                                           SHANA E. SCARLETT

10

11                                          _____
                                                  s/ REED R. KATHREIN
12                                               REED R. KATHREIN

13                                          100 Pine Street, Suite 2600
                                            San Francisco, CA  94111
                                            Telephone:  415/288-4545
14                                          415/288-4534 (fax)

15                                          TRABER & VOORHEES
                                            BERT VOORHEES
16                                          THERESA M. TRABER
                                            128 North Fair Oaks Avenue, Suite 204
17                                          Pasadena, CA 91103
                                            Telephone:  626/585-9611
18                                          626/577-7079 (fax)

19                                          ELECTRONIC FRONTIER FOUNDATION
                                            CINDY COHN
20                                          LEE TIEN
                                            KURT OPSAHL
21                                          KEVIN S. BANKSTON
                                            CORYNNE MCSHERRY
22                                          JAMES S. TYRE
                                            454 Shotwell Street
23                                          San Francisco, CA  94110
                                            Telephone:  415/436-9333
24                                          415/436-9993 (fax)

25                                          Attorneys for Plaintiffs

26  T:\CasesSF\AT&T Privacy\cpt00028368.doc

27

28

AMENDED COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF –
C-06-0672-JCS                                                                - 30 -

CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

 s/ REED R. KATHREIN
REED R. KATHREIN

LERACH COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:

# Mailing Information for a Case 3:06-cv-00672-VRW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kevin Stuart Bankston**
  bankston@eff.org

- **Cindy Ann Cohn**
  cindy@eff.org wendy@eff.org;barak@eff.org

- **Jeff D Friedman**
  JFriedman@lerachlaw.com RebeccaG@lerachlaw.com

- **Reed R. Kathrein**
  reedk@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Corynne McSherry**
  corynne@eff.org

- **Kurt Opsahl**
  kurt@eff.org

- **Shana Eve Scarlett**
  shanas@lerachlaw.com e_file_sd@lerachlaw.com;e_file_sf@lerachlaw.com

- **Theresa M. Traber, Esq**
  tmt@tvlegal.com

- **James Samuel Tyre**
  jstyre@jstyre.com jstyre@eff.org

- **Bert Voorhees**
  bv@tvlegal.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Lee Tien
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
```