| | |
|---|---|
| 1 | JAMES J. BROSNAHAN (BAR NO. 34555) |
| | TONY WEST (BAR NO. 164151) |
| 2 | MORRISON & FOERSTER LLP |
| | 425 Market Street |
| 3 | San Francisco, California  94105-2482 |
| | Telephone: 415.268.7000 |
| 4 | Facsimile: 415.268.7522 |
| | JBrosnahan@mofo.com |
| 5 | |
| | ISMAIL RAMSEY (BAR NO. 189820) |
| 6 | MILES EHRLICH (BAR NO. 237954) |
| | RAMSEY & EHLRICH LLP |
| 7 | 803 Hearst Avenue |
| | Berkeley, CA 94710 |
| 8 | Telephone: 510.548.3600 |
| | Facsimile: 510.548.3601 |
| 9 | miles@ramsey-ehrlich.com |
| 10 | Attorneys for MARK KLEIN |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN on Behalf of Themselves and All Others Similarly Situated,, <br><br> Plaintiff, <br><br> v. <br><br> AT&T CORP., AT&T INC. and DOES 1-20, inclusive, <br><br> Defendant. | Case No. C-06-00672-VRW <br><br> **BRIEF OF AMICUS CURIAE MARK KLEIN** <br><br><br> Hearing Date: N/A <br> Time: N/A <br> Courtroom: 6 (17th floor) <br> Judge: Hon. Vaughn Walker |

BRIEF OF AMICUS CURIAE MARK KLEIN
C-06-00672-VRW
sf-2122400

# I. INTRODUCTION

This amicus brief addresses a limited issue before the Court: Whether Mark Klein's declaration, now temporarily lodged under seal, should be unsealed and filed in the public record. Because the substance of Mr. Klein's declaration is based on his observations which corroborate publicly-available information and Mr. Klein's voice is an important, informed addition to the public debate about the legality of the government's wiretapping program, Mr. Klein urges this Court to unseal his declaration.

# II. MARK KLEIN'S INTEREST IN THE CASE.

Mr. Klein is not a party to these proceedings. He has no economic stake in the outcome of this case. For 22 years, Mr. Klein worked for AT&T. A member of the Communications Workers of America, every personnel review in Mr. Klein's file rated his performance as "outstanding" or "more than satisfactory" during that time. Mr. Klein is now a retiree.

Mr. Klein is also a witness. During the last year he worked for AT&T, Mr. Klein observed governmental activity that he believes violates the Constitution and laws of the United States. What he learned about the government's wiretapping program Mr. Klein learned in the course of performing his duties for AT&T. At no time did anyone tell Mr. Klein — neither the government nor anyone else — that the things he observed while doing his job were "top secret," "classified," or otherwise regarded as a "state secret." In fact, when materials attached in support of Mr. Klein's declaration were forwarded by the plaintiffs to the Department of Justice for review, the government responded that it did not object to the documents being filed under seal.

There is presently an important public debate on the legality of NSA's wiretapping program. That debate started before any participation by Mr. Klein. More important this court must decide certain issues relating to that program. Some materials that Mr. Klein gave to the plaintiffs in this case the plaintiff then voluntarily sent to the Department of Justice to the attention of an appropriate person. The government representative had the materials for no fewer than four days, plenty of time to consult with all necessary persons

1  within the government. That person then advised the plaintiffs that they could be filed in
2  court. After the government was asked about the materials being filed and after the
3  government approved them for filing the government did not claim they were classified or
4  a state secret. In summery the government has never treated Mr. Klein's knowledge or
5  materials as classified or as government secrets. The government has at no time attempted
6  to put Mr. Klein's materials, or treat his information as classified or as a government secret
7  by insisting that it be put, in a sensitive compartmented information facility ("SCIF").
8  Sensitive national security information is classified and safeguarded according to
9  established procedures. *See* 60 Fed. Reg. 19825 (1995). The government never did that.
10 On the contrary, after conducting a thorough review, the Department of Justice chose not to
11 classify the documents at issue and expressly authorized the plaintiffs to file the material in
12 this Court (albeit it was to be under seal). For all these years the government has treated
13 what Mr. Klein knows and his materials as not worthy of classification or state secret
14 designation. The other party now attempting to keep the public from knowing what they
15 have done, AT&T, never advised Mr. Klein that his knowledge or materials should be
16 treated as classified or as state secrets.

### III. THE TECHNOLOGY MARK KLEIN OBSERVED IS PUBLIC INFORMATION.

Mark Klein's declaration is based on his personal observations and is relevant to a robust, national debate currently taking place around the country. As an AT&T technician, Mr. Klein's job included repairing and maintaining the fiber optic cables that carry Internet data from all over the world through AT&T's San Francisco central switch. What he observed — that the signal carrying the Internet data over fiber optic cables was "split" such that an exact copy of the data was redirected to the National Security Agency ("NSA") — had been the topic of public discussion months before he went public with his observations.

