Karl Olson (SBN 104760)
Erica L. Craven (SBN 199918)
LEVY, RAM & OLSON LLP
639 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: 415-433-4949
Facsimile: 415-433-7311

Attorneys for *San Francisco Chronicle*,
*Los Angeles Times*, Associated Press,
*San Jose Mercury News*, and Bloomberg News

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T CORP., et al.<br><br>Defendants. | CASE NO. CV-06-0672-VRW<br><br>**OPPOSITION TO MOTION TO SEAL; OPPOSITION TO CLOSURE OF COURTROOM; MOTION TO INTERVENE**<br><br>Date: May 17, 2006<br>Time: 10:00 a.m.<br>Place: Courtroom 6, 17th Floor<br>[The Hon. Vaughn R. Walker]<br><br>**Complaint Filed:** January 31, 2006 |

**I. INTRODUCTION**

Members of the news media – the *San Francisco Chronicle*, *Los Angeles Times*, Associated Press, *San Jose Mercury News*, and Bloomberg News – file this brief in opposition to defendant AT&T's attempt to seal documents and briefs and close the hearing on its request. A heavy burden rests upon those who would either close the courtroom or seal documents, and AT&T's conclusory assertions of harm come nowhere close to meeting that burden. That burden

is even heavier when, as here, a matter of national interest is at stake and the conduct of the government is being challenged. AT&T's Motion to File Documents Under Seal, and its last-minute request to close the courtroom, should be denied.

As Local Rule 79-5's Commentary explains, "As a public forum, the Court will only entertain requests to seal that establish good cause and are narrowly tailored to seal only the particular information that is genuinely privileged or protectable as a trade secret or otherwise has a compelling need for confidentiality. Documents may not be filed under seal pursuant to blanket protective orders covering multiple documents."

The burden imposed on a party seeking to seal documents, under Local Rule 79-5, U.S. Supreme Court and Ninth Circuit precedent, is a very heavy one, and likewise the burden rests upon those attempting to show "trade secrets" as a justification for sealing documents. *Foltz v. State Farm Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) [in the 9th Circuit, "we start with a strong presumption in favor of access to court records"]; *In re Providian Credit Card Cases,* 96 Cal.App.4th 292, 301 (2002). Likewise, this Court need not accept declarations from the parties or third parties as "dispositive," *ibid*., and it can reject declarations as "conclusionary and lacking in helpful specifics." *Id*. at 305. Mere assertions that closure or sealing serves a "compelling interest" do not suffice; specific evidentiary facts are required. *Oregonian Publishing Co. v. District Court*, 920 F.2d 1462, 1467 (9th Cir. 1990) [government failed to make evidentiary record of facts justifying closure].

**II. THE MEDIA HAVE STANDING TO MOVE TO UNSEAL RECORDS, TO OPPOSE SEALING REQUESTS AND TO OPPOSE CLOSURE. LEAVE TO INTERVENE SHOULD BE GRANTED.**

As the Supreme Court held in *Globe Newspapers Co. v. Superior Court*, 457 U.S. 596, 609 n. 25 (1982), "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion." In accordance with the Supreme Court's pronouncement, courts permit the media to appear in criminal and civil cases in which they are not parties for the purpose of challenging requests or orders to seal judicial records. *See, e.g., San Jose Mercury News v. U.S. District Court*, 187 F.3d 1096, 1101; *NBC Subsidiary (KNBC-*

*TV), Inc. v. Superior Court,* 20 Cal.4th 1178, 1217 & n. 36 (1999). Judge King of the Central District of California eloquently explained the benefits of press intervention in *State of California ex rel. Lockyer v. Safeway*, 355 F. Supp. 2d 1111, 1124 (C.D. Cal. 2005), in the course of unsealing documents filed in connection with a Motion for Summary Judgment in an antitrust case: "the press has historically served as a monitor of both the State and the courts, and it plays a vital role in informing the citizenry on the actions of its government institutions." Those words are especially apt here in a case challenging the conduct of the government. Thus, the press has standing to challenge an order sealing or an attempt to file records under seal.

