1  Karl Olson (SBN 104760)
   Erica L. Craven (SBN 199918)
2  LEVY, RAM & OLSON LLP
   639 Front Street, 4th Floor
3  San Francisco, CA 94111
   Telephone: 415-433-4949
4  Facsimile: 415-433-7311

5  Attorneys for Intervenors *San Francisco Chronicle*,
   *Los Angeles Times*, The Associated Press,
6  *San Jose Mercury News*, Bloomberg News,
   and *USA Today*

7

8

9

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                       SAN FRANCISCO DIVISION

14  TASH HEPTING, GREGORY HICKS,          )   CASE NO. CV-06-0672-VRW
    CAROLYN JEWEL and ERIK KNUTZEN, on    )
15                                        )
    Behalf of Themselves and All Others Similarly )
16  Situated,                             )
                                          )   **NOTICE OF MOTION AND**
17                Plaintiffs,             )   **MOTION FOR LEAVE TO**
                                          )   **INTERVENE; NOTICE OF**
18         v.                             )   **MOTION AND MOTION TO**
                                          )   **UNSEAL DOCUMENTS**
19  AT&T CORP., et al.                    )
                                          )
20                Defendants.             )   Date:   June 23, 2006
                                          )   Time:   9:30 a.m.
21                                        )   Place:  Courtroom 6, 17th Floor
                                          )           [The Hon. Vaughn R. Walker]
22  _____ )
                                          )   **Complaint Filed:** January 31, 2006
23

24

25

26

27

28

Case No. CV-06-0672-VRW – NOTICE OF MOTION AND MOTION FOR LEAVE TO
INTERVENE; NOTICE OF MOTION AND MOTION TO UNSEAL DOCUMENTS

# TABLE OF CONTENTS

**Page #**

NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE;
NOTICE OF MOTION AND MOTION TO UNSEAL DOCUMENTS . . . . . . . . . . . . . . . . . .1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR LEAVE TO INTERVENE AND MOTION TO UNSEAL DOCUMENTS . . . .1

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.    THE MEDIA HAVE STANDING TO MOVE TO UNSEAL RECORDS.
       LEAVE TO INTERVENE SHOULD BE GRANTED. . . . . . . . . . . . . . . . . . . . . . . .3

III.   THE PRESS AND THE PUBLIC HAVE AN EXPRESS RIGHT OF ACCESS TO
       COURT PAPERS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

       A.     Records Filed in a Judicial Proceeding Are Presumptively Public, and May Not
              Be Sealed Unless there Is a Compelling Need to Do So. . . . . . . . . . . . . . . . . .4

       B.     The Public and the Press are Entitled to <u>Prompt</u> Access to the Records. . . . . . .6

       C.     None of the Findings Required by the Case Law and the First Amendment
              Can Be Made Here. The Public and Press Are Entitled to Full Access to
              Documents Filed With the Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

              1.     There Is No Compelling Interest Overcoming Public Right of Access. . .7

              2.     No Prejudice If Records Are Unsealed. . . . . . . . . . . . . . . . . . . . . . . . . . .9

              3.     The Proposed Sealing Is Not Narrowly Tailored. . . . . . . . . . . . . . . . . .9

              4.     Less Restrictive Means. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

       D.     Procedural Prerequisites for Sealing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

IV.    NATIONAL SECURITY INTERESTS DO NOT JUSTIFY CLOSURE
       OR SEALING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Associated Press v. United States District Court.*
    705 F.2d 1143 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Barr Laboratories, Inc. v. KOS Pharmaceuticals*
    362 F.Supp.2d 421 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Detroit Free Press v. Ashcroft*
    303 F.3d 681 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-16

*Ellsberg v. Mitchell*
    709 F.2d 51 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Elrod v. Burns*
    427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fitzgerald v. Penthouse Int'l, Ltd.*
    776 F.2d 1236 (4th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Foltz v. State Farm Ins. Co.*
    331 F.3d 1122 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 7, 10, 11, 16

*Globe Newspapers Co. v. Superior Court*
    457 U.S. 596 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Huffy Corporation v. Superior Court*
    112 Cal. App. 4th 97 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Providian Credit Card Cases*
    96 Cal. App. 4th 292 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 7, 8

*In re United States*
    872 F.2d 472 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Washington Post Co.*
    807 F.2d 383 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Kamakana v. City and County of Honolulu*
    2006 U.S. App. LEXIS 12101 (9th Cir. May 17, 2006) . . . . . . . . . . . 2, 3, 5-7, 10, 11, 16

*Kasza v. Browner*
    133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*
    998 F.2d 157 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Nebraska Press Assn. v. Stuart*
    427 U.S. 539 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*New York Times v. United States*
    403 U.S. 713 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

