1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    Timothy L. Alger (Bar No. 160303)
   timalger@quinnemanuel.com
3    Leah J. Russin (Bar No. 225336)
   leahrussin@quinnemanuel.com
4  865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:    (213) 443-3100

7
8  Attorneys for Lycos, Inc. and Wired News

9

10                UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13

| 14 | TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIC KNUTZEN on Behalf of Themselves and All Others Similarly Situated, | CASE NO. CV-06-0672-VRW |
|----|----|----|
| 15 | | NOTICE OF MOTION AND MOTION BY LYCOS, INC. AND WIRED NEWS FOR ORDERS |
| 16 | | |
| 17 | Plaintiffs, | (1) PERMITTING INTERVENTION, AND (2) UNSEALING DOCUMENTS; |
| 18 | vs. | |
| 19 | | |
| 20 | AT&T CORP., et al., | MEMORANDUM OF POINTS AND AUTHORITIES |
| 21 | Defendants. | |
| 22 | | |
| 23 | | Hearing Date:  June 29, 2006 Time:  2:00 p.m. |
| 24 | | Place:  Courtroom 6, 17th Floor    (Hon. Vaughn R. Walker) |
| 25 | | |
| 26 | | Complaint Filed: January 31, 2006 |

27

28

Case No. CV-06-0672-VRW
LYCOS AND WIRED'S MOTION TO INTERVENE AND UNSEAL

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on June 29, 2006 at 2:00 p.m., proposed intervenors Lycos, Inc., the owner and operator of Wired News, and Wired News, will, and hereby do, move this Court for (1) an order granting intervention in this action for the limited purpose of seeking the unsealing of certain documents; and (2) an order removing the seal on the Declaration of Mark Klein and Exhibits A-C (Docket No. 31) and the Declaration of J. Scott Marcus (Docket No. 32).

This motion is made on the grounds that Wired News is a news organization and is permitted to intervene in this action pursuant Rule 24(b)(2) of the Federal Rules of Civil Procedure for the purpose of vindicating the public interest in access to court proceedings. San Jose Mercury News v. U.S. District Court, 187 F.3d 1096, 1100 (9th Cir. 1999). Any private interest in keeping the documents under seal is not compelling, and is far outweighed by the public interest in access to the documents, given that they contain evidence that Defendants AT&T Corp. and AT&T, Inc. (collectively "AT&T") intercepted voice and Internet communications for the purpose of supplying those communications, without court authorization, to the federal government. The documents have been placed at issue by the litigants, and many of the documents already have been disclosed to the public. Moreover, AT&T cannot establish that the documents, given their nature, are trade secrets and merit confidential treatment by the Court.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, all the pleadings, records and papers on file in this action, such matters of which this Court may take judicial notice, and upon such other

//

//

//

evidence and oral argument as may be considered by the Court before or at a
hearing on this Motion.

DATED:  May 23, 2006                    Respectfully submitted,

                                        QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP


                                        By  */s/  Timothy L. Alger*
                                            Timothy L. Alger
                                            Attorneys for Lycos, Inc. and Wired News

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

INTRODUCTION ................................................................................ 1

ARGUMENT .................................................................................... 2

I.  LYCOS AND WIRED NEWS SHOULD BE ALLOWED TO INTERVENE ................................................................................ 2

II. JUDICIAL PROCEEDINGS HAVE A STRONG PRESUMPTION IN FAVOR OF OPENNESS ......................................................... 3

III. MANY OF THE DOCUMENTS ALREADY ARE PUBLIC AND THEREFORE SHOULD NOT REMAIN UNDER SEAL .......................... 7

IV. THE DOCUMENTS HAVE BEEN PLACED AT ISSUE AND SHOULD NEVER HAVE BEEN FILED UNDER SEAL ......................... 8

    A.  The Seal Imposes an Undue Burden on the Public's Right of Access ............................................................................ 8

        1.  Wired News has a First Amendment Right of Access ................ 9

        2.  Wired News has a Common Law Right of Access ..................... 9

    B.  AT&T Cannot Establish That the Documents Should Remain Sealed ........................................................................ 11

CONCLUSION ................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

## Cases

Bartnicki v. Vopper,
  532 U.S. 514 (2001) ........................................................................ 12, 13

