1   PETER D. KEISLER
     Assistant Attorney General, Civil Division
2   CARL J. NICHOLS
     Deputy Assistant Attorney General
3   DOUGLAS N. LETTER
     Terrorism Litigation Counsel
4   JOSEPH H. HUNT
     Director, Federal Programs Branch
5   ANTHONY J. COPPOLINO
     Special Litigation Counsel
6   tony.coppolino@usdoj.gov
     RENEE S. ORLEANS
7   renee.orleans@usdoj.gov
     ANDREW H. TANNENBAUM
8   andrew.tannenbaum@usdoj.gov
     Trial Attorneys
9   U.S. Department of Justice
     Civil Division, Federal Programs Branch
10   20 Massachusetts Avenue, NW
     Washington, D.C. 20001
11   Phone: (202) 514-4782/(202) 514-4263
     Fax:     (202) 616-8460/(202) 616-8202/(202) 318-2461
12
     Attorneys for Intervenor Defendant United States of America

13                   UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16                                   )

17   TASH HEPTING, GREGORY HICKS    )
     CAROLYN JEWEL and ERIK KNUTZEN   )
     on Behalf of Themselves and All Others    )

18   Similarly Situated,                  )
                                    )    Case No. C-06-0672-VRW

19            Plaintiffs,           )
                                      )    **UNITED STATES' RESPONSE**

20             v.                    )    **TO PLAINTIFFS' MEMORANDUM**
                                      )    **OF POINTS AND AUTHORITIES**

21   AT&T CORP., AT&T INC. and        )    **IN RESPONSE TO COURT'S MAY 17,**
     DOES 1-20, inclusive,           )    **2006 MINUTE ORDER**

22                                       )
           Defendants.          )

23                                       )
    _____ )

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  *IN CAMERA, EX PARTE* REVIEW OF THE UNITED STATES' SUBMISSIONS
    DOES NOT VIOLATE DUE PROCESS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PLAINTIFFS ARE NOT ENTITLED TO ACCESS TO THE CLASSIFIED
    MATERIALS SUBMITTED *IN CAMERA, EX PARTE*. . . . . . . . . . . . . . . . . . . . . . . . . 8

III. PLAINTIFFS HAVE OFFERED NO VALID REASON FOR THE COURT TO
     FOREGO REVIEW OF THE *IN CAMERA, EX PARTE* MATERIALS. . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*American-Arab Anti-Discrim. Comm. v. Reno*,
70 F.3d 1045 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Armstrong v. Bush*,
924 F.2d 282 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Central Intelligence Agency v. Sims*,
471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*DTM Research, L.L.C. v. AT&T Corp.*,
245 F.3d 327 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dept. of Navy v. Egan*,
484 U.S. 518 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 13

*Doe v. Browner*,
902 F. Supp. 1240 (D. Nev. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Dorfmont v. Brown*,
913 F.2d 1399 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Edmonds v. U.S. Dept. of Justice*,
323 F. Supp. 2d 65 (D.D.C. 2004),
*aff'd*, 161 Fed. Appx. 6 (D.C. Cir.),
*cert. denied*, 126 S. Ct. 734 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

*El Masri v. Tenet*,
Civil Action No. 05-1417 (E.D. Va.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Ellsberg v. Mitchell*,
709 F.2d 51 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Fitzgerald v. Penthouse Int'l, Ltd.*,
776 F.2d 1236 (4th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Gilbert v. Homar*,
520 U.S. 924 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Global Relief Found. v. O'Neill*,
315 F.3d 748 (7th Cir. 2002), *cert. denied*, 540 U.S. 1003 (2003) . . . . . . . . . . . . . . . . 4

*In re Grand Jury Proceedings*,
867 F.2d 539 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

UNITED STATES' RESPONSE TO PLAINTIFFS' MEMORANDUM OF POINTS
AND AUTHORITIES IN RESPONSE TO COURT'S MAY 17, 2006 ORDER, Case No. C 06-0672-VRW

-iii-

*Guenther v. Comm'r of Internal Revenue,*
    889 F.2d 882 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

*Haig v. Agee,*
    453 U.S. 280 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Halkin v. Helms,*
    598 F.2d 1 (D.C. Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

*Halkin v. Helms,*
    690 F.2d 977 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 18

*Hayden v. Nat'l Security Agency,*
    608 F.2d 1381 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Holy Land Found. for Relief & Dev. v. Ashcroft,*
    333 F.3d 156 (D.C. Cir. 2003),
    *cert. denied,* 540 U.S. 1218 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Sealed Case No. 98-3077,*
    151 F.3d 1059 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Under Seal,*
    945 F.2d 1285 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re United States,*
    1 F.3d 1251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re United States,*
    872 F.2d 472 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jifry v. Fed. Aviation Admin.,*
    370 F.3d 1174 (D.C. Cir. 2004),
    *cert. denied,* 543 U.S. 1146 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kasza v. Browner,*
    133 F.3d 1159 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Lynn v. Regents of Univ. of Calif.,*
    656 F.2d 1337 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Meridian Int'l Logistics, Inc. v. United States,*
    939 F.2d 740 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 6, 7

*Molerio v. Fed. Bureau of Investigation,*
    749 F.2d 815 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Morrissey v. Brewer,*
    408 U.S. 471 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nadarajah v. Gonzales,*
    443 F.3d 1069 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nat'l Council of Resistance of Iran v. Dept. of State,*
    251 F.3d 192 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nixon v. Sirica,*
    487 F.2d 700 (D.C. Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Patterson v. Fed. Bureau of Investigation,*
    893 F.2d 595 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*People's Mojahedin Org. of Iran v. Dept. of State,*
    327 F.3d 1238 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10

*Pollard v. Fed. Bureau of Investigation,*
    705 F.2d 1151 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

*Salisbury v. United States,*
    690 F.2d 966 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 18

*Snepp v. United States,*
    444 U.S. 507 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sterling v. Tenet,*
    416 F.3d 338 (4th Cir. 2005), *cert. denied,* 126 S. Ct. 1052 (2006) . . . . . . . . . . . . 4, 11

*Tenet v. Doe,*
    544 U.S. 1 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Torbet v. United Airlines,*
    298 F.3d 1087 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Totten v. United States,*
    92 U.S. 105 (1875) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*United Presbyterian Church in the U.S.A. v. Reagan,*
    738 F.2d 1375 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Badia,*
    827 F.2d 1458 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Belfield,*
    692 F.2d 141 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Duggan,*
    743 F.2d 59 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Hamide,*
    914 F.2d 1147 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Isa,*
    923 F.2d 1300 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Johnson,*
    952 F.2d 565 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Klimavicius-Viloria,*
    144 F.3d 1249 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Ott,*
    827 F.2d 473 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