For example, on December 22, 2005, CNET News.com posed the question, "Just how extensive is NSA's spy program?" Declan McCullagh, "Just How Extensive is NSA's Spy Program," December 22, 2005, available at (http://news.com.com/Just+how+

extensive+is+NSAs+spy+program/2100-1028_3-6006326.html). CNET reported that despite the Administration's forceful defense of the program,

> some technologists and civil libertarians, using clues that dribbled out in press briefings and news articles, are concluding that the operation involves widespread monitoring of millions of e-mail messages and telephone conversations that cross any U.S. border.

*Id.* In fact, reported CNET, "'[t]he clues are piling up that *vacuum-cleaner style dragnets are what's at issue*,' John Gilmore, co-founder of the Electronic Frontier Foundation, said in a mailing list message on Thursday." *Id.* (emphasis added).

Two days after CNET News.com published its story, on December 24, 2005, Reuters headlined: "NSA spy program broader than Bush admitted." Reuters, "NSA Spy Program Broader than Bush Admitted," December 24, 2005, available at http://www.msnbc.msn.com/id/10592932/ (emphasis added). The Reuters report was based on an earlier *New York Times* article which cited "current and former government officials" who said that "information was collected [without warrants by the NSA] by tapping directly into some of the U.S. telecommunication system's main arteries." *Id.*

In addition, on January 10, ABC News reported that, according to NSA whistleblower Russell Tice, the NSA program "may have involved spying on millions of Americans, not just a few highly suspicious characters." Brian Ross, "NSA Insider Speaks Out," January 10, 2006, available at http://abcnews.go.com/Nightline/story?id=1860899&page=1. In a televised interview, Tice admitted to being one of the sources the *New York Times* used when it broke the story about the NSA's eavesdropping program in early December 2005. Importantly, when asked whether he had revealed any classified information to the *Times,* Tice responded: "No. No. I've not told them anything classified." *Id.*

Joining the major news media's chorus were groups like the American Civil Liberties Union ("ACLU"), who, on January 31, 2006, posted on their website that the "NSA has gained direct access to the telecommunications infrastructure through some of America's largest companies." American Civil Liberties Union, "Eavesdropping 101: What can the NSA Do?" available at http://www.aclu.org/safefree/nsaspying/23989res20060131.html. Without any help

from Mr. Klein, the ACLU went on to detail a "major new element of the NSA's spying machinery is its ability to tap directly into the major communications switches, routing stations, or access points of the telecommunications system." The ACLU noted that by working with leading telecommunications companies, the NSA has obtained a "new level of direct access" to the nation's telecommunications infrastructure that "apparently includes both some of the gateways through which phone calls are routed, as well as other key nodes through which a large proportion of Internet traffic passes." And "most significantly," reported the ACLU, "access to these 'switches' and other network hubs give the agency access to a direct feed of all the communications that pass through them, and the ability to filter, sift through, analyze, read, or share those communications as it sees fit." *Id.*

The ACLU also directed users to a map entitled, "Eavesdropping 101: What Can the NSA Do?" which purported to show how the NSA "has extended its tentacles into much of the U.S. civilian communications infrastructure, including, it appears, the 'switches' through which international and some domestic communications are routed, Internet exchange points, individual telephone company central facilities, and Internet Service Providers (ISPs)." *Id.* (A true and correct copy of the ACLU's map is attached hereto as Exhibit A.)

Far from releasing any new information or "state secret," Mr. Klein's observations corroborate opinions that have been voiced in a public debate that has been raging long before Mr. Klein came forward. Mr. Klein's participation in this public discussion is important because his is a viewpoint informed by first-hand observations and bolstered by decades of technical expertise. Indeed, by coming forward, Mr. Klein has engaged in the very type of national conversation Senator Arlen Specter (R-PA) encouraged when he said earlier this year that he hoped "public concern and public indignation [would] build up" such that that scrutiny of the Administration's eavesdropping program does not wane. Declan McCullagh, "NSA Spying Come Under Legal, Political Attack," April 28, 2006, available at http://news.com.com/NSA+spying+comes+under+legal%2C+political+attack/2100-1028_3-6066123.html.

Mr. Klein's declaration and the information it relates regards information about publicly-known and publicly-discussed technology. His observations corroborate his belief and the

opinions of others that the government has obtained access to all e-mails, telephone calls and web browsing that go through the AT&T facility. Mr. Klein believes this government access is an illegal interception of domestic wire communications prohibited by the Electronic Communications Privacy Act, 18 U.S.C. 2511, *et seq.*, Foreign Intelligence Surveillance Act, 50 U.S.C. 1801, *et seq.*

Mr. Klein also believes that this government access is unconstitutional if no warrant has been obtained to justify the access as required by the Fourth Amendment of the U.S. Constitution, as appears to be the case from recent statements by Members of Congress. *See* U.S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons to be seized.")

**IV. LIMITED REQUEST FROM MR. KLEIN.**

Mr. Klein asks that his declaration be unsealed.

Dated: May 4, 2006

Respectfully submitted,

JAMES J. BROSNAHAN
TONY WEST
MORRISON & FOERSTER LLP

By:     /s/
James J. Brosnahan
Attorneys for MARK KLEIN

ISMAIL RAMSEY
MILES EHRLICH
RAMSEY & EHLRICH LLP

By:     /s/
Ismail Ramsey
Attorneys for MARK KLEIN