### III. THE PRESS AND THE PUBLIC HAVE AN EXPRESS RIGHT OF ACCESS TO COURT PAPERS.

#### A. Records Filed in a Judicial Proceeding Are Presumptively Public, and May Not Be Sealed Unless there Is a Compelling Need to Do So.

The United States Supreme Court has held that the First Amendment guarantees the press and the public the right to attend trials and pre-trial proceedings. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580 (1980); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982); *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501 (1984); *Press-Enterprise Co.* v. *Superior Court,* 478 U.S. 1, 10 (1986). This First Amendment guarantee applies to judicial records as well as proceedings. *Foltz, supra*, 331 F.3d at 1135.

The Ninth Circuit and California courts have consistently rejected "trade secret" claims advanced by corporate defendants who sought to seal documents. *Foltz, supra*, 331 F.3d at 1137; *In Re Providian Credit Card Cases,* 96 Cal.App.4th 292 (2001); s*ee Universal City Studios, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1273, 1275 [denying motion to seal settlement agreement]; *Huffy Corporation v. Superior Court*, 112 Cal.App.4th 97, 105-10 (2003) [denying motion to seal settlement agreement, sources of payments to settle cases, admissions of law violations, identities of witnesses, and identities of parties named by government as violating pollution laws]. These cases mandate unsealing here.

The Third Circuit applied the presumptive right of access to material submitted in connection with a motion to dismiss and a motion for preliminary injunction – the motion in

connection with which the Klein Declaration and exhibits were filed – in *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 164. The Court concluded: "We believe that our earlier decisions and those in other courts lead ineluctably to the conclusion that there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." The Court went on to explain that those asserting trade secrets bear the burden of justifying the confidentiality of each and every document they seek to seal and must make a showing based upon "current evidence to show how public dissemination of the pertinent materials now would cause the competitive harm [they] claim." (*Id*. at 166-67.) We respectfully submit that exhibits allegedly taken by Mr. Klein in 2004 cannot serve as "current evidence" of alleged competitive harm to AT&T.[1]

**B.     The Public and the Press are Entitled to <u>Prompt</u> Access to the Records.**

The sealing of court records cannot be premised on delaying rather than denying access. Time is of the essence to effective news coverage. A "total restraint on the public's first amendment right of access [is prohibited] even though the restraint is limited in time." *Associated Press v. United States District Court.,* 705 F.2d 1143, 1147 (9th Cir. 1983). "Loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). *Accord Paradise Hills Associates v. Procel,* 235 Cal.App.3d 1528, 1538 (1991) (citation omitted) ("[T]he deprivation of first amendment rights for even minimal periods constitutes irreparable harm in the context of an action for injunctive relief.").

The United States Supreme Court and the other federal courts have consistently emphasized the importance of <u>contemporaneous</u> access to judicial proceedings and records. *See, e.g., Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 561 (1976) ("As a practical matter, moreover,

---

[1] The Court in *Barr Laboratories, Inc. v. KOS Pharmaceuticals*, 362 F. Supp. 2d 421 (S.D.N.Y. 2005) denied a motion to close the courtroom during a hearing on a preliminary injunction motion involving alleged trade secrets.

the element of time is not unimportant if press coverage is to fulfill its traditional function of bringing news to the public promptly").

This case is unquestionably of great public interest. It alleges misconduct by the government and also challenges the conduct of a large corporate entity.

On the other hand, no presumption of prejudice to the parties' interests may be indulged. *Brian W. v. Superior Court,* 20 Cal.3d 618, 625 (1978). All papers should be unsealed.

### C. None of the Findings Required by the Case Law and the First Amendment Can Be Made Here. The Public and Press Are Entitled to Full Access to all Documents Filed With the Court.

Even when a criminal defendant's constitutional right to a fair trial is at issue, the Supreme Court has held that proceedings cannot be closed to the public unless "there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Press-Enterprise*, *supra*, 478 U.S. at 14.

#### 1. There Is No Compelling Interest Overcoming Public Right of Access.

The commentary to Local Rule 79-5 requires a "compelling" interest to seal an exhibit or record. This finding cannot be made here. The public and the press which serves that public are entitled to know the details about the allegations and evidence in this important case.