*Nixon v. Warner Communications*
    435 U.S. 589 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*North Jersey Media Group v. Ashcroft*
    308 F.3d 198 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Oregonian Publishing Co. v. District Court*
    920 F.2d 1462 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Paradise Hills Associates v. Procel*
    235 Cal. App. 3d 1528 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Phillips v. General Motors*
    307 F.3d 1206 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Phoenix Newspapers v. District Court*
    156 F.3d 940 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Press-Enterprise Co. v. Superior Court*
    464 U.S. 501 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Press-Enterprise Co. v. Superior Court*
    478 U.S. 1 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 9

*Richmond Newspapers, Inc. v. Virginia*
    448 U.S. 555 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 10, 14

*San Jose Mercury News v. U.S. District Court*
    187 F.3d 1096 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10

*State of California ex rel. Lockyer v. Safeway*
    355 F.Supp.2d 1111 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Moussaoui*
    65 Fed. Appx. 881, 2003 U.S. App. LEXIS 9170 (4th Cir. 2003) . . . . . . . . . . . 11, 12, 15

*United States v. Reynolds*
    345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Universal City Studios, Inc. v. Superior Court*
    110 Cal. App. 4th 1273 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Other Authorities**

Federal Rules of Civil Procedure, Rule 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Local Rule 79-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 9

Cal. Rules of Court 243.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**NOTICE OF MOTION AND MOTION FOR LEAVE TO INTERVENE; NOTICE OF MOTION AND MOTION TO UNSEAL DOCUMENTS**

**TO: ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on June 23, 2006, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, the *San Francisco Chronicle*, *Los Angeles Times*, The Associated Press, Bloomberg News, *San Jose Mercury News*, and *USA Today* division of Gannett Satellite Information Network, Inc., a Delaware corporation, will move, and hereby do move, for leave to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure and to unseal documents. These motions will be based upon these Notices of Motions and Motions, and upon the following Memorandum of Points and Authorities served and filed electronically herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE AND MOTION TO UNSEAL DOCUMENTS**

**I.    INTRODUCTION**

Members of the news media – the *San Francisco Chronicle*, *Los Angeles Times*, The Associated Press, *San Jose Mercury News*, Bloomberg News and the *USA Today* division of Gannett Satellite Information Network, a Delaware Corporation (hereafter collectively "media") – hereby move to intervene in this action for the limited purpose of vindicating the press and public's right of access to information. The media also move to unseal any and all sealed documents in this case.[1]

---

[1]    The Media Intervenors move to unseal any and all sealed documents in this case, such as the documents filed in connection with (1) Plaintiffs' Motion for Preliminary Injunction (including but not limited to the Memorandum of Points and Authorities and Klein and Marcus Declarations mentioned in Docket Nos. 30-32); (2) AT&T's Motion to Compel Return of Confidential Documents (including but not limited to the documents mentioned in Docket Nos. 41-42, 58, 63, 117); (3) AT&T's Memorandum in Support of Filing Documents Under Seal (including but not limited to the documents mentioned in Docket Nos. 51, 61-62, 71-72).

To extent received by the Court for its consideration on the Government's Motion to Dismiss, all documents filed under seal in connection with that motion including, but not limited to documents mentioned in Docket Nos. 125.

A heavy burden rests upon those who would either close a courtroom or seal documents, and AT&T's conclusory assertions of harm come nowhere close to meeting that burden. That burden is even heavier when, as here, a matter of national interest is at stake and the conduct of the government is being challenged. AT&T has failed to meet the heavy burden of continued sealing of these documents, particularly when the basic contents of them, including the Klein Declaration, have already been widely disseminated in the media.

Local Rule 79-5's Commentary explains that requests to seal must be "narrowly tailored" to seal only the particular information that is genuinely privileged or protectable as a trade secret or otherwise has a "compelling need" for confidentiality.

Likewise, the burden imposed on a party seeking to seal documents, under U.S. Supreme Court and Ninth Circuit precedent, is a very heavy one, and the burden rests upon those attempting to show "trade secrets" as a justification for sealing documents. *Foltz v. State Farm Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) [in the 9th Circuit, "we start with a strong presumption in favor of access to court records"]; *In re Providian Credit Card Cases,* 96 Cal. App. 4th 292, 301 (2002). This Court need not accept declarations from the parties or third parties as "dispositive," *In re Providian,* 96 Cal. App. 4th at 301, and it should reject declarations that are "conclusory and lacking in helpful specifics." *Id.* at 305. Mere assertions that closure or sealing serves a "compelling interest" do not suffice; specific evidentiary facts are required. *Oregonian Publishing Co. v. District Court*, 920 F.2d 1462, 1467 (9th Cir. 1990) (government failed to make evidentiary record of facts justifying closure).

As the Ninth Circuit recently reaffirmed in *Kamakana v. City and County of Honolulu* 2006 U.S. App. LEXIS 12101 (9th Cir. May 17, 2006), "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point. [Citations omitted.] A party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard. *Foltz*, 331 F.3d at 1135. That is, the party must 'articulate compelling reasons supported by specific factual findings,' [citation], that outweigh the general history of access and the public policies favoring disclosure,

such as the "'public interest in understanding the judicial process.'" [Citations.] In turn, the court must 'conscientiously balance the competing interests' of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must 'base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.'" 2006 U.S. App. LEXIS at *10-11. The media respectfully submit that no such compelling reasons have been or can be shown to seal the above pleadings lodged in connection with plaintiff's preliminary injunction motion.