Beckman Indus., Inc. v. International Ins. Co.,
  966 F.2d 470 (9th Cir. 1992) ........................................................... 2

Brown & Williamson Tobacco Corp. v. F.T.C.,
  710 F.2d 1165 (6th Cir. 1983) ........................................................ 4, 5

Matter of Cont'l Illinois Sec. Litig.,
  732 F.2d 1302 (7th Cir. 1984) ........................................................ 5

Cox Broadcasting Corp. v. Cohn,
  420 U.S. 469 (1975) ......................................................................... 6, 7

Foltz v. State Farm Mutual Auto Ins. Co.,
  331 F.3d 1122 (9th Cir. 2003) ........................................... 5, 10, 11

Globe Newspapers Co. v. Superior Court,
  457 U.S. 596 (1982) ......................................................................... 2

Grove Fresh Distrib., Inc. v. Everfresh Juice Co.,
  24 F.3d 893 (7th Cir. 1994) ............................................................. 6

Joy v. North,
  692 F.2d 880 (2d Cir. 1982) ............................................................ 5

Kamakana v. City & County of Honolulu,
  __ F.3d __, No. 04-15241, 2006 WL 1329926 (9th Cir. 2006) ........... 6, 9, 10, 11

Religious Tech. Ctr. v. Netcom On-Line Comm. Servs.,
  923 F.Supp. 1231 (N.D. Cal. 1995) ................................................ 7

NBC Subsidiary (KNBC-TV), Inc. v. Superior Court,
  20 Cal. 4th 1178, 86 Cal. Rptr. 2d 778, 980 P.2d 337 (1999) ............... 9

Nebraska Press Ass'n v. Stuart,
  423 U.S. 1327 (1975) ....................................................................... 6

New York Times Co. v. United States,
  403 U.S. 713 (1971) ......................................................................... 10

Oregonian Publishing Co. v. U.S. District Court,
  920 F.2d 1462 (9th Cir. 1990) ........................................................ 8

Press-Enterprise Co. v. Superior Court,
  478 U.S. 1 (1986) .............................................................................. 9

Publicker Indus., Inc. v. Cohen,
    733 F.2d 1059 (3d Cir. 1984)...............................................................5

Reno v. American Civil Liberties Union,
    521 U.S. 844 (1997) ........................................................................8

Republic of the Philippines v. Westinghouse Elec. Corp.,
    949 F.2d 653 (3d Cir. 1991) ............................................................5

Richmond Newspapers, Inc. v. Virginia,
    448 U.S. 555 (1980) ......................................................................3, 4

San Jose Mercury News v. U.S. District Court,
    187 F.3d 1096 (9th Cir. 1999) ...................................................2, 6, 8

Washington Post v. Robinson,
    935 F.2d 282 (D.C. Cir. 1991) ........................................................8

Wilson v. American Motors Corp.,
    759 F.2d 1568 (11th Cir. 1985) .......................................................5

## **Statutes**

Cal. Civ. Code § 3426.1...........................................................................7

Federal Rules of Civil Procedure, Rule 24(b) .........................................2

## **Other Authorities**

Time, "Does This Man Have Your Number?"
    May 22, 2006 ...............................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In this class-action lawsuit, telephone and Internet customers accuse the nation's largest telecommunications company of breaking the law by intercepting communications and providing them to the United States Government without court approval. For more than 200 years, Americans have understood that they have a right to engage in private communications, without fear that the government (unless it obtains a warrant) is listening in. During the past six months, it has come to light that the federal government has undertaken an ambitious effort to track and monitor a mind-numbing volume of communications carried over telephone lines operated by, among others, Defendants AT&T Corp. and AT&T, Inc. (collectively "AT&T").

The manner in which AT&T has assisted the government in its domestic spying program is a matter of intense public interest. The Electronic Frontier Foundation ("EFF") has sued AT&T on behalf of the carrier's customers and, in support of that lawsuit, EFF has filed under seal the Declaration of Mark Klein, a former AT&T technician, about 100 pages of exhibits, and the Declaration of J. Scott Marcus, an expert who reviewed Klein's information. Klein has disseminated some of the documents he possesses to EFF and the news media, and freely acknowledged this in court papers. Given that AT&T, EFF, Klein, an EFF-retained expert, the government, and the Court have possession of the documents, it appears that the only people who do *not* know what evidence has been submitted by EFF to support its claims are those with the greatest interest – the American public.