*United States v. Reynolds,*
    345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Squillacote,*
    221 F.3d 542 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Thompson,*
    827 F.2d 1254 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wayte v. United States,*
    470 U.S. 598 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Weberman v. Nat'l Security Agency,*
    668 F.2d 676 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES

Cal. Bus. & Prof. Code §§ 17200, *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18 U.S.C. § 2511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

47 U.S.C. § 605, 18 U.S.C. § 2702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

47 U.S.C. § 2511(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

50 U.S.C. § 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

50 U.S.C. § 1801 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

50 U.S.C. § 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12

50 U.S.C. § 1809 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

50 U.S.C. § 1810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

50 U.S.C. § 1845(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

UNITED STATES' RESPONSE TO PLAINTIFFS' MEMORANDUM OF POINTS
AND AUTHORITIES IN RESPONSE TO COURT'S MAY 17, 2006 ORDER, Case No. C 06-0672-VRW

-vii-

# INTRODUCTION

In this case, the United States has invoked the military and state secrets privilege (hereinafter "state secrets privilege") to protect information which two of the nation's highest ranking intelligence officials have determined cannot be disclosed without causing harm to the national security interests of the United States. On the basis of determinations made by the Director of National Intelligence and the Director of the National Security Agency, the United States has explained in public filings and, in more detail, in filings submitted for the Court's *in camera, ex parte* review, why no aspect of this case can be litigated without disclosing state secrets. The United States has not lightly invoked the state secrets privilege, and the weighty reasons for asserting the privilege are apparent from the classified material submitted in support of its assertion. The need to protect against the harm to national security that would arise from the disclosure of classified information, however, makes it impossible for the United States to explain on the public record more precisely what those reasons are. Although the Court could dismiss this action based on the public filings already made, in light of the grave national security implications at issue in this case, it would be perilous to proceed instead to litigate any of Plaintiffs' claims here without full consideration of the details of the Government's state secrets privilege assertion, including the material that the United States has submitted for this Court's *in camera, ex parte* review.

Plaintiffs argue that consideration by the Court of the *in camera, ex parte* evidence submitted by the United States can deprive them of due process; that the Foreign Intelligence Surveillance Act ("FISA") requires them to be provided with access to the underlying materials; and that the Court should not review the *in camera, ex parte* materials submitted by the United States, but should instead allow Plaintiffs certain discovery and address Plaintiffs' legal claims based on the information available on the public record. Each of these arguments is misguided. It is well established that where classified materials are at issue, a court may review such material *in camera*, *ex parte* without infringing a litigant's due process rights in order to avoid the harms

that would result from unauthorized disclosure. Moreover, neither FISA nor any other provision

of law can be construed to provide Plaintiffs with access either to classified material subject to

the state secrets privilege or to material subject to the statutory privileges invoked by the United

States.

Finally, Plaintiffs' belief that the Court should defer review of the United States' *in camera, ex parte* submissions because Plaintiffs can prove their *prima facie* case based on materials available in the public record, and that they are entitled to certain discovery in their effort to do so, reflects a fundamental misconception of the scope, nature and effect of the Government's invocation of the state secrets privilege. As described in the United States' public filing and in the supporting classified materials, state secrets are central to the Plaintiffs' allegations and any attempt to proceed with the litigation will threaten the disclosure of privileged matters. Because, for the reasons explained in the Government's earlier submissions, including in the public Memorandum of the United States in Support of the Military and State Secrets Privilege and Motion to Dismiss or, in the Alternative, for Summary Judgment, Docket No. 124 ("U.S. Mem."), Plaintiffs cannot prove their *prima facie* case without resort to classified material, the Court should consider the dispositive motions of the United States and AT&T before taking any further action in this case.

## ARGUMENT

I. *IN CAMERA, EX PARTE* REVIEW OF THE UNITED STATES' SUBMISSIONS DOES NOT VIOLATE DUE PROCESS.

Plaintiffs' initial argument is that due process disfavors the Court's consideration of

materials provided *in camera* and *ex parte*. Although *ex parte* submissions are not the norm,

courts have repeatedly recognized that such submissions are necessary in a variety of contexts.

*See, e.g.*, *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991) ("We

find that the procedure [declarations sealed and subject to *in camera, ex parte* review] used by

the court in the instant case was proper; it adequately balanced the rights of the Government and

[plaintiff]. . . . [A]lthough [plaintiff] did not have the opportunity to conduct discovery and

cross-examine the Government's witness, its interests as a litigant are satisfied by the ex parte/in camera decision of an impartial district judge."); *In re Grand Jury Proceedings*, 867 F.2d 539, 540-41 (9th Cir. 1988) (rejecting due process challenge to *in camera* submission supporting enforcement of grand jury subpoena); *United States v. Ott*, 827 F.2d 473, 476-77 (9th Cir. 1987) (rejecting due process challenge to *in camera, ex parte* review of materials under the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 *et seq.*); *Pollard v. Fed. Bureau of Investigation*, 705 F.2d 1151, 1153-54 (9th Cir. 1983) ("the practice of in camera, ex parte review remains appropriate in certain [Freedom of Information Act ("FOIA")] cases").

More specifically, as the Court of Appeals squarely recognized in the very case upon which Plaintiffs predominately rely, *in camera, ex parte* submissions are appropriate when there is "some 'compelling justification.'" *Guenther v. Comm'r of Internal Revenue*, 889 F.2d 882, 884 (9th Cir. 1989) ("*Guenther I*"), *appeal decided after remand by*, 939 F.2d 758 (9th Cir. 1991) ("*Guenther II*") (quoting *United States v. Thompson*, 827 F.2d 1254, 1258-59 (9th Cir. 1986)). "It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981) (citation omitted); *see also Wayte v. United States*, 470 U.S. 598, 612 (1985) ("Unless a society has the capability and will to defend itself from the aggressions of others, constitutional protections of any sort will have little meaning"); *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) ("The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service.").