AT&T has designated, in conclusory fashion, documents as confidential. But saying it doesn't make it so. These designations are, like the declarations at issue in the *Providian* case, "conclusionary and lacking in helpful specifics." (*Providian*, *supra*, 96 Cal.App.4th at 305.)

Rather, it seems that some or all of the documents "were not trade secrets because they had been disclosed to the public." (*Providian*, *supra*, 96 Cal.App.4th at 304-05.) As the *Providian* Court concluded, "it is...reasonable to infer from the declarations – and we do, in support of the trial court's order [citation omitted] – that the scripts, if not all at once, then at least in piecemeal fashion, were disclosed to defendants' customers. They have no other purpose. The scripts are sales pitches, and once they have been used, sales pitches are not treated as trade secrets." (*Id*. at 305.)

The *Providian* holding is fully applicable here, where it appears that the alleged "confidential" information AT&T seeks to seal is in fact information which has been disclosed, or is merely general business information and not true "trade secrets."

The Supreme Court has consistently frowned upon secrecy and sealed records. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, *supra*, 448 U.S. 555, 572. Indeed, even when military secrets have been at risk of disclosure, the Court has refused to allow secrecy to prevail. *See*, *e.g.*, *New York Times v. United States* [Pentagon Papers], 403 U.S. 713. If the possible disclosure of top-secret military plans does not justify secrecy, then the alleged trade secrets of AT&T should not be sealed either.

### 2. No Prejudice If Records Are Unsealed.

*Press-Enterprise* requires a "substantial probability" of prejudice to fair trial rights to deny access. Again, no such finding can be made. First, no party has shown any "overriding interest" in sealing papers. In any event, even if there were an "overriding interest" supporting secrecy, no showing of prejudice has been made. AT&T has failed to make any showing of competitive injury or other harm to its interests.

As the California Supreme Court observed in *NBC Subsidiary*, "'[a]n individual or corporate entity involved as a party to a civil case is entitled to a fair trial, not a private one.'" 20 Cal.4th at 1211.

### 3. The Proposed Sealing Is Not Narrowly Tailored.

Local Rule 79-5(b), in accordance with First Amendment principles, requires that any proposed sealing be narrowly tailored. *Press-Enterprise*, *supra*, 478 U.S. at 15. Even if a party to this action could have justified sealing <u>any</u> records – and no such showing has been or could be made – the sealing in this case is grossly overbroad. AT&T seeks to seal its entire brief and apparently has not filed a public redacted version of certain documents as required by Local Rule 79-5(b).

Unfortunately, the only thing "narrowly tailored" about the sealing requested in this case may be the ability of the public to understand what is happening in this dispute.

### 4. Less Restrictive Means.

The Court must also consider alternatives to sealing. *Press-Enterprise*, 478 U.S. at 15. Local Rule 79-5(b), for example, sets forth that even when some sealing may be justified – and again, no such finding can be made – the court should, "if practicable," direct sealing of "only those documents, pages, or, if practicable, those portions of documents or pages, which contain the information requiring confidentiality. All other portions of such documents shall be included in the public file." This is simple recognition that public access is the rule, not the exception. *Foltz*, *supra*, 331 F.3d at 1137; *San Jose Mercury News*, *supra*, 187 F.3d at 1102. The burden rests upon those who would deny public access to establish compelling reasons why records should be made private. There are no compelling reasons to deny access to the documents in question. They should be unsealed.[2]

---

[2] AT&T relies upon *Nixon v. Warner Communications*, 435 U.S. 589, and *Phillips v. General Motors*, 307 F.3d 1206 (9th Cir. 2002). Those cases are readily distinguishable. In *Nixon*, *supra*, 435 U.S. 589, 597, the Supreme Court first recognized, "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." The Court based its ruling that the President's interest in not releasing Watergate tapes outweighed the media's interest on a "unique element" (*Id*. at 603) – the fact that the media had an alternative means of access under the Presidential Recordings and Materials Preservation Act, 88 Stats. 1695. No such alternative means of access exists here, and thus *Nixon* – decided before *Richmond Newspapers* and *Press Enterprise* – is easily distinguishable. Moreover, in that case the question was not access per se but whether copies of the tapes must be made available for copying and sale. (*Id*. at 609.) "There [was] no question of a truncated flow of information to the public." (*Ibid*.) In *Phillips*, the issue was whether to unseal information produced by GM under a protective order during discovery. Here, on the other hand, AT&T seeks to seal a document which had not been the subject of a protective order and which has been filed in connection with an important motion. The Ninth Circuit's decision in *Foltz* is thus the applicable precedent. (*Foltz*, *supra*, 331 F.3d at 1136 [presumption of access not rebutted where documents subject to a protective order are filed under seal as attachments to a dispositive motion]; see also Cal. Rules of Court 243.1 Advisory Committee Comment [sealed records rules don't apply to discovery motions but do apply to documents submitted to court as basis for adjudication]. As *Foltz* explains, "when discovery material is filed with the court, its status changes." (331 F.3d at 1134.)