## II. THE MEDIA HAVE STANDING TO MOVE TO UNSEAL RECORDS. LEAVE TO INTERVENE SHOULD BE GRANTED.

As the Supreme Court held in *Globe Newspapers Co. v. Superior Court*, 457 U.S. 596, 609 n. 25 (1982), "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion." In accordance with the Supreme Court's pronouncement, courts routinely permit the media to appear in criminal and civil cases in which they are not parties for the purpose of challenging requests or orders to seal judicial records. *See, e.g., San Jose Mercury News v. U.S. District Court*, 187 F.3d 1096, 1101 (9th Cir. 1999); *Kamakana*, 2006 U.S. App. LEXIS 12101 at *4 (newspaper granted leave to intervene for the limited purpose of unsealing the judicial record). Judge King of the Central District of California eloquently explained the benefits of press intervention in *State of California ex rel. Lockyer v. Safeway*, 355 F.Supp.2d 1111, 1124 (C.D. Cal. 2005), in the course of unsealing documents filed in connection with a Motion for Summary Judgment in an antitrust case: "the press has historically served as a monitor of both the State and the courts, and it plays a vital role in informing the citizenry on the actions of its government institutions."[2] Those words are especially apt here in a case challenging the conduct of the government. Thus, the press has standing to challenge an order sealing or an attempt to file records under seal, and this motion for

---

[2] The Court in *State v. Safeway* granted a motion by the *Los Angeles Times* to intervene for the purpose of moving to unseal documents in an antitrust case. *Id.*, at 1112 n.1.

leave to intervene so that the press can vindicate its and the public's right of access should be granted.

## III.  THE PRESS AND THE PUBLIC HAVE AN EXPRESS RIGHT OF ACCESS TO COURT PAPERS.

### A.  Records Filed in a Judicial Proceeding Are Presumptively Public, and May Not Be Sealed Unless there Is a Compelling Need to Do So.

The United States Supreme Court has held that the First Amendment guarantees the press and the public the right to attend trials and pre-trial proceedings. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580 (1980); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982); *Press-Enterprise Co. v. Superior Court,* 464 U.S. 501 (1984); *Press-Enterprise Co.* v. *Superior Court,* 478 U.S. 1, 10 (1986). This First Amendment guarantee applies to judicial records as well as proceedings. *Foltz*, *supra*, 331 F.3d at 1135; *Kamakana*, 2006 U.S. App. LEXIS 12101 at *10-16.

The Ninth Circuit and California courts have consistently rejected "trade secret" and similar claims advanced by corporate defendants who sought to seal documents. *Foltz*, *supra*, 331 F.3d at 1137; *State of Cal. v. Safeway*, *supra*, 355 F.Supp.2d at 1116-23 (unsealing companies' revenue-sharing agreement and rejecting their confidentiality assertions); *see also In Re Providian Credit Card Cases,* 96 Cal. App. 4th 292; *Universal City Studios, Inc. v. Superior Court*, 110 Cal. App. 4th 1273, 1275 (2003) (denying motion to seal settlement agreement); *Huffy Corporation v. Superior Court*, 112 Cal. App. 4th 97, 105-10 (2003) (denying motion to seal settlement agreement, sources of payments to settle cases, admissions of law violations, identities of witnesses, and identities of parties named by government as violating pollution laws). These cases mandate unsealing here.

The Third Circuit applied the presumptive right of access to material submitted in connection with a motion to dismiss and a motion for preliminary injunction – the motion in connection with which the Klein Declaration and exhibits were filed – in *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 164 (3d Cir. 1993). The Court concluded: "We believe that our earlier decisions and those in other courts lead ineluctably to the conclusion

that there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." The Court went on to explain that those asserting trade secrets bear the burden of justifying the confidentiality of each and every document they seek to seal and must make a showing based upon "current evidence to show how public dissemination of the pertinent materials now would cause the competitive harm [they] claim." *Id*. at 166-67. We respectfully submit that exhibits allegedly taken by Mr. Klein in 2004 cannot serve as "current evidence" of alleged competitive harm to AT&T.[3]

The Ninth Circuit in *Kamakana*, *supra*, recently reaffirmed that those seeking to seal records filed in connection with dispositive motions, such as a motion to dismiss which can be dispositive of this case, must meet the "compelling reasons" standard. "We adopted this principle of disclosure because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'" *Kamakana*, 2006 U.S. App. LEXIS 12101 at *12. While *Kamakana* referred to "dispositive motions" in the context of a summary judgment motion, its reasoning applies equally to documents submitted in conjunction with a preliminary injunction motion (docket numbers 30, 31 and 32) which inevitably involve consideration of the merits of a dispute. *See also Leucadia*, *supra*, 998 F.2d at 164 (applying presumptive right of access to non-discovery motions including preliminary injunction motions). *Kamakana* differentiated between motions which go to the merits and non-dispositive motions which may often be "'unrelated, or only tangentially related, to the underlying cause of action.'" *Kamakana*, 2006 U.S. App. LEXIS 12101 at *13 (quoting *Foltz*, *supra*, 331 F.3d at 1135). Applying that analysis, the pleadings in question here – the preliminary injunction motion and the declarations and exhibits filed in connection with it – certainly go to the merits.