*Moreover, the course of events has overtaken the sealing order*. On May 22, 2006, Wired News, which is owned and operated by Lycos, Inc., published 29 pages of documents that it understands are among the documents that were exhibits to the Klein Declaration and remain under seal. Wired News obtained the documents lawfully. It is clear from the documents that the allegations of EFF,

based on evidence provided by Klein, depend on a review and consideration of *all* the records, including many that do not belong to AT&T. The public can evaluate the credibility of the plaintiffs' case only through disclosure of documents which, according to EFF, are *the principal basis for its claims*, and which allegedly entitle plaintiffs to litigate notwithstanding the state-secret privilege asserted by the government. (See Docket No. 134 at 5-7 (Plaintiffs' Memo. in Response to 5/17/06 Order).)

It is unclear whether all of the documents published by Wired News are among the sealed documents. Even if they are, the contents of the *other* materials (approximately 70 pages) filed with the Court are unknown. Wired News, on behalf of itself and the public, has an interest – which has been repeatedly recognized by the Ninth Circuit and other courts – in obtaining the disclosure of the documents filed under seal. The American people are entitled to understand this Court's proceedings and view the documents that appear to contain evidence supporting grave claims against AT&T. Accordingly, Lycos, Inc. and Wired News should be allowed to intervene for the limited purpose of seeking the unsealing of documents.

## **ARGUMENT**

### I.     LYCOS AND WIRED NEWS SHOULD BE ALLOWED TO INTERVENE

Media organizations are permitted to intervene to be heard on issues related to the sealing of documents. Globe Newspapers Co. v. Superior Court, 457 U.S. 596, 609 n.25 (1982). Accordingly, motions to intervene are routinely granted where the media seek the unsealing of documents or open court proceedings. See, e.g., San Jose Mercury News v. U.S. District Court, 187 F.3d 1096, 1100 (9th Cir. 1999); see also Beckman Indus., Inc. v. International Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992) (endorsing Rule 24(b) intervention to challenge protective order). Here, Lycos, Inc. and Wired News should be heard on the issue of whether the Klein Declaration and its exhibits, and the Marcus Declaration, should remain under seal.

1      Wired News has a unique perspective in this case. Wired News has
2   been at the forefront of news coverage of this controversy and litigation. It has
3   obtained and published many of the documents at issue. On May 17, 2006, Wired
4   News published a statement written by Klein in 2004 that describes fiber-optic
5   splitting equipment installed by AT&T in San Francisco that intercepts voice and
6   Internet communications on the AT&T network and routes those communications to
7   a room controlled by the federal government. The remainder of documents that are
8   in Wired News' possession were posted on May 22, 2006, at
9   www.wired.com/news/technology/0,70944-0.html?tw=wn_index_2.

10      Nevertheless, important documents remain under seal, and AT&T is
11  likely to continue to contend that the documents are trade secrets. It is the view of
12  Wired News that the Klein and Marcus declarations and the balance of the Klein
13  exhibits are of great public interest and have little, if any, value as trade secrets. The
14  presumption of access to court documents and proceedings requires an order
15  unsealing the Declaration of Mark Klein and Exhibits A-C and the Declaration of J.
16  Scott Marcus. Accordingly, Lycos, Inc. and Wired News request, through limited
17  intervention, the opportunity to address the Court on this issue.

18

19  II.    JUDICIAL PROCEEDINGS HAVE A STRONG PRESUMPTION IN
20         FAVOR OF OPENNESS

21      Open judicial proceedings are an essential element of our system of
22  law. Transparency increases the likelihood of fairness and justice and continued
23  confidence by the American public in the courts. As a matter of both constitutional
24  law and common law, our courts consistently have held that judicial proceedings
25  should be conducted in public.

26      In Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980), the
27  United States Supreme Court announced that criminal proceedings were

28

presumptively open under the First Amendment.  Presumptive openness "is no quirk of history," the Court said.