Thus, numerous courts have considered *in camera, ex parte* submissions containing information that is classified or that relates to ongoing counter-terrorism efforts of the federal government, and have rejected due process challenges to such a course. *See, e.g.*, *Jifry v. Fed. Aviation Admin.*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) (court has "inherent authority to review classified material *ex parte*, *in camera* as part of its judicial review function") (citing cases), *cert.*

*denied*, 543 U.S. 1146 (2005); *Patterson v. Fed. Bureau of Investigation*, 893 F.2d 595, 600 n.9, 604-05 (3d Cir. 1990) (noting that "notwithstanding this imbalance between the parties, the D.C. Circuit, as well as other circuits, have allowed the use of *in camera* affidavits in national security cases")*; see also Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (rejecting plaintiff's "claim that the use of classified information disclosed only to the court *ex parte* and *in camera* in the designation of a foreign terrorist organization . . . was violative of due process"), *cert. denied*, 540 U.S. 1218 (2004); *People's Mojahedin Org. of Iran v. Dept. of State*, 327 F.3d 1238, 1242 (D.C. Cir. 2003) (same); *Global Relief Found. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002) (rejecting constitutional challenge to federal statute which authorizes the district court's *ex parte* and *in camera* consideration of classified evidence in connection with a judicial challenge to an Executive decision to freeze the assets of entity that assisted or sponsored terrorism), *cert. denied*, 540 U.S. 1003 (2003); *Torbet v. United Airlines*, 298 F.3d 1087, 1089 (9th Cir. 2002) (affirming district court's dismissal of complaint challenging airline search based, in part, on *in camera* review of sensitive security information); *Doe v. Browner*, 902 F. Supp. 1240, 1250 n.7 (D. Nev. 1995) (dismissing environmental challenge as moot based on *in camera* inspection of classified documents), *aff'd in part and dismissed in part sub nom., Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1988).

Similarly, in cases where, as here, the Government has asserted the state secrets privilege, courts routinely examine classified information on an *in camera, ex parte* basis, and on the basis of that examination, make determinations that affect or even dictate the outcome of a case. *See, e.g., Sterling v. Tenet,* 416 F.3d 338, 342 (4th Cir. 2005) (upholding dismissal based on determination, after reviewing *in camera* affidavits, that any attempt by plaintiffs to make out a prima facie case at trial would entail the revelation of state secrets), *cert. denied*, 126 S. Ct. 1052 (2006); *accord Kasza v. Browner*, 133 F.3d 1159, 1170 (9th Cir. 1998); *Edmonds v. U.S. Dept. of Justice*, 323 F. Supp. 2d 65, 74 (D.D.C. 2004), *aff'd*, 161 Fed. Appx. 6 (D.C. Cir.), *cert. denied*,

126 S. Ct. 734 (2005); *Salisbury v. United States*, 690 F.2d 966, 974-77 (D.C. Cir. 1982); *El Masri v. Tenet*, Civil Action No. 05-1417 (E.D. Va.), Order, May 12, 2006, attached as Ex. A.[1]

In cases such as this one, where the national security of the United States is implicated, it is well established that the Executive Branch is best positioned to judge the potential effects of disclosure of sensitive information on the nation's security. *See Dept. of Navy v. Egan*, 484 U.S. 518, 529 (1988) ("Predictive judgment [about whether someone might 'compromise sensitive information'] must be made by those with the necessary expertise in protecting classified information."); *Central Intelligence Agency v. Sims*, 471 U.S. 159, 170 (1985) ("Congress intended to give the Director of Central Intelligence broad power to protect the secrecy and integrity of the intelligence process. The reasons are too obvious to call for enlarged discussion; without such protections the Agency would be virtually impotent."). Indeed, the Supreme Court has repeatedly recognized that courts are ill-equipped as an institution to judge harm to national security. *See Egan*, 484 U.S. at 529 ("The Court also has recognized 'the generally accepted view that foreign policy was the province and responsibility of the Executive.'") (quoting *Haig*, 453 U.S. at 293-94)); *see also Sims*, 471 U.S. at 180 ("weigh[ing] the variety of subtle and complex factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the [nation's] intelligence-gathering process" is a task best left to the Executive Branch and not attempted by the judiciary).

Thus, where, as here, the Executive Branch, through the Director of National Intelligence and the Director of the National Security Agency, has determined that the needs of national security demands that certain information be reviewed only by the Court *in camera* and *ex parte,* Plaintiffs' due process concerns must be viewed in light of that determination. The "strong

---

[1] *See also American-Arab Anti-Discrim. Comm. v. Reno*, 70 F.3d 1045, 1070 (9th Cir. 1995) (explaining that the effect of a successful invocation of the state secrets privilege is that "the evidence is unavailable, as though a witness had died" and that even when the privilege operates "as a complete shield to the government and results in the dismissal of a plaintiff's suit, the information is simply unavailable and may not be used by either side") (internal quotation marks and citations omitted).

interest of the government [in protecting against the disclosure of classified information] clearly affects the nature . . . of the due process which must be afforded petitioners." *Nat'l Council of Resistance of Iran v. Dept. of State*, 251 F.3d 192, 208-09 (D.C. Cir. 2001); *see also Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ("it is by now well established that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances") (internal quotation marks and citation omitted); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands"). In this situation, as the Court of Appeals has plainly held, *ex parte* consideration is proper and Plaintiffs' interests "as a litigant are satisfied by the ex parte/in camera decision of an impartial district judge." *Meridian Int'l Logistics, Inc.*, 939 F.2d at 745; *see also In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1075 (D.C. Cir. 1998) ("We recognize that appellants cannot make factual arguments about materials they have not seen and to that degree they are hampered in presenting their case. The alternatives, however, are sacrificing the secrecy of the [materials] or leaving the issue unresolved at this critical juncture.") (quoting *In re John Doe Corp.*, 675 F.2d 482, 490 (2d Cir. 1982)).

The consequences that sometimes must flow from the United States' compelling need to protect national security information was demonstrated earlier this month by the decision of the United States District Court for the Eastern District of Virginia in *El-Masri v. Tenet*, Civil Action No. 05-1417 (E.D. Va.), attached as Ex. A. In *El-Masri*, in response to Plaintiff's Complaint making constitutional tort allegations against former CIA Director George Tenet, other CIA employees, and private individuals concerning an "extraordinary rendition" program, the United States moved to intervene and filed a formal claim of the state secrets privilege, supported by both an unclassified and a classified *ex parte* declaration from the Director of the CIA. The United States also sought dismissal or summary judgment on the ground that maintenance of the suit would invariably lead to disclosure of its state secrets.