### D. The Parties Have Not Followed Procedural Prerequisites for Sealing.

The parties have also not followed the procedural prerequisites for sealing documents. As the Ninth Circuit has explained, "if a court contemplates sealing a document or transcript, it must provide sufficient notice to the public and press and afford them the opportunity to object or offer alternatives...a hearing on the objections must be held as soon as possible." *Phoenix Newspapers v. District Court*, 156 F.3d 940, 949 (9th Cir. 1998). AT&T's overbroad designation of documents as confidential frustrates the ability of the press and public to be heard on the question of sealing.

## IV. NATIONAL SECURITY INTERESTS DO NOT JUSTIFY CLOSURE OR SEALING.

Any argument for closure of hearings or sealing of documents based upon national security should also be rejected. In *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002), the Court affirmed a ruling granting a public right of access to deportation hearings. The Court took note of arguments based upon national security: "No one will ever forget the egregious, deplorable, and despicable terrorist attacks of September 11, 2001. These were cowardly acts. In response, our government launched an extensive investigation into the attacks, future threats, conspiracies, and attempts to come. As part of this effort, immigration laws are prosecuted with increased vigor." (*Id*. at 682.) But the Court rejected the argument that the Executive Branch's actions could be placed beyond public scrutiny: "<u>Democracies die behind closed doors</u>. The First Amendment, through a free press, protects the people's right to know that their government acts fairly, lawfully, and accurately in deportation proceedings. When government begins closing doors, it selectively controls information rightfully belonging to the people. Selective information is misinformation. The Framers of the First Amendment 'did not trust any government to separate the true from the false for us.'" (*Id*. at 683, emphasis added.) Accordingly, the Court found blanket closure of deportation hearings unconstitutional.[3]

---

[3] In *North Jersey Media Group v. Ashcroft*, 308 F.3d 198, 201, the Third Circuit disagreed with the Sixth Circuit's decision in *Detroit Free Press*, but the Third Circuit's decision was based largely on its conclusion that "the tradition of openness of deportation proceedings

*Detroit Free Press* strongly militates against closure. Likewise, in *New York Times v. United States*, *supra*, 403 U.S. 713, the "Pentagon Papers" case, the Supreme Court found that the national security interests proffered did not justify a prior restraint against publication of the Pentagon Papers. National security interests do not justify either closure or sealing in this case.

**V.  CONCLUSION**

This case involves a significant, high-profile case challenging the conduct of the government and the Bay Area's largest telecommunications provider. None of the combatants – the government, AT&T or plaintiff – can expect to have it resolved out of the public eye, and neither the parties nor any third parties have justified sealing of any documents. The Motion to Seal should be denied and all hearings in the matter should be open to the public.

Dated: May 17, 2006                                                                          LEVY, RAM & OLSON LLP


By:      */s/ Karl Olson*
                Karl Olson
                Attorneys for *San Francisco Chronicle*, *Los Angeles Times*, Associated Press, *San Jose Mercury News*, and Bloomberg News

F:\Docs\1064-02\OppMotUnseal.wpd

---

does not meet the standard required by *Richmond Newspapers*, or even its Third Circuit progeny." *North Jersey Media Group* is distinguishable on that point, because in this case no one can dispute that there is a tradition of openness in civil court proceedings. In any event, we respectfully submit that *Detroit Free Press* is the better-reasoned decision on the issue presented in those two cases (deportation proceedings).