---

[3]     The Court in *Barr Laboratories, Inc. v. KOS Pharmaceuticals*, 362 F.Supp.2d 421 (S.D.N.Y. 2005) denied a motion to close the courtroom during a hearing on a preliminary injunction motion involving alleged trade secrets.

Accordingly, any party seeking to seal records in this case must show "compelling reasons" supported by "specific factual findings."[4]

### B. The Public and the Press are Entitled to <u>Prompt</u> Access to the Records.

The sealing of court records cannot be premised on delaying rather than denying access. Time is of the essence to effective news coverage. A "total restraint on the public's first amendment right of access [is prohibited] even though the restraint is limited in time." *Associated Press v. United States District Court.,* 705 F.2d 1143, 1147 (9th Cir. 1983). "Loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *accord Paradise Hills Associates v. Procel,* 235 Cal. App. 3d 1528, 1538 (1991) (citation omitted) ("[T]he deprivation of first amendment rights for even minimal periods constitutes irreparable harm in the context of an action for injunctive relief.").

The United States Supreme Court has consistently emphasized the importance of <u>contemporaneous</u> access to judicial proceedings and records. *See, e.g., Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 561 (1976) ("As a practical matter, moreover, <u>the element of time is not unimportant if press coverage is to fulfill its traditional function of bringing news to the public promptly</u>"). This case is unquestionably of great public interest and the need for contemporaneous access is paramount. It alleges misconduct by the government and also challenges the conduct of a large corporate entity.

On the other hand, no presumption of prejudice to the parties' interests may be indulged. "The mere fact that the production of records may lead to a litigant's embarrassment,

---

[4]     AT&T may argue that this Court has already made such findings in its May 17, 2006 Civil Minute Order. We respectfully disagree. This Court's comments at argument simply evinced a desire to preserve the *status quo* until a further hearing could be held, and the media had not yet had a chance to weigh in (its hastily-filed brief was E-filed an hour before the hearing). This Court's order simply said that papers previously lodged under seal "shall remain under seal <u>pending further order of court</u>." (Emphasis added.) The Ninth Circuit in *Kamakana* explained, "The 'compelling reasons' standard is invoked <u>even if the dispositive motion, or its attachments, were previously filed under seal or protective order</u>." 2006 U.S. App. LEXIS 12101, *12, emphasis added.

---

incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, *supra*, 2006 U.S. App. LEXIS 12101 at *11 (citing *Foltz*, 331 F.3d at 1136). The *Kamakana* Court affirmed the district court's unsealing of records both under the "compelling reasons" and "good cause" standards. *Id*. at *2, *35. The Ninth Circuit "embrace[d] the judge's decision to carefully review every document. . . . in the face of the somewhat tepid and general justifications offered for sealing the documents. . . . The judge took seriously the presumption of public access and did so in accord with precedent from the Supreme Court and this court." *Id*. at *35. This Court should do likewise and unseal those papers filed or lodged under seal.[5]

### C. None of the Findings Required by the Case Law and the First Amendment Can Be Made Here. The Public and Press Are Entitled to Full Access to Documents Filed With the Court.

Even when a criminal defendant's constitutional right to a fair trial is at issue, the Supreme Court has held that proceedings cannot be closed to the public unless "there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Press-Enterprise*, *supra*, 478 U.S. at 14.

### 1. There Is No Compelling Interest Overcoming Public Right of Access.

The commentary to Local Rule 79-5, in line with the Ninth Circuit's decisions, requires a "compelling" interest to seal an exhibit or record. This finding cannot be made here. The public and the press which serves that public are entitled to know the details about the allegations and evidence in this important case.

AT&T has argued, in conclusory fashion, that certain documents are confidential. But saying it doesn't make it so. Its conclusory declarations are, like those in *Providian*, "conclusionary and lacking in helpful specifics." *Providian*, 96 Cal. App. 4th at 305. Rather, it seems that some or all of the documents "were not trade secrets because they had been disclosed

---

[5]    The district court in *Kamakana* "unsealed virtually all of the pleadings and documents." *Id*. at *2.

to the public." *Providian*, *supra*, 96 Cal. App. 4th at 304-05. As the *Providian* Court concluded, "it is . . . reasonable to infer from the declarations – and we do, in support of the trial court's order [citation omitted] – that the scripts, if not all at once, then at least in piecemeal fashion, were disclosed to defendants' customers. They have no other purpose. The scripts are sales pitches, and once they have been used, sales pitches are not treated as trade secrets." *Id*. at 305.