> [R]ather, it has long been recognized as an indispensable attribute of an Anglo-American trial.  Both Hale in the 17th century and Blackstone in the 18th saw the importance of openness to the proper functioning of a trial; it gave assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality.

Id. at 569.

While the Supreme Court did not reach the question of whether civil proceedings must be open, the majority opinion noted that "historically both civil and criminal trials have been presumptively open."  Id. at 580 n.17; see also id. at 599 (Stewart, J., concurring) ("the First and Fourteenth Amendments clearly give the press and public a right of access to trials themselves, *civil as well as criminal*" (emphasis added)).  Indeed, the same policy rationales for open criminal proceedings recognized in Richmond Newspapers apply to civil proceedings, as the Sixth Circuit explained in the watershed case, Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165 (6th Cir. 1983):

> The resolution of private disputes frequently involves issues and remedies affecting third parties or the general public.  The community catharsis, which can only occur if the public can watch and participate, is also necessary in civil cases . . . . In either the civil or criminal courtroom, secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption.

Finally, the fact-finding considerations relied upon by Justice Brennan [in Richmond Newspapers] obviously apply to civil cases. Openness in the courtroom discourages perjury and may result in

1  witnesses coming forward with new information regardless of the type

2  of proceeding.

3  Id. at 1179.

4      Likewise, in <u>Publicker Indus., Inc. v. Cohen</u>, 733 F.2d 1059 (3d Cir.

5  1984), the Third Circuit vacated an order sealing the transcript of a hearing that

6  concerned supposedly confidential business information.  The court recognized a

7  right of access to civil trials under both the First Amendment and common law:

8      A presumption of openness inheres in civil trials as in criminal trials.

9      We also conclude that the civil trial, like the criminal trial, "plays a

10     particularly significant role in the functioning of the judicial process

11     and the government as a whole" . . . Public access to civil trials, no less

12     than criminal trials, plays an important role in the participation and the

13     free discussion of governmental affairs.  Therefore, we hold that the

14     "First Amendment embraces a right of access to [civil] trials . . . to

15     ensure that this constitutionally protected 'discussion of governmental

16     affairs' is an informed one."

17  Id. at 1070 (citations omitted); <u>see also</u> <u>Matter of Cont'l Illinois Sec. Litig.</u>, 732 F.2d

18  1302, 1308-09 (7th Cir. 1984) (court granted newspapers access to report prepared

19  by corporation and admitted into evidence in shareholders' derivative suit); <u>Wilson</u>

20  <u>v. American Motors Corp.</u>, 759 F.2d 1568, 1570-71 (11th Cir. 1985) (common law

21  right of access to documents introduced into evidence in case settled before reached

22  verdict); <u>Joy v. North</u>, 692 F.2d 880, 894 (2d Cir. 1982) (vacating protective order

23  for report of corporation's litigation committee which was filed with court in

24  shareholder's derivative suit).

25      Business embarrassment does not rebut the presumption of access.

26  <u>Foltz v. State Farm Mutual Auto Ins. Co.</u>, 331 F.3d 1122, 1136 (9th Cir. 2003);

27  <u>Republic of the Philippines v. Westinghouse Elec. Corp.</u>, 949 F.2d 653, 663 (3d Cir.

28  1991).  Moreover, the presumption of access requires "immediate and

contemporaneous" access.  <u>Grove Fresh Distrib., Inc. v. Everfresh Juice Co.</u>, 24

F.3d 893, 897 (7th Cir. 1994).  "To delay or postpone disclosure undermines the

benefit of public scrutiny and may have the same result as complete suppression."

<u>Id.</u>  Any delay, even a single day, can be an undue burden on the public's right of

access:

> Where . . . a direct prior restraint is imposed upon the reporting of news
> by the media, each passing day may constitute a separate and
> cognizable infringement of the First Amendment. The suppressed
> information grows older. Other events crowd upon it. To this extent,
> any First Amendment infringement that occurs with each passing day is
> irreparable.

<u>Nebraska Press Ass'n v. Stuart</u>, 423 U.S. 1327, 1330 (1975) (Blackmun, J., granting

stay).