1    In its May 12, 2006, opinion, the District Court agreed.  Finding that courts must "bear in

2   mind the Executive Branch's preeminent authority over military and diplomatic matters and its

3   greater expertise relative to the judicial branch in predicting the effect of a particular disclosure

4   on national security," Slip Op. at 9, the Court concluded that "there is no doubt that the state

5   secrets privilege is validly asserted here." *Id.* at 10.  Specifically, the Court found that Plaintiff's

6   "publicly available complaint alleges a clandestine intelligence program, and the means and

7   methods the foreign intelligence services of this and other countries used to carry out the

8   program" and that "any admission or denial of these allegations . . . would reveal the means and

9   methods employed pursuant to this clandestine program and . . . would present a grave risk to

10   national security." *Id.*  Moreover, the Court found that state secrets in the form of details about

11   the classified rendition program were the "very subject of litigation," *see id.* at 12-13, and

12   concluded that dismissal of Plaintiffs' claims was the only appropriate disposition:  "while

13   dismissal of the complaint deprives El-Masri of an American judicial forum for vindicating his

14   claims, well-established and controlling legal principles require that . . . El-Masri's private

15   interests must give way to the national interests in preserving state secrets." *Id.* at 14.

16   For the same reasons, dismissal is also the appropriate disposition of this case, and none

17   of the authority cited by Plaintiffs demands a different result.  The cases upon which Plaintiffs

18   rely do not involve the *ex parte* submission of classified information.  *Lynn v. Regents of Univ. of*

19   *Calif.*, 656 F.2d 1337 (9th Cir. 1981), involved a claim of gender discrimination brought by an

20   assistant professor who alleged she was denied merit salary increases and tenure.  The Ninth

21   Circuit held that the district court's *in camera, ex parte* review of the plaintiff's tenure file

22   violated the plaintiff's due process.  *Id.* at 1345-46.  And, in *Guenther II*, an appeal by taxpayers

23   of the Internal Revenue Commissioner's finding of deficiency, the court found that the district

24   court's review of an *ex parte* trial memorandum violated the plaintiffs' due process.  939 F.2d

25   758.  Indeed, the *Guenther* cases upon which Plaintiffs rely support the Government's position

26   that classified information is properly considered by the Court *in camera* and *ex parte*.  *See, e.g.,*

27

28

*Guenther I*, 889 F.2d at 884 ("And recently, we made clear that absent some 'compelling

justification,' ex parte communications will not be tolerated."); *Guenther II*, 939 F.2d at 760

(affirming "compelling justification" principle); *see also United States v. Thompson*, 827 F.2d

1254, 1259 (9th Cir. 1987) ("situations where the court acts with the benefit of only one side's

presentation are uneasy compromises with some overriding necessity, such as the need to act

quickly or to keep sensitive information from the opposing party").  Other cases in this circuit

further demonstrate the lack of merit to Plaintiffs' position.  *See United States v. Klimavicius-*

*Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) ("In a case involving classified documents, . . . *ex*

*parte*, *in camera* hearings in which government counsel participates to the exclusion of defense

counsel are part of the process that the district court may use in order to decide the relevancy of

the information."); *Kasza*, 133 F.3d at 1165 (affirming dismissal where district court "properly

considered classified declarations and documents in camera" in ruling on government's

invocation of the state secrets privilege).

In sum, the Court has the inherent authority to consider classified information *in camera*

and *ex parte* without violating Plaintiffs' right to due process and, thus, before proceeding with

the litigation of Plaintiffs' claims on the merits, the Court should consider the materials

submitted by the United States in support of its assertion of the state secrets privilege in order to

fully understand and avoid the dangers that would result from any such litigation.

**II.     PLAINTIFFS ARE NOT ENTITLED TO ACCESS TO THE CLASSIFIED
        MATERIALS SUBMITTED *IN CAMERA, EX PARTE*.**

Plaintiffs claim that the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801

*et seq.*, creates a statutory mechanism that allows them access to the classified material that

forms the basis of the Government's assertion of the state secrets privilege.  In particular, they

rely on section 1806(f) of the FISA, which provides a basis for "an aggrieved person" to seek

judicial review of the legality of the FISA electronic surveillance.  They claim that if the Court

intends to review the Government's classified material, it should also provide Plaintiffs with

access to that material under the review procedures set forth in section 1806(f).[2]  Plaintiffs, however, are not entitled to review classified material under the FISA or any other mechanism.

It is well-established that, under the separation of powers established by the Constitution, the Executive is exclusively responsible for the protection and control of national security information, and the decision to grant or deny access to such information rests exclusively within the discretion of the Executive.  *See Egan*, 484 U.S. at 527-28 (noting that the Executive supremacy on such decisions arises from President's role as Commander in Chief under Art. II, § 2 of Constitution); *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990) ("a clearance may be granted or retained only if 'clearly consistent with the interests of the national security'; "the decision to grant or revoke a security clearance is committed to the discretion of the President by law") (quoting *Egan*, 484 U.S. at 527).

As a corollary to this principle, a federal district court may not order the Executive to grant opposing counsel or any other person access to classified information, and in keeping with this rule, the Ninth Circuit and other courts repeatedly have rejected demands that opposing counsel or parties be permitted access to classified material presented to the court *in camera* and *ex parte*.  *See Pollard,* 705 F.2d at 1153 (rejecting plaintiff's claim that counsel should have been allowed access to materials reviewed *in camera*  "where the claimed [FOIA] exemption involved

---

[2]  The following is the pertinent language of section 1806(f), on which Plaintiffs rely:

> [W]henever a motion or request is made by an aggrieved person . . . to discover or obtain applications or orders or other materials relating to electronic surveillance . . . the United States district court . . . shall, notwithstanding any other law, if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, review in camera and *ex parte* the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted.  In making this determination, the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance.

50 U.S.C. § 1806(f).  Plaintiffs also rely on a similar provision in 50 U.S.C. § 1845(f).

is the national defense or foreign policy secrecy exemption"); *see also People's Mojahedin Org. of Iran*, 327 F.3d at 1242-43; *In re United States*, 1 F.3d 1251, WL 262658, *6 (Fed. Cir. 1993) (fact that certain of the defense contractor plaintiff's employees already had access to the classified material "does not divest the [Air Force Secretary] of his exclusive authority to control access to other persons or limit his right to assert the privilege to prevent any disclosure in a pending lawsuit"); *Salisbury v. United States*, 690 F.2d 966, 973-74 & n.3 (D.C. Cir. 1982) ("It is well settled that a trial judge called upon to assess the legitimacy of a state secrets privilege claim should not permit the requester's counsel to participate in an in camera examination of putatively privileged material"); *Weberman v. Nat'l Security Agency*, 668 F.2d 676, 678 (2d Cir. 1982) ("The risk presented by participation of counsel . . outweighs the utility of counsel, or adversary process . . . . Given these circumstances, [the district judge] was correct in . . . excluding counsel from the in camera viewing"); *Hayden v. Nat'l Security Agency*, 608 F.2d 1381, 1385-86 (D.C. Cir. 1979) ("it is not appropriate, and not possible without grave risk, to allow access to classified defense-related material to counsel who lack security clearance"); *El-Masri*, Slip Op. at 13-14 (finding that clearing counsel for access to classified information is "plainly ineffective where, as here, the entire aim of the suit is to prove the existence of state secrets").