The *Providian* holding is fully applicable here, where it appears that the alleged "confidential" information AT&T seeks to seal is in fact information which has been disclosed, or is merely general business information and not true "trade secrets."

Significantly, it appears that the general contents of the Klein Declaration and exhibits have been publicly disclosed. AT&T itself has told the Court that Mr. Klein's declaration, and at least the general contents of its exhibits, has been reported in the *New York Times*, c/net News, and Wired news. *See* Declaration of Bruce Ericson in Support of AT&T's Motion to Compel Return of Confidential Documents, Docket No. 43, and Exhibits D, H, I, J and K thereto. The morning of the May 17, 2006 hearing in this Court, Wired News went into great detail about Mr. Klein's statement, reporting that AT&T in 2003 built a "secret room" in room 641A at 611 Folsom Street, and reporting that AT&T used "splitters" which split off a percentage of the light signal from fiber-optic cables to enable third parties to examine the data flowing between sender and recipient on the Internet. *See* "AT&T Whistle-Blower's Evidence," Wired May 17, 2006, Exhibit A to Karl Olson Declaration filed herewith. In short, even if the contents of Mr. Klein's Declaration and Exhibits were once a trade secret – and AT&T has failed to meet its burden of demonstrating any such trade secret – they are trade secrets no longer. *See, e.g.*, *Providian*, *supra*, 96 Cal. App. 4th at 304-05 (disclosure to public defeats trade secret claim).

The Supreme Court has consistently frowned upon secrecy and sealed records. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, *supra*, 448 U.S. 555, 572. Indeed, even when military secrets have been at risk of disclosure, the Court has refused to allow secrecy to prevail. *See, e.g.*, *New York Times v. United States* [Pentagon Papers], 403 U.S.

713 (1971). If the possible disclosure of top-secret military plans does not justify secrecy, then the alleged trade secrets of AT&T should not be sealed either.

### 2. No Prejudice If Records Are Unsealed.

*Press-Enterprise* requires a "substantial probability" of prejudice to fair trial rights to deny access. Again, no such finding can be made. First, no party has shown any "overriding interest" in sealing papers. In any event, even if there were an "overriding interest" supporting secrecy, no showing of prejudice has been made. AT&T has failed to make any showing of competitive injury or other harm to its interests.

As the California Supreme Court observed in *NBC Subsidiary (KNBC-TV), Inc. V. Superior Court*, 20 Cal. 4th 1178 (1999), "'[a]n individual or corporate entity involved as a party to a civil case is entitled to a fair trial, not a private one.'" *Id.* 20 Cal. 4th at 1211.

### 3. The Proposed Sealing Is Not Narrowly Tailored.

Local Rule 79-5(b), in accordance with First Amendment principles, requires that any proposed sealing be narrowly tailored. *Press-Enterprise*, *supra*, 478 U.S. at 15. Even if a party to this action could have justified sealing any records – and no such showing has been or could be made – the sealing in this case is overbroad. At this writing, public redacted versions of plaintiff's preliminary injunction motion and supporting papers have not been filed; the media reserves the right to comment further on this issue after the parties, as directed by the Court, submit jointly agreed-upon redacted versions of the preliminary injunction motion (Docket number 30) and Klein Declaration (Docket number 31).

The only thing "narrowly tailored" about the sealing originally requested in this case may be the ability of the public to understand what is happening in this dispute.

### 4. Less Restrictive Means.

The Court must also consider alternatives to sealing. *Press-Enterprise*, 478 U.S. at 15. Local Rule 79-5(b), for example, sets forth that even when some sealing may be justified – and again, no such finding can be made – the court should, "if practicable," direct sealing of "only those documents, pages, or, if practicable, those portions of documents or pages, which contain

the information requiring confidentiality.  All other portions of such documents shall be included in the public file."  This is simple recognition that public access is the rule, not the exception. *Kamakana*, *supra*, 2006 U.S. App. LEXIS 12101 at *35 ("embracing" a "careful review" of every document); *Foltz*, *supra*, 331 F.3d at 1137; *San Jose Mercury News*, *supra*, 187 F.3d at 1102.  The burden rests upon those who would deny public access to establish compelling reasons why records should be made private.  There are no compelling reasons to deny access to the documents in question.  They should be unsealed.[6]

## D.     Procedural Prerequisites for Sealing.

As the Ninth Circuit has explained, "if a court contemplates sealing a document or transcript, it must provide sufficient notice to the public and press and afford them the opportunity to object or offer alternatives . . . a hearing on the objections must be held as soon as possible."  *Phoenix Newspapers v. District Court*, 156 F.3d 940, 949 (9th Cir. 1998).  Overbroad designation of documents as confidential frustrates the ability of the press and public to be heard on the question of sealing.