      The Ninth Circuit has not yet reached the question of whether the First

Amendment requires access to civil proceedings, but it has recognized, and

repeatedly enforced, a strong presumption of access under common law.  <u>See, e.g.</u>,

<u>San Jose Mercury News</u>, 187 F.3d at 1100-02 (declining to address First

Amendment question, but relying on federal common law to find a right of public

access to court documents in a civil case); <u>Kamakana v. City & County of Honolulu</u>,

__ F.3d __, No. 04-15241, 2006 WL 1329926 at *3 (9th Cir. 2006) (describing the

historical right of access to civil court filings).

      In <u>Cox Broadcasting Corp. v. Cohn</u>, 420 U.S. 469 (1975), the United

States Supreme Court expressly recognized the public's strong interest in receiving

information from official court records, even though there was a state statute to the

contrary.  Although the Court was not directly faced with the issue of access, it held

that this strong public interest, embodied in the First Amendment, protected the

media from liability for accurate publication of judicial records:

> The freedom of the press to publish [information in judicial records]
> appears to us to be of critical importance to our type of government in
> which the citizenry is the final judge of the proper conduct of public
> business.  In preserving that form of government the First and
> Fourteenth Amendments command nothing less than that the States
> may not impose sanctions on the publication of truthful information
> contained in official court records open to public inspection.

Id. at 495.  The Supreme Court reached this result despite the sensitive nature of the information involved – the name of a rape victim.

III.     MANY OF THE DOCUMENTS ALREADY ARE PUBLIC AND
         THEREFORE SHOULD NOT REMAIN UNDER SEAL

It is black-letter law that information cannot be a trade secret once it is publicly available.  See Cal. Civ. Code § 3426.1 (trade secret is one that is not generally known); Religious Tech. Ctr. v. Netcom On-Line Comm. Servs., 923 F.Supp. 1231, 1255-57 (N.D. Cal. 1995).  A complete set of the documents has been made available to the plaintiffs in this case and the United States government. (Docket No. 111 at 2 (Klein Motion for Leave to File an Amicus Brief).)  Klein also acknowledges giving documents to the news media.  (Id.)  Such wide dissemination defeats any claim AT&T might have that the documents contain information that can reasonably viewed as trade secrets today.

Additionally, beyond the disclosure by Klein, many of the documents at issue have been made available to the general public on the Internet.  Klein's assertions that the AT&T equipment described in some of the documents is used to intercept communications for the National Security Agency stand or fall on the *entire* compilation of documents provided by Klein to EFF and filed with the Court. Reasonable readers might come to differing conclusions about the credibility of Klein's views and, in turn, the evidentiary support for EFF's lawsuit.  Accordingly,

on Monday, May 22, 2006, 29 pages, including the Klein statement from 2004 and eight pages of AT&T company documents, were made available on Wired News' Website. In light of this broad public disclosure, the seal on the balance of the documents, along with the Klein and Marcus declarations, should be lifted.

IV.   THE DOCUMENTS HAVE BEEN PLACED AT ISSUE AND SHOULD NEVER HAVE BEEN SEALED

   A.   The Seal Imposes an Undue Burden on the Public's Right of Access

The news media, as representatives of the public, have a right of access to documents grounded in the First Amendment and common law. Washington Post v. Robinson, 935 F.2d 282, 287-88 (D.C. Cir. 1991) (First Amendment right of access); Oregonian Publishing Co. v. U.S. District Court, 920 F.2d 1462, 1465 (9th Cir. 1990) ("the press and the public have a presumed right of access to court proceedings and documents"); San Jose Mercury News, Inc. v. U.S. District Court, 187 F.3d 1096, 1100-02 (9th Cir. 1999) (common law right of access). Under both the First Amendment and the common law, Wired News should be entitled to full access to the documents filed in this action to which there is no valid claim of state secrets privilege.

The documents at issue are not state secrets. Rather, they describe the manner in which AT&T intercepted voice and Internet communications by installing splitters on large fiber-optic cables carrying huge volumes of data. Despite their technical nature, they are critical evidence in this lawsuit and the public debate over the actions of AT&T and the government. Interception of such communications strikes at the heart of free speech and the right of privacy. The Internet "is the most participatory form of mass speech yet developed … entitled to the highest protection from governmental intrusion." Reno v. American Civil Liberties Union, 521 U.S. 844, 863 (1997) (internal citations omitted). The public has a vital need to understand the claims made in this lawsuit and the evidence that supports them.