Thus, Plaintiffs' suggestion that the Court can establish "safeguards" for Plaintiffs to review the classified material subject to the Government's assertion of the state secrets privilege is incorrect. *See* Pltfs' Br. at 4. Indeed, Plaintiffs fail to cite a single case in support of their assertion.[3] Such "safeguards" merely present the opportunity for further disclosure of classified

---

[3] Plaintiffs' reliance on *DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327, 334 (4th Cir. 2001), for their claim that this Court may grant them access to the relevant classified information is misplaced. In that case, the Fourth Circuit upheld the Government's assertion of the state secrets privilege and excluded the use of any of the material covered by the privilege, but further determined that the exclusion of that material did not necessitate dismissal. *Id.* In making this determination, the court did not grant the Plaintiffs access to the classified material, as Plaintiffs request here. Moreover, as explained in the Government's assertion of the state secrets privilege, state secrets are so central to the allegations in Plaintiffs' Amended Complaint that any attempt to proceed will threaten disclosure of the privileged matters. *See* U.S. Mem. at 14-29.

information.  *See, e.g., Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1052 (2006) ("Such procedures, whatever they might be, still entail considerable risk. . . .  At best, special accommodations give rise to added opportunity for leaked information.  At worst, that information would become public, placing covert agents and intelligence sources alike at grave personal risk."); *Halkin v. Helms*, 598 F.2d 1, 7 (D.C. Cir. 1978) ("*Halkin I*") ("However helpful to the court the informed advocacy of the Plaintiffs' counsel may be, we must be especially careful not to order any dissemination of information asserted to be privileged state secrets"; "[p]rotective orders cannot prevent inadvertent disclosure nor reduce the damage to national security of the nation which may result.").

Plaintiffs attempt to avoid the well-established rule that their counsel do not get access to classified material by relying on the judicial review mechanism set forth in section 1806(f) of the FISA.  Their reliance on FISA, however, is mistaken.  Significantly, Plaintiffs' claims are based on their contention that the alleged surveillance activities should have occurred under FISA, but allegedly did not, *see, e.g.,* Am. Compl. ¶¶ 90-99, whereas the review available under section 1806(f) is available only when electronic surveillance did, in fact, occur "under this chapter."  50 U.S.C. § 1806(f); *see id.* (authorizes court to review *in camera* and *ex parte* "the application, order and such other materials relating to the surveillance. . . .").  Thus, by their own allegations, section 1806(f) is inapplicable to Plaintiffs.

In any event, even if Plaintiffs claim that alleged surveillance occurred under the FISA, only "an aggrieved person" can utilize the statutory mechanism for seeking judicial review of the legality of FISA surveillance.[4]  *See* 50 U.S.C. § 1806(f).  But Plaintiffs cannot demonstrate that they are aggrieved persons under the FISA because the Government's privilege assertion covers any information tending to confirm or deny (a) the alleged intelligence activities, (b) whether AT&T was involved with any such activity, and (c) whether a particular individual's

---

[4]  FISA defines an "aggrieved person" as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance."  50 U.S.C. § 1801(k).

communications were intercepted as a result of any such activity. *See* U.S. Mem. at 17-18.

Thus, because Plaintiffs lack the information necessary for them to demonstrate that they are

aggrieved persons under the FISA, they lack standing to invoke that statute's judicial review

provisions. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Moreover, in order

to initiate judicial review under section 1806(f), Plaintiffs would have to show that electronic

surveillance as defined by FISA, 50 U.S.C. § 1801(f), actually occurred. The Government's

assertion of the state secrets privilege precludes any such showing as well.

Finally, even if section 1806(f) was applicable to Plaintiffs' allegations and arguably

could be interpreted to require disclosure of information to uncleared counsel,[5] it should not be

interpreted in that manner because doing so would be inconsistent with the President's powers to

control access to classified information and with the power to assert the state secrets privilege.[6]

*See Nadarajah v. Gonzales*, 443 F.3d 1069,1076 (9th Cir. 2006) ("[I]f an otherwise acceptable

---

[5] Plaintiffs are incorrect that FISA allows them immediate access to the classified material submitted to the Court. Rather, the FISA review process requires the Court first to review (upon an assertion of privilege by the Attorney General) the relevant material *in camera, ex parte* "as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. § 1806(f). The FISA allows very limited disclosure of the relevant FISA material only where the Court – after conducting this *in camera, ex parte* review – determines that "such disclosure is necessary to make an accurate determination of the legality of the surveillance." *Id.* Indeed, since the enactment of FISA, every court to review the legality of a FISA electronic surveillance or physical search pursuant to *in camera*, *ex parte* review has upheld the Government's actions, and no court has disclosed the underlying materials to the moving party. *See, e.g., United States v. Hamide*, 914 F.2d 1147 (9th Cir. 1990); *United States v. Squillacote*, 221 F.3d 542 (4th Cir. 2000); *United States v. Johnson*, 952 F.2d 565 (1st Cir. 1991); *United States v. Isa*, 923 F.2d 1300 (8th Cir. 1991); *United States v. Badia*, 827 F.2d 1458 (11th Cir. 1987); *United States v. Ott*, 827 F.2d 473 (9th Cir. 1987); *United States v. Duggan*, 743 F.2d 59 (2d Cir. 1984); *United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982).

[6] Such an interpretation would also be inconsistent with, and could not override, the statutory privilege that the United States has asserted concerning the activities and information of the NSA. *See* Declaration of Keith B. Alexander, Director of the National Security Agency, U.S. Mem., Attachment 2, ¶ 6 (quoting section 6 of the National Security Agency Act of 1959, Public Law No. 86-36, codified as a note to 50 U.S.C. § 402: "[n]othing in this Act <u>or any other law</u> . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency [or] any information with respect to the activities thereof. . . .") (emphasis added); *see also* Declaration of John D. Negroponte, Director of National Intelligence, U.S. Mem., Attachment 1(quoting 50 U.S.C. § 403-1(i)(1): "The Director of National Intelligence shall protect intelligence sources and methods from disclosure").

construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems.") (quoting *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001)) (citation omitted). In addition, when Congress intentionally seeks to restrict or regulate presidential action through legislation, it must make that intention clear. *See Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) ("[l]egislation regulating presidential action . . . raises 'serious' practical, political, and constitutional questions that warrant careful congressional and presidential consideration") (citing *United States v. Bass*, 404 U.S. 336, 350 (1971)). Section 1806(f) does not set forth a clear intention to restrict the President's constitutionally-imposed authority to protect and control national security information in the context of this case. *See Egan*, 484 U.S. at 527.