---

[6]     AT&T relies upon *Nixon v. Warner Communications*, 435 U.S. 589 (1978), and *Phillips v. General Motors*, 307 F.3d 1206 (9th Cir. 2002).  Those cases are readily distinguishable.  In *Nixon*, *supra*, 435 U.S. 589, 597, the Supreme Court first recognized, "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."  The Court based its ruling that the President's interest in not releasing Watergate tapes outweighed the media's interest on a "unique element," *id*. at 603, the fact that the media had an alternative means of access under the Presidential Recordings and Materials Preservation Act, 88 Stats. 1695.  No such alternative means of access exists here, and thus *Nixon* – decided before *Richmond Newspapers* and *Press Enterprise* – is easily distinguishable.  Moreover, in that case the question was not access *per se* but whether copies of the tapes must be made available for copying and sale.  *Id*. at 609.  "There [was] no question of a truncated flow of information to the public."  *Id*.  In *Phillips*, the issue was whether to unseal information produced by GM under a protective order during discovery.  Here, on the other hand, AT&T seeks to seal a document which had not been the subject of a protective order and which has been filed in connection with an important motion.  The Ninth Circuit's decisions in *Foltz* and *Kamakana* are thus the applicable precedents.  *Foltz*, *supra*, 331 F.3d at 1136 (presumption of access not rebutted where documents subject to a protective order are filed under seal as attachments to a dispositive motion); *see also* Cal. Rules of Court 243.1 Advisory Committee Comment (sealed records rules don't apply to discovery motions but do apply to documents submitted to court as basis for adjudication).  As *Foltz* explains, "when discovery material is filed with the court, its status changes."  *Foltz*, 331 F.3d at 1134.

---

## IV. NATIONAL SECURITY INTERESTS DO NOT JUSTIFY CLOSURE OR SEALING.

In this case, the Government has apparently lodged *in camera* affidavits supporting its assertion of the state secrets privilege and an unredacted version of its brief in support of its motion to dismiss. At the same time, the Government has filed a public, redacted version of its brief as well as public versions of the Negroponte and Alexander affidavits.

The fact that the Government may submit materials *in camera* does not give it *carte blanche* to unilaterally decide what materials do or do not belong on the public record. As the Ninth Circuit just emphasized, "Simply invoking a blanket claim [of a privilege], such as privacy or law enforcement, will not, without more, suffice to exempt a document from the public's right of access." *Kamakana*, *supra*, 2006 U.S. App. LEXIS at *29-*30. If the law were otherwise, the Government could redact facts and arguments based at least in part on a preference to keep certain litigation arguments from the public, rather than on any genuine state secrecy concerns.

It is ultimately the responsibility of the Court, rather than the party seeking confidentiality, to determine whether material submitted under seal should appropriately remain under seal. *Kamakana*, 2006 U.S. App. LEXIS at *34-*35 (noting with approval that the trial court had "meticulously" and "carefully review[ed] every document"). Moreover, even if the Court determines that a party has asserted a valid claim of privilege or other confidentiality interest, it must ensure that any seal sweeps no more broadly than is necessary to protect the interest at stake. *See generally Foltz*, *supra*, 331 F.3d at 1138.

Indeed, the case law describing the procedure for invoking the state secrets privilege makes clear that these general principles of public access apply equally to this specific context. Even where national security interests are invoked, "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953); *see also United States v. Moussaoui*, 65 Fed. Appx. 881, 887, 2003 U.S. App. LEXIS 9170 at *9. (4th Cir. 2003) ("[T]he mere assertion of national security concerns by the Government is not sufficient reason to close a hearing or deny access to documents."). In *Ellsberg v. Mitchell*, 709 F.2d 51, 63-64 (D.C. Cir. 1983), the D.C. Circuit considered at some

length the question of how material should be divided between the public and non-public record when the government seeks to invoke the state secrets privilege.

*Ellsberg* held that, as a general rule, "[t]he more specific the public explanation" the easier it is for the judge to "fulfill[] his duty to disentangle privileged from non-privileged materials-to ensure that no more is shielded than is necessary to avoid the anticipated injuries." *Id*. at 63. Therefore, it held that "the government [must] either (a) publicly explain in detail the kinds of injury to national security it seeks to avoid and the reason those harms would result from revelation of the requested information or (b) indicate why such an explanation would itself endanger national security." *Id*. at 63-64. Ultimately, however it is the responsibility of the trial judge to "be sure that the government has justified its claim in as much [public] detail as is feasible (and would be helpful) without undermining the privilege itself." *Id*. at 64.