1

2          1.      Wired News has a First Amendment Right of Access

3          In determining whether the First Amendment right of public access

4   extends to a particular type of proceeding, the Supreme Court considers "whether

5   the place and process have historically been open to the press and general public"

6   and "whether public access plays a significant positive role in the functioning of the

7   particular process in question." Press-Enterprise Co. v. Superior Court, 478 U.S. 1,

8   8 (1986).  Civil courts have traditionally been open to the press and the public.  It is

9   only under rare and unusual circumstances that courts maintain documents under

10  seal which are at the heart of one litigant's claims against the other – as is the

11  situation here.  See NBC Subsidiary (KNBC-TV), Inc. v. Superior Court, 20 Cal.

12  4th 1178, 1210-11, 86 Cal. Rptr. 2d 778, 803-04, 980 P.2d 337 (1999) (recognizing

13  First Amendment right of access to civil proceedings that can be limited only in

14  exceptional circumstances).

15

16         2.      Wired News has a Common Law Right of Access

17         The Ninth Circuit has explained that there is a "strong presumption in

18  favor of access" to court documents.  Kamakana v. City & County of Honolulu, __

19  F.3d __, No. 04-15241, 2006 WL 1329926 at *3-4 (9th Cir. 2006).  To overcome

20  this presumption and filed documents under seal, a litigant must articulate

21  "*compelling reasons supported by specific factual findings*" Id. at *4 (emphasis

22  added; internal quotations omitted).  Furthermore, the articulated reasons must

23  outweigh the "general history of access and the public policies favoring

24  disclosure..." Id.  Documents that are related to dispositive motions are subject to

25  this "compelling interest" test.  Id.

26         The documents at issue in this litigation support the allegations in

27  Amended Complaint and were submitted by EFF in support of its motion for

28  preliminary injunction.  (Docket Nos. 31, 32.)  Given that AT&T and the

government have filed motions to dismiss, these supporting materials form the basis of the matter presented to this Court for adjudication, and EFF makes that clear in its Memorandum filed on May 22, 2006. (Docket No. 134, at 5-7.) There, plaintiffs contend that their case should be heard by the Court, notwithstanding the government's assertion of the state-secret privilege, because "[t]he facts needed to prove a violation of Title III are contained within the documents submitted to the Court in support of the motion for preliminary injunction, including the Declaration of Mark Klein and exhibits thereto, or are already within the public domain."  (Id. at 6.)  In plaintiffs' view, they "need prove only that the communications were unlawfully intercepted.  Plaintiffs need not prove what the government did with them."  (Id.)

Documents such as these, on which a lawsuit stands or falls, consistently have been treated by the courts as public records.  Foltz v. State Farm Mutual Auto Ins. Co., 331 F.3d 1122 (9th Cir. 2003).  The Court cannot reach plaintiffs' argument without considering the sealed documents.  And public treatment is especially appropriate given the highly controversial nature of the activities of AT&T that the documents apparently describe.  In contrast, AT&T has made no particularized showing of a compelling interest.  AT&T's conclusory assertion that these documents are proprietary is unpersuasive in the context of a raging national debate regarding the apparent cooperation of the nation's largest telecommunications company in a broad domestic spying program.

In the last week, national newsweeklies had covers on the government's domestic spying program.  (See, e.g., Time, "Does This Man Have Your Number?" May 22, 2006.)  The controversy has become particularly heated with the nomination of General Michael Hayden, who headed the National Security Agency when the program was initiated, to head the CIA.  The debate cannot be held behind closed doors, and the evidence that bears on the issue cannot be kept in sealed envelopes locked in a courthouse.  As Justice Black wrote in the "Pentagon Papers"

decision: "Only a free and unrestrained press can effectively expose deception in government. And paramount among the responsibilities of a free press is the duty to prevent any part of the government from deceiving the people . . . ." New York Times Co. v. United States, 403 U.S. 713, 717 (1971) (Black, J., concurring).

### B. AT&T Cannot Establish That the Documents Should Remain Sealed

Regardless of whether the media's right of access is grounded in the First Amendment or the common law, the party who seeks to block access faces an extremely high hurdle. AT&T must establish that there is a compelling interest in maintaining the documents in secrecy, and that there is no less restrictive means than sealing. Foltz, 331 F.3d at 1125.