## III.   PLAINTIFFS HAVE OFFERED NO VALID REASON FOR THE COURT TO FOREGO REVIEW OF THE *IN CAMERA, EX PARTE* MATERIALS.

Plaintiffs' remaining arguments – that the Court need not review the *in camera, ex parte* materials because Plaintiffs can prove their *prima facie* case based on the public record, *see* Pltfs' Br. at 5-9, that the Court's review of the *in camera, ex parte* materials is premature, *see id.* at 10-14, and that it would be appropriate to permit discovery into any certifications AT&T may have received from the United States, *see id.* at 14 – all reflect a fundamental misconception of the scope, nature and effect of the Government's invocation of the state secrets privilege.

Although the primary reasons for rejecting Plaintiffs' arguments are set forth in the Government's *in camera, ex parte* materials, several arguments that can be made on the public record demonstrate that Plaintiffs' position is without merit. Plaintiffs' primary argument for deferring review of the *in camera, ex parte* materials is that they "can sustain their *prima facie* case without resort to the classified materials." Pltfs' Br. at 5. But this argument ignores the well-established rule that if "the 'very subject matter of the action' is a state secret, then the court should dismiss the plaintiff's action based solely on the invocation of the state secrets privilege." *Kasza*, 133 F.3d at 1166 (citing *United States v. Reynolds,* 345 U.S. 1, 11 n.26 (1953)); *see also*

1    *Totten v. United States*, 92 U.S. 105, 107 (1875) ("[P]ublic policy forbids the maintenance of any

2    suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters

3    which the law itself regards as confidential, and respecting which it will not allow the confidence

4    to be violated."); *see also Tenet v. Doe*, 544 U.S. 1, 8 (2005) (applying *Totten* to bar a suit

5    brought by former Soviet double agents seeking to enforce their alleged employment agreements

6    with the CIA and making clear that the *Totten* bar applies whenever a party's "success depends

7    upon the existence of [a] secret espionage relationship with the government"). In such cases, the

8    state secrets are "so central to the subject matter of the litigation that any attempt to proceed will

9    threaten disclosure of the privileged matters." *Fitzgerald v. Penthouse Int'l, Ltd.*, 776 F.2d 1236,

10   1241-42 (4th Cir. 1985). For the reasons discussed in the Government's *in camera, ex parte*

11   filing, the very subject matter of Plaintiffs' allegations is a state secret and further litigation

12   would inevitably risk their disclosure.

13        Even if the very subject matter of Plaintiffs' allegations were not state secrets, Plaintiffs

14   are wrong to claim that they can make out a *prima facie* claim absent the excluded state secrets.

15   As noted above, in order to prevail on any of their claims, Plaintiffs bear the burden of

16   establishing standing and must, at an "irreducible constitutional minimum," demonstrate (1) an

17   injury-in-fact, (2) a causal connection between the injury and the conduct complained of, and (3)

18   a likelihood that the injury will be redressed by a favorable decision. *Lujan,* 504 U.S. at 560-61.

19   In meeting that burden, the named Plaintiffs must demonstrate an actual or imminent – not

20   speculative or hypothetical – injury that is particularized as to them; they cannot rely on alleged

21   injuries to unnamed members of a purported class. And to obtain prospective relief, Plaintiffs

22   must show that they are "immediately in danger of sustaining some direct injury" as the result of

23   the challenged conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *O'Shea v.*

24   *Littleton*, 414 U.S. 488, 495-96 (1974).

25        As demonstrated in the Government's public briefs and declarations, Plaintiffs cannot

26   prove these jurisdictional elements without information covered by the state secrets assertion.

27

28

The Government's privilege assertion covers any information that tends to confirm or deny (a) the alleged intelligence activities, (b) whether AT&T was involved with any such activity, and (c) whether a particular individual's communications were intercepted as a result of any such activity. *See* Declaration of John D. Negroponte, Director of National Intelligence, U.S. Mem., Attachment 1 ("Negroponte Decl."), ¶¶ 11-12. Without these facts – which must be removed from the case as a result of the state secrets assertion – Plaintiffs cannot establish any alleged injury that is fairly traceable to AT&T.[7] Thus, regardless of whether they adequately allege such facts, Plaintiffs ultimately will not be able to prove injury-in-fact or causation—and thus cannot establish this Court's jurisdiction, let alone sustain a *prima facie* case, without information subject to the state secrets privilege.[8]

---

[7] Because jurisdictional issues must be examined as a threshold question, *see, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998), if the Court were to determine on the basis of the public record that Plaintiffs failed to establish their standing because, for example, Plaintiffs have failed to meet their burden to do so as a matter of law, or because it is clear from the public record that, in light of United States' inability to confirm or deny whether any individual Plaintiff is the subject of surveillance, the Court may find it unnecessary to review the United States' *in camera, ex parte* submissions, and may dismiss this case on that ground alone. Otherwise, however, review of the materials submitted *in camera* and *ex parte* is necessary to adjudicate the state secrets issues posed by this case. As a result, the Court could dismiss this case on the basis of the Government's public assertion of the state secrets privilege.