The Ninth Circuit's decision in *Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) further illustrates these principles. While the Court in *Kasza* affirmed the district court's determination that the state secrets privilege was properly invoked, it also ordered the district court to consider whether the transcript of a particular hearing that had been sealed should nonetheless be publicly released, and issue a "statement of reasons" if the court decided to maintain the seal. *Id*. at 1175. Similarly, in the trial of Zacarias Moussaoui, the Fourth Circuit considered how to treat information filed under seal by the government. Notwithstanding the government's claim of secrecy, the Court found that "not all of the documents therein are classified, and it appears that at least some of the documents that contain classified information could be made public (assuming a common law or First Amendment right of access attaches) after classified material is redacted." *Moussaoui*, 65 Fed. Appx. at 888-89, 2003 U.S. App. LEXIS at *15. It reaffirmed the duty of courts to "independently determine whether, and to what extent, the proceedings and documents must be kept under seal." *Id*.

Therefore, if the Court considers the *in camera* versions of the Government's submissions before ruling on its motion to dismiss, it must also determine whether any or all of the Government's redactions are truly necessary to protect legitimate national security concerns.

If the Court finds that the Government has redacted more material than necessary to support its claim of privilege, it must identify any improper redactions and order the Government to disclose them on the public record.[1]

Of course, Media Intervenors cannot address the merits of any of the Government's specific redactions since we do not have access to that material. However, as the Court assesses the propriety of each of those redactions, we do note that on their face the Government's redactions appear to sweep rather broadly. In virtually all of the cases the Government cites that involved *in camera* submissions in support of a claim of state secrets, the submissions appear to have been limited to affidavits by government officials containing their explanation of the allegedly secret material. *See, e.g., Kasza*, 133 F.3d at 1163 (discussing an "unclassified declaration as well as a classified declaration, which was submitted for *in camera* review by the district court"); *In re United States*, 872 F.2d 472, 474 (D.C. Cir. 1989) (discussing government official's classified declaration); *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236, 1238 (4th Cir. 1985) ("the Navy filed its motions supported by an *in camera* affidavit containing classified information"). Here, the Government has also redacted significant portions of its memorandum of law. Therefore, we urge the Court to exercise particular care when reviewing the propriety of those redactions.

The Fourth Circuit has eloquently explained the vital role of the judiciary as a check on executive assertions of national security to defeat access to information: "troubled as we are by the risk that disclosure of classified information could endanger the lives of both Americans and their foreign informants, we are equally troubled by the notion that the judiciary should abdicate its decision-making responsibility to the executive branch whenever national security concerns are present. History teaches us how easily the spectre of a threat to 'national security' may be used to justify a wide variety of repressive government actions. A blind acceptance by the courts

---

[1]    As a practical matter, the Court could simply identify specific paragraphs that have been improperly redacted, and order the Government to file a new, public version of its brief and/or supporting affidavits with those particular redactions removed.

of the government's insistence on the need for secrecy, without notice to others, without

argument, and without a statement of reasons, would impermissibly compromise the

independence of the judiciary and open the door to possible abuse." *In re Washington Post Co.*,

807 F.2d 383, 391-92 (4th Cir. 1986).

Those observations did not lose their cogency after September 11, 2001, and thus any

argument for closure of hearings or blanket sealing of documents based upon national security

should be rejected. In *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002), the Court

affirmed a ruling granting a public right of access to deportation hearings. The Court took note

of arguments based upon national security: "No one will ever forget the egregious, deplorable,

and despicable terrorist attacks of September 11, 2001. These were cowardly acts. In response,

our government launched an extensive investigation into the attacks, future threats, conspiracies,

and attempts to come. As part of this effort, immigration laws are prosecuted with increased

vigor." *Id*. at 682. But the Court rejected the argument that the Executive Branch's actions

could be placed beyond public scrutiny: "<u>Democracies die behind closed doors</u>. The First

Amendment, through a free press, protects the people's right to know that their government acts

fairly, lawfully, and accurately in deportation proceedings. When government begins closing

doors, it selectively controls information rightfully belonging to the people. Selective

information is misinformation. The Framers of the First Amendment 'did not trust any

government to separate the true from the false for us.'" *Id*. at 683, emphasis added. Accordingly,

the Court found blanket closure of deportation hearings unconstitutional.[2]

*Detroit Free Press* strongly militates against closure or sealing. Likewise, in *New York

Times v. United States*, *supra*, 403 U.S. 713, the "Pentagon Papers" case, the Supreme Court

---

[2]     In *North Jersey Media Group v. Ashcroft*, 308 F.3d 198, 201 (3d Cir. 2002), the
Third Circuit disagreed with the Sixth Circuit's decision in *Detroit Free Press*, but the Third
Circuit's decision was based largely on its conclusion that "the tradition of openness of
deportation proceedings does not meet the standard required by *Richmond Newspapers*, or even
its Third Circuit progeny." *North Jersey Media Group* is distinguishable on that point, because
in this case no one can dispute that there is a tradition of openness in civil court proceedings. In
any event, we respectfully submit that *Detroit Free Press* is the better-reasoned decision on the
issue presented in those two cases (deportation proceedings).

found that the national security interests proffered did not justify a prior restraint against publication of the Pentagon Papers. National security interests do not justify either closure or blanket sealing in this case.

The media takes no position at this time on the issue whether this case can be litigated without deciding the state secrets issue, thereby obviating any need for the court to review the government's classified memorandum and declarations.