The government has *not* asserted that the documents in question raise concerns about national security; it has merely stated that it does not object to AT&T filing them under seal. (Docket No. 43, at 19 (Coppolino letter to EFF).) Rather, the only rationale offered for sealing the records is AT&T's assertion that they contain trade secrets. In light of the public disclosure of many of the documents on the Internet, there is no longer any merit in that assertion. Once trade secrets are made public, the rationale to retain them as protected evaporates.

AT&T has not established that it will suffer some competitive disadvantage if the documents are unsealed. AT&T's competitors certainly understand how to tap into their own networks. There is no "market" for information on how to install splitters in a fiber-optic network. The information in dispute here has no commercial value; rather, it is simply *embarrassing* to AT&T, and that does not justify sealing. See Kamakana, 2006 WL 1329926 at *4 ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.").

1    AT&T has argued that the documents reveal enough detail about how
2    the AT&T system works that they *may* make the system susceptible to hackers, and
3    AT&T raises the specter of terrorist attacks on the telephone communications
4    infrastructure.  The documents, however, show a method of intercepting
5    communications in a *secure location within AT&T's infrastructure*, accessible only
6    to AT&T technicians and, apparently, government agents.  AT&T raises "hackers"
7    as a hobgoblin because it cannot think of any other justification for covering up
8    evidence that it helped the government spy on AT&T customers.

9    When scrutinized, AT&T's effort to keep the documents under seal is
10   strikingly similar to, and defies the holding of, <u>Bartnicki v. Vopper</u>, 532 U.S. 514
11   (2001).  After a tape recording of an intercepted cell phone conversation – in which
12   the plaintiffs seemed to discuss physical violence against members of the local
13   school board – was provided to and broadcast by the media, the plaintiffs sued under
14   the federal eavesdropping statute.  The Supreme Court affirmed dismissal of the
15   action.  Where public affairs are implicated, the Court said, privacy concerns must
16   yield:  "The enforcement of [the eavesdropping statute] in these cases . . . implicates
17   the core purposes of the First Amendment because it imposes sanctions on the
18   publication of truthful information of public concern."  <u>Id.</u> at 533-34.

19   Here, we have the public's profound interest in knowing whether the
20   government, with the assistance of the nation's largest telecommunications
21   company, tapped into millions of telephone conversations and Internet
22   communications, possibly in violation of law.  On the other hand, we have AT&T's
23   apparent embarrassment that it readily acquiesced to the government's request for
24   cooperation – evidently without any court authorization or extra-judicial approval.
25   Any proprietary value that AT&T sees in technical documents describing the
26   manner in which the lines were tapped must yield to the public's right to be
27   informed about behavior that implicates the fundamental rights of many millions of
28   Americans.  Justice Breyer's concurrence in <u>Bartnicki</u> is equally applicable here:

1  [T]he subject matter . . . is far removed from that in situations where

2  the media publicizes truly private matters [or, in this case, actual trade

3  secrets]. . . . Here, the speakers' legitimate privacy expectations are

4  unusually low, and the public interest in defeating those expectations is

5  unusually high.  Given these circumstances, along with the lawful

6  nature of respondents' behavior, the statutes' enforcement would

7  disproportionately harm media freedom.

8  Bartnicki, 532 U.S. at 540 (Breyer, J., concurring).

9

10  **CONCLUSION**

11  Because Lycos, Inc. and Wired News have an important interest in

12  vindicating the public's right of access to these proceedings, they should be

13  permitted to intervene for the limited purposed of challenging the sealing of

14  documents.

15  Further, there is no reason, let alone a compelling reason, to keep under

16  seal the Declaration of Mark Klein and Exhibits A-C (Docket No. 31) and the

17  Declaration of J. Scott Marcus (Docket No. 32).  The documents should be

18  unsealed.

19

20  DATED:  May 23, 2006          Respectfully submitted,

21                                QUINN EMANUEL URQUHART OLIVER &
22                                HEDGES, LLP

23

24  By  */s/  Timothy L. Alger*
                                      Timothy L. Alger
25                                Attorneys for Lycos, Inc. and Wired News

26

27

28