[8] As the United States noted in its public brief, to the extent Plaintiffs challenge the Terrorist Surveillance Program ("TSP"), *see, e.g.,* Am. Compl. 32-37, the allegations in the Complaint are insufficient on their face to establish standing even apart from the state secrets issue because Plaintiffs fail to demonstrate that they fall anywhere near the scope of that program. Plaintiffs do not claim to be, or to communicate with, members or affiliates of al Qaeda – indeed, Plaintiffs expressly *exclude* from their purported class any foreign powers or agents of foreign powers, "including without limitation anyone who knowingly engages in sabotage or international terrorism, or activities that are in preparation therefore." Am. Compl. ¶ 70. The named Plaintiffs thus are in no different position from any other citizen or AT&T subscriber who falls *outside* the narrow scope of the TSP but nonetheless disagrees with the program. Such a generalized grievance is clearly insufficient to support either constitutional or prudential standing to challenge the TSP. *See Halkin v. Helms*, 690 F.2d 977, 1001-03 (D.C. Cir. 1982) ("*Halkin II*") (holding that individuals and organizations opposed to the Vietnam War lacked standing to challenge intelligence activities because they did not adequately allege that they were (or immediately would be) subject to such activities; thus, their claims were "nothing more than a generalized grievance against the intelligence-gathering methods sanctioned by the President") (internal quotation marks and citation omitted); *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1380 (D.C. Cir. 1984) (rejecting generalized challenge to alleged unlawful surveillance). To the extent Plaintiffs allege classified intelligence activities

Plaintiffs' inability to sustain a *prima facie* case is not limited to their inability to prove

their standing. More generally, as the Government explained in its public brief, adjudicating

each claim in the Amended Complaint would require confirmation or denial of the existence,

scope, and potential targets of alleged intelligence activities, as well as AT&T's alleged

involvement in such activities.[9] Because such information cannot be confirmed or denied

without causing exceptionally grave damage to the national security, Plaintiffs' attempt to make

out a *prima facie* case would run into privileged information. Where, as here, a plaintiff cannot

make out a *prima facie* case in support of its claims absent the excluded state secrets, the case

must be dismissed. *See Kasza*, 133 F.3d at 1166; *Halkin II*, 690 F.2d at 998-99; *Fitzgerald*, 776

F.2d at 1240-41.

Plaintiffs' argument also fails to recognize that litigation is not limited to determining

whether a plaintiff can establish a *prima facie* case. For that very reason, courts have recognized

that if the state secrets privilege "'deprives the *defendant* of information that would otherwise

give the defendant a valid defense to the claim, then the court may grant summary judgment to

the defendant.'" *Kasza*, 133 F.3d at 1166 (quoting *Bareford v. General Dynamics Corp.,* 973

F.2d 1138, 1141 (5th Cir. 1992)); *see also Molerio v. Fed. Bureau of Investigation,* 749 F.2d

815, 825 (D.C. Cir. 1984) (granting summary judgment where state secrets privilege precluded

---

beyond the TSP, Plaintiffs could not prove such allegations in light of the state secrets assertion.

[9] As the United States demonstrated in its public brief, to prove their FISA claim (as alleged in Count I), Plaintiffs would have to show that AT&T intentionally acquired, under color of law and by means of a surveillance device within the United States, the contents of one or more wire communications to or from Plaintiffs. *See* Am Compl. ¶¶ 93–94; 50 U.S.C. §§ 1801(f), 1809, 1810. Likewise, to prove their claim under 18 U.S.C. § 2511 (as alleged in Count III), Plaintiffs would have to demonstrate that AT&T intentionally intercepted, disclosed, used, and/or divulged the contents of Plaintiffs' wire or electronic communications. *See* Am. Compl. ¶¶ 102–07. Plaintiffs' claims under 47 U.S.C. § 605, 18 U.S.C. § 2702, and Cal. Bus. & Prof. Code §§ 17200, *et seq*, all require similar proof: the acquisition and/or disclosure of Plaintiffs' communications and related information. And Plaintiffs must also prove, for each of their statutory claims, that any alleged interception or disclosure was not authorized by the Government. Despite Plaintiffs' unsupported assumption that they could demonstrate some or all of these necessary facts on the basis of the public record, the Government's submissions make clear that any information tending to confirm or deny the alleged activities, or any alleged AT&T involvement, is subject to the state secrets privilege. *See* Negroponte Decl. ¶¶ 11-12.

the Government from using a valid defense). In this case – as noted in the United States' public brief and as demonstrated in the *in camera, ex parte* materials – neither AT&T nor the Government could defend this action on the grounds that, among other things, the activities alleged by the Complaint (i) were authorized by the Government; (ii) did not require a warrant under the Fourth Amendment; (iii) were reasonable under the Fourth Amendment; or (iv) were otherwise authorized by law. *See* U.S. Mem. at 14-29.

Plaintiffs suggest that the Court could adjudicate whether AT&T received any certification or authorization from the Government relating to the alleged surveillance activity. They are mistaken. The United States has explained that the state secrets assertion "covers any information tending to confirm or deny" whether "AT&T was involved with any" of the "alleged intelligence activities." *See* U.S. Mem. at 17-18. Clearly, the existence or non-existence of any certification or authorization by the Government relating to any AT&T activity would be information tending to confirm or deny AT&T's involvement in any alleged intelligence activity. Thus, any such activity would fall within the Government's state secrets assertion, and the Court could not adjudicate, or allow discovery regarding, whether any Government certification or authorization exists without considering the Government's assertion of the state secrets privilege. *See id*. at 23.[10]

Finally, Plaintiffs argue that before the Court can review the *in camera, ex parte* materials, the Government must make a more specific – *i.e.,* public – showing about the information subject to the state secrets privilege. But requiring such a showing would be improper where, as here, it would "force 'disclosure of the very thing the privilege is designed to protect.'" *Ellsberg v. Mitchell*, 709 F.2d 51, 63 (D.C. Cir. 1983) (quoting *United States v. Reynolds*, 345 U.S. 1, 8 (1953)); *see also* 709 F.2d at 63 (noting the Court's "[f]ear" that "an

---

[10] Plaintiffs argue that 47 U.S.C. § 2511(2)(a)(ii) actually <u>requires</u> discovery of any certifications. That is simply wrong. That provision <u>precludes</u> any entity that has received such a certification from disclosing that certification "except as may otherwise be required by legal process." *Id.* Moreover, any "legal process" includes the determination of whether any privilege, including the state secrets privilege or any statutory privilege, prohibits such disclosure.

insufficient public justification result in denial of the privilege entirely might induce the government's representatives to reveal some material that, in the interest of national security, ought not to be uncovered"; further noting the "considerable variety in the situations in which a state secrets privilege may be fairly asserted").  As DNI Negroponte states in his Public Declaration, "any further elaboration on the public record concerning these matters [covered by his Declaration] would reveal information that could cause the very harms my assertion of the state secrets privilege is intended to prevent."  *See* Negroponte Decl. ¶¶ 11-12.  In light of this determination by the nation's highest-ranking intelligence official, the Government cannot say more publicly, and should not – and cannot – be penalized in this litigation because it has done nothing other than take the steps necessary to protect the national security of the United States.[11]

Not surprisingly, Plaintiffs are unable to point to any state secrets case in which the court has refused to review *in camera, ex parte* materials on the ground that the Government had insufficiently described the state secrets on the public record.  Instead, *Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973) (*en banc*), on which Plaintiffs rely for the proposition that a more particularized public showing must be made before a court conducts an *in camera* review of privileged materials, is a case that involving the assertion of *executive privilege,* not the state secrets privilege.[12]  *Id.* at 715-16.