The media entities filing this brief do submit, however, as argued above, that if the Court does review the government's classified memorandum and declarations, it must, independently examine the government's redactions and the material withheld from the unclassified Motion to Dismiss, to ensure that redactions are "no greater than necessary." *See*, *e.g.*, *Moussaoui*, 65 Fed. Appx. 881, 2003 U.S. App. LEXIS 9170 at *13. "[T]he mere assertion of national security concerns by the Government is not sufficient reason to close a hearing or deny access to documents." 2003 U.S. App. LEXIS at *9. In *Moussaoui*, for example, which involved the Classified Information Procedures Act[3], the Court observed: "We doubt . . . that either the unclassified information in the classified appendix, or the documents in the unclassified appendix, need to remain sealed in their entirety. As noted above, while the classified appendix contains a number of classified documents, not all of the documents therein are classified, and it appears that at least some of the documents that contain classified information could be made public (assuming a common law or First Amendment right of access attaches) after classified material is redacted." *Id*., 2003 U.S. App. LEXIS at *14. The court observed that some of the documents in the unclassified appendix fell within the presumption of access, reaffirmed that the burden of establishing that a particular document should be sealed rests on the party promoting the denial of access, and held "we think it is appropriate to require the Government to justify the continued sealing of the unclassified materials in the classified and unclassified appendices." *Id.*, 2003 U.S. App. LEXIS at 15-16.

---

[3]    That act applies only in criminal cases.

In short, any consideration of a classified memorandum – if the court considers it – should take into account the "compelling reasons" standard enunciated by the Ninth Circuit in *Kamakana* and *Foltz* and should adhere to what the Ninth Circuit embraced in *Kamakana* – a "careful review [of] every document." *Kamakana*, 2006 U.S. App. LEXIS 12101 at *35.[4]

---

[4] Media Intervenors agree with the Government's characterizations of the September 11, 2001 terrorist attacks and its observation that "finding al Queda sleeper agents in the United States in Support of State Secret's Privilege remains one of the paramount national security concerns to this day." Brief of the United States at 6. Nonetheless, as the Court reviews the propriety of *in camera* designations, we respectfully submit that experience since September 11 demonstrates that the mere fact that the Government asserts that the sealing of judicial proceedings or documents is essential to national security does not necessarily make it so.

Shortly after those attacks two Circuits considered the constitutionality of the Government's policy of barring all public access to the deportation hearings of the hundreds of persons arrested in connection with the investigation of the September 11 attacks. *See New Jersey Media Group v. Ashcroft, supra*, 308 F.3d 198; *Detroit Free Press v. Ashcroft, supra*, 303 F.3d 681. In both cases, government officials submitted detailed affidavits arguing that the closure of such hearings was necessary to avoid "disclosing potentially sensitive information to those who may pose an ongoing security threat to the United States and its interests" and "reveal[ing] to [a] terrorist organization which of its cells have been significantly compromised," assertions which the Third Circuit found to be dispositive. *New Jersey Media*, 308 F.3d at 203.

Yet six months after the Third Circuit affirmed the government's policy in reliance on those affidavits, the Justice Department's independent Inspector General issued a report revealing that virtually none of the hundreds of persons arrested and deported post-September 11 had anything to do with terrorism, many had been cleared of any suspected association with terrorism *before* their deportation hearings, and the grounds for their deportation were simply routine violations of federal immigration law, such as expired visas. *See* U.S. Department of Justice Inspector General, *The September 11 Detainees: A Review of the Treatment of Aliens Held on Immigration Charges in Connection with the September 11 Attacks* (April, 2003). Thus, while the Government's assertions of need to restrict public access on national security grounds may be entitled to some deference, experience suggests that a preference for secrecy *qua* secrecy may all too readily be confused with the nation's genuine security interests. As the Fourth Circuit stated: "History teaches us how easily the spectre of a threat to 'national security' may be used to justify a wide variety of repressive government actions." *Washington Post, supra*, 807 F.2d at 391-92 (rejecting "blind acceptance by the courts of the government's insistence on the need for secrecy").

V.     **CONCLUSION**

This case involves a significant, high-profile case challenging the conduct of the government and the Bay Area's largest telecommunications provider.  None of the combatants – the government, AT&T or plaintiff – can expect to have it resolved out of the public eye, and neither the parties nor any third parties have justified sealing of the documents in question.  This motion for leave to intervene should be granted, and, *inter alia*, the documents filed under seal as specified in the proposed order should be unsealed.


Dated: May 19, 2006                                          LEVY, RAM & OLSON LLP


                                         By:           */s/ Karl Olson*
                                                  Karl Olson
                                                  Attorneys for *San Francisco Chronicle*, *Los Angeles Times*, The Associated Press, *San Jose Mercury News*, Bloomberg News and *USA Today*

F:\Docs\1064-02\Pleadings\MotIntervene-Unseal.wpd