_____

[11] *See*, *e.g.*, *In re United States*, 872 F.2d 472, 476 (D.C. Cir. 1989) ("Notions of sovereign immunity preclude any further adverse consequence to the government, such as alteration of procedural or substantive rules."); *Salisbury*, 690 F.2d at 975 ("when the government is defendant . . . an adverse finding cannot be rendered against it as the price of asserting an evidentiary privilege"); *Halkin I,* 598 F.2d at 10 (rejecting as "faulty" the premise "that the defendants should not be permitted to avoid liability for unconstitutional acts by asserting a privilege which would prevent plaintiffs from proving their case").

[12] The executive privilege, like the state secrets privilege, is constitutionally grounded. The executive privilege, however, protects the President's generalized interest in the confidentiality of his communications, and, as *Nixon* establishes, is a qualified privilege (at least in criminal cases).  *See* 487 F.2d at 716.  The state secrets privilege, on the other hand, is a privilege that directly derives from the President's constitutional responsibility to determine, based on his particular expertise, which disclosures will result in harm to the national security. Once properly invoked, the state secrets privilege is absolute. *In re Under Seal*, 945 F.2d 1285, 1288 (4th Cir. 1991); *see also Halkin II*, 690 F.2d at 980 ("[S]ecrets of state – matters the revelation of which reasonably could be seen as a threat to the military or diplomatic interest of

Instead, Plaintiffs try to contrast the Government's public filings in this case with the materials filed on the public record in *Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998). Although there is no indication in *Kasza* (and no basis in law or logic) to suggest that the Court was creating a minimum requirement for public descriptions of state secrets assertions, in this case the Government has made a similar public showing to that made in *Kasza*. In *Kasza,* the declarant identified categories of information that were validly classified, describing those categories in general terms, such as, for example, "program names"; "missions"; "capabilities"; "intelligence sources and methods"; "security sensitive environmental data"; and "military plans, weapons or operations." *Id.* at 1168-69; *see also Edmonds*, 323 F. Supp. 2d at 74 (upholding assertion of state secrets privilege and granting defendant's motion to dismiss where the Attorney General concluded that "further disclosure of the information underlying this case, including the nature of the duties of plaintiff or the other contract translators at issue in this case reasonably could be expected to cause serious damage to the national security interests of the United States" and finding this assertion "similar to the one submitted to the court in *Kasza*").

The United States' public filings in this case are no less specific than the public submissions made in *Kasza* and *Edmonds.* For example, DNI Negroponte states in his Public Declaration that to disclose additional details regarding the Terrorist Surveillance Program beyond the facts already disclosed by the President would disclose "classified intelligence information" and reveal "intelligence sources and methods," as a result of which adversaries of the United States would be able "to avoid detection by the U.S. Intelligence Community and/or take measures to defeat or neutralize U.S. intelligence collection, posing a serious threat of damage to the United States' national security interests." Negroponte Decl. ¶ 11; *see also El-Masri*, Slip Op. at 10-11 (finding that even where Government had made "a general admission that rendition exists," the Government "validly claimed as state secrets" the "operational details of the extraordinary rendition program"). With respect to Plaintiffs' allegations regarding other

the nation – are absolutely privileged from disclosure in the courts.").

purported activities of the NSA, including allegations about NSA's purported involvement with AT&T, DNI Negroponte further states that the United States can neither confirm nor deny allegations concerning "intelligence activities," "sources," "methods," "relationships," or "targets." Negroponte Decl. ¶ 12. And DNI Negroponte goes on to note that "disclosure of those who are targeted by such activities would compromise the collection of intelligence information just as disclosure of those who do are not targeted would reveal to adversaries that certain communications channels are secure or, more broadly, would tend to reveal the methods being used to conduct surveillance." *Id.*

In sum, where (as here) requiring further public descriptions of the state secrets assertion would "force 'disclosure of the very thing the privilege is designed to protect,'" *Ellsberg*, 709 F.2d at 63 (citing *Reynolds*, 345 U.S. at 8), and where (as here) the Government has made a public showing similar to that in *Kasza*, 133 F.3d at 1168-69, there is no reason for the Court to require further public disclosures before reviewing the *in camera, ex parte* materials.

## CONCLUSION

For the reasons stated herein, the Court should consider the United States' *in camera, ex parte* submissions and rule on the Government's assertion of the state secrets privilege and its Motion to Dismiss or, in the Alternative, for Summary Judgment before taking any further action in this case.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

CARL J. NICHOLS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

JOSEPH H. HUNT
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Special Litigation Counsel
tony.coppolino@usdoj.gov

*s/ Renée S. Orleans*
RENÉE S. ORLEANS
renee.orleans@usdoj.gov
ANDREW H. TANNENBAUM
andrew.tannenbaum@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 514-4782/(202) 514-4263
Fax: (202) 616-8460/(202) 616-8202/(202) 318-2461

DATED: May 24, 2006                    Attorneys for Intervenor Defendant United States

28

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **UNITED STATES' RESPONSE TO PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S MAY 17, 2006 MINUTE ORDER** will be served by means of the Court's CM/ECF system, which will send notifications of such filing to the following:

Electronic Frontier Foundation
Cindy Cohn
Lee Tien
Kurt Opsahl
Kevin S. Bankston
Corynne McSherry
James S. Tyre
545 Shotwell Street
San Francisco, CA 94110

Lerach Coughlin Stoia Geller Rudman & Robbins LLP
Reed R. Kathrein
Jeff D. Friedman
Shana E. Scarlett
100 Pine Street, Suite 2600
San Francisco, CA 94111

Traber & Voorhees
Bert Voorhees
Theresa M. Traber
128 North Fair Oaks Avenue, Suite 204
Pasadena, CA 91103

Pillsbury Winthrop Shaw Pittman LLP
Bruce A. Ericson
David L. Anderson
Patrick S. Thompson
Jacob R. Sorensen
Brian J. Wong
50 Freemont Street
PO Box 7880
San Francisco, CA 94120-7880

Sidley & Austin LLP
David W. Carpenter
Bradford Berenson
Edward R. McNicholas
David L. Lawson
1501 K Street, NW
Washington, DC 20005

*s/ Renée S. Orleans*

CERTIFICATE OF SERVICE, Case No. C 06-0672-VRW