1   DAVID L. ANDERSON #149604
    JACOB R. SORENSEN #209134
2   BRIAN J. WONG #226940
    50 Fremont Street
3   Post Office Box 7880
    San Francisco, CA 94120-7880
4   Telephone: (415) 983-1000
    Facsimile: (415) 983-1200
5   Email: bruce.ericson@pillsburylaw.com

6   SIDLEY AUSTIN LLP
    DAVID W. CARPENTER (admitted *pro hac vice*)
7   DAVID L. LAWSON (admitted *pro hac vice*)
    BRADFORD A. BERENSON (admitted *pro hac vice*)
8   EDWARD R. McNICHOLAS (admitted *pro hac vice*)
    1501 K Street, N.W.
9   Washington, D.C. 20005
    Telephone: (202) 736-8010
10  Facsimile: (202) 736-8711
    Email: bberenson@sidley.com

11
    Attorneys for Defendants
12  AT&T CORP. and AT&T INC.

13              UNITED STATES DISTRICT COURT

14           NORTHERN DISTRICT OF CALIFORNIA

15              SAN FRANCISCO DIVISION

16

TASH HEPTING, GREGORY HICKS,              No. C-06-0672-VRW
17  CAROLYN JEWEL and ERIK KNUTZEN
    on Behalf of Themselves and All Others    **REPLY MEMORANDUM OF**
18  Similarly Situated,                       **DEFENDANT AT&T CORP. IN**
                                              **RESPONSE TO COURT'S MAY 17,**
19                      Plaintiffs,           **2006 MINUTE ORDER**

20          vs.

21  AT&T CORP., AT&T INC. and DOES 1-20,
    inclusive,
22
                        Defendants.
23

24                      **[REDACTED]**

25

26

27

28

Dockets.Justia.com

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION. ........................................................................................... 1

II. ARGUMENT. ................................................................................................. 3

    A.    The Government's State Secrets Motion Cannot Properly Be Resolved Without Reviewing The Classified Submissions. ........................ 3

        1.    Deciding A State Secrets Motion Routinely Entails Ex Parte Review Of Classified Submissions. .................................................. 4

        2.    Due Process Is Not Violated By Such Review. ............................... 8

        3.    The Provisions Of FISA Governing Disclosure Of FISA Materials Have No Application Here. ............................................. 10

    B.    The Court Cannot Adjudicate Plaintiffs' Prima Facie Claims Until It Reviews The Classified Submissions. .......................................... 12

    C.    Plaintiffs Cannot Obtain Any Discovery Or Litigate Any Facts Relating To AT&T's Immunity Before This Court Has Resolved The Government's State Secrets Motion. .......................................... 15

III. CONCLUSION. ............................................................................................. 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*ACLU Foundation of Southern California v. Barr*, 952 F.2d 457 (D.C. Cir. 1991) .................... 11

*Azzouka v. Meese*, 820 F.2d 585 (2d Cir. 1987) ......................................................... 8

*Azzouka v. Sava*, 777 F.2d 68 (2d Cir. 1985) ........................................................... 8

*Black v. United States*, 62 F.3d 1115 (8th Cir. 1995) .................................................. 6

*Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990) ...................................................... 6

*DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327 (4th 201) ........................................ 11, 12

*Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983) ............................................... 4, 6, 7

*Fitzgerald v. Penthouse International, Ltd.*, 776 F.2d 1236 (4th Cir. 1985) .......................... 5, 6

*Frost v. Perry*, 161 F.R.D. 434 (D. Nev. 1995) ........................................................ 17

*Global Relief Foundation v. O'Neill*, 315 F.3d 748 (7th Cir. 2002) .................................... 8

*In re Grand Jury Proceedings*, 867 F.2d 539 (9th Cir. 1988) ........................................... 9

*Guenther v. Commissioner of Internal Rev. (Guenther I)*, 889 F.2d 882 (9th Cir. 1989) ................. 9

*Guenther v. Commissioner of Internal Rev.(Guenther II)*, 939 F.2d 758 (9th Cir. 1989) ................. 9

*Halkin v. Helms*, 598 F.2d 1 (D.C. Cir. 1978) .................................................. 6, 14,15

*Halkin v. Helms*, 690 F.2d 977 (D.C. Cir. 1982) ....................................................... 5

*Halperin v. Kissinger*, 424 F. Supp. 838 (D.D.C. 1976), *rev'd on other grounds*, 606 F.2d 1192 (D.C. Cir. 1979) ................................................................................ 18

*Holy Land Foundation for Relief & Development v. Ashcroft*, 333 F.3d 156 (D.C. Cir. 2003) ............. 8

*Jay v. Boyd*, 351 U.S. 345 (1956) ..................................................................... 8

*Jifry v. Federal Aviation Admin.*, 370 F.3d 1174 (D.C. Cir. 2004) ..................................... 8

*Joint Anti-Fascist Refugee Commission v. McGrath*, 341 U.S. 123 (1951) ................................ 9

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) ................................................ 4-6, 16-17

*Lynn v. Regents of University Calif.*, 656 F.2d 1337 (9th Cir. 1981)...........................................9

*Meridian International Logistics, Inc. v. United States*, 939 F.2d 740 (9th Cir. 1991) ................9

*National Council of Resistance of Iran v. Department of State*, 251 F.3d 192 (D.C. Cir. 2001).......................................................................................................................8

*National Council of Resistance of Iran v. Department of State*, 373 F.3d 152 (D.C. Cir. 2004).......................................................................................................................8

*Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973).........................................................................7

*People's Mojahedin Organization of Iran v. Department of State*, 327 F.3d 1238 (D.C. Cir. 2003).......................................................................................................................8

*Pollard v. Federal Bureau of Investigation*, 705 F.2d 1151 (9th Cir. 1983)..............................9

*Shaughnessy v. United States ex rel. Mezel*, 345 U.S. 206 (1953) .............................................8

*Smith v. Nixon*, 606 F.2d 1183 (D.C. Cir. 1979) ......................................................................19

*Suciu v. Immig. and Naturalization Services*, 755 F.2d 127 (8th Cir. 1985) ..............................8

*United States ex rel. Barbour v. District Director of the INS*, 491 F.2d 573 (5th Cir. 1974).......................................................................................................................8

*United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982)..........................................................11

*United States v. Ott*, 637 F. Supp. 62 (E.D. Cal. 1986)...........................................................11

*United States v. Ott*, 827 F.2d 473 (9th Cir. 1987)...................................................................9

*United States v. Reynolds*, 345 U.S. 1 (1953) ........................................................................4-5

*United States v. Sarkissan*, 841 F.2d 959 (9th Cir. 1988) ........................................................9

*United States v. Shaughnessy*, 338 U.S. 537 (1950) ...............................................................8

*United States v. Spanjol*, 720 F. Supp. 55 (E.D. Pa. 1989) ...................................................11

*United States v. Thomson*, 752 F. Supp. 75 (W.D.N.Y. 1990)...............................................11

*Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544 (2d Cir. 1991) .................................5

## **FEDERAL STATUTES**

50 U.S.C. § 1801 ...................................................................................................................14

50 U.S.C. § 1806 ...........................................................................................................2, 10, 11

50 U.S.C. § 1845 ...................................................................................... 2, 10, 11

47 U.S.C. § 2511 ...................................................................................... 3, 15, 17

18 U.S.C. § 2510 .......................................................................................... 14

18 U.S.C. § 2702 .......................................................................................... 14

1    Defendants AT&T Inc. and AT&T Corp. (collectively "AT&T") respectfully submit

2    this reply memorandum addressing the two issues raised in the Court's Minute Order of

3    May 17, 2006 ("Minute Order," Dkt. 130): (1) whether this case can be litigated without

4    deciding the state secrets issue, thus obviating any need for the Court to review the

5    government's classified submissions and (2) whether plaintiffs are entitled to discovery of

6    any authorizations the government may have provided to AT&T notwithstanding the

7    government's invocation of the state secrets privilege.

8    **I.    INTRODUCTION.**

9    In their Memorandum in Response to the Minute Order, plaintiffs maintain that this

10   case can proceed without the Court deciding the state secrets issue and that, accordingly,

11   the Court should not even *look at* the government's classified submissions in support of its

12   assertion of the military and state secrets privilege in this case.  Plaintiffs ignore that the

13   classified portions of the government's Motion to Dismiss ("Government's Motion," Dkts.

14   124 – 125) are, as the Court recognized at the hearing on May 17, 2006, "the heart of [the

15   government's] argument" in support of its Motion.  Tr. of May 17th Hearing, at 33:11-12.

16   Plaintiffs advance a number of arguments in support of their claim that the Court

17   should not review the government's classified submissions.  First, they contend that due

18   process "disfavors" the consideration of evidence in *ex parte, in camera* proceedings.

19   Plaintiffs do not argue that such proceedings actually *violate* due process, and for good

20   reason.  Decades of decisions establish that *ex parte, in camera* review of classified

21   submission is the standard and appropriate means of evaluating state secrets assertions and

22   that the only course of action that would deny due process would be allowing plaintiffs to

23   impose massive liabilities on AT&T when AT&T is barred by the government's assertion

24   of the state secrets privilege from rebutting plaintiff's allegations.

25   Plaintiffs also contend that if the Court is going to review the government's *ex*

26   *parte, in camera* submissions, two sections of the Foreign Intelligence Surveillance Act

27   ("FISA") give plaintiffs the right to review them, too.  This contention ignores that the

28   provisions of FISA they cite – 50 U.S.C. § 1806(f); 50 U.S.C. § 1845(f) – are intended to

1   apply mainly when the government seeks to use evidence obtained through FISA warrants

2   against individuals whose communications were intercepted pursuant to FISA.  Because

3   plaintiffs have specifically alleged that the purported surveillance they are challenging did

4   not occur pursuant to FISA, *see* First Amended Complaint ("FAC") ¶¶ 2, 35, they cannot

5   and have not alleged that they were subjected to government surveillance (pursuant to FISA

6   or otherwise).  As such, the FISA provisions they cite offer no support to their claim to

7   review the government's classified submissions.  Notably, however, those provisions

8   provide that, even in an FISA case, courts may perform the sort of *ex parte* and *in camera*

9   review of classified information that plaintiffs resist here.

10      Plaintiffs next assert that the Court can adjudicate plaintiffs' claims without resort to

11  the classified information the government has submitted in support of its Motion to

12  Dismiss.  In its public filings, the United States explained in detail that no aspect of

13  plaintiffs' cause of action – from plaintiffs' standing, to the elements of its statutory causes

14  of action, to the elements of its Fourth Amendment claims – can be proven by plaintiffs or

15  defended against by AT&T without invading the domain protected by the constitutionally-

16  grounded state secrets doctrine.[1]  *See* Gov't Mem. at 16 ("every step in this case . . . runs

17  into privileged information").  Yet plaintiffs maintain that the Court need take no account

18  of the underlying basis for this explanation before rejecting it.  Plaintiffs, of course, cannot

19  discern the specific relevance or significance of this information, and so they cannot say

20  whether the information would in fact bear on the litigation of their claims.  Only the Court

21  can make that determination.  It should go without saying that the Court can only do so

22  after it has actually reviewed the information.  If the information is in fact relevant to

23  plaintiffs' claims, the Court cannot permit the case to proceed against AT&T.  Because of

24  _____

25  [1] Gov't Mem. at 16-23 (plaintiffs standing); at 21 (whether AT&T has intentionally
    intercepted or disclosed the contents of plaintiffs communications or calling record or
26  related information); at 21-23, 28 (whether any interceptions or related activities were in
    accord with certifications of the Attorney General or other authorizations that confer
27  immunity on carriers from *any* cause of action); at 23-28 (plaintiffs' Fourth Amendment
    claims).

28

1   the government's assertion of the state secrets privilege, AT&T cannot defend itself against

2   plaintiffs' claims. Plaintiffs' argument that the Court could decide this case without

3   examining the foundation for the government's state secrets assertion defies common sense.

4        Finally, plaintiffs argue that the statute that would provide AT&T with immunity

5   from plaintiffs' suit (18 U.S.C. § 2511(2)(a)(ii)) somehow mandates discovery of any

6   authorization AT&T may have received from the government for assisting it with alleged

7   surveillance activities. Section 2511(2)(a)(ii) says nothing of the sort. To the contrary, it

8   prevents telecommunications providers such as AT&T from disclosing any such

9   certifications "except as may otherwise be required by legal process." 47 U.S.C. §

10   2511(2)(a)(ii). Because there is no such "otherwise required" legal process at issue here,

11   plaintiffs' claim to discovery of government certifications – the mere existence of which

12   section 2511(2)(a)(ii) prevents AT&T from either confirming or denying – falls flat.

13   **II.**     **ARGUMENT.**

14   **A.**     **The Government's State Secrets Motion Cannot Properly Be Resolved Without**

15         **Reviewing The Classified Submissions.**

16        Ensuring proper application of the state secrets doctrine is primarily the province

17   and concern of the United States. AT&T offers its views on this subject in response to the

18   Court's invitation in the Minute Order of May 17 to the extent that such views may be of

19   assistance to the Court.

20        Contrary to plaintiffs' arguments, AT&T does not believe that an assertion of state

21   secrets by the United States may blithely be dismissed without even considering the basis

22   for it. Assertions of state secrets must be made personally by the nation's most senior

23   intelligence officials, as they were here. To the extent courts can ever rule on state secrets

24   assertions without examining the government's supporting submissions, it is only to accept

25   such assertions where the potential for compromising state secrets is obvious. Where there

26   is any doubt, *ex parte* and *in camera* review of classified submissions is the standard and

27   accepted method for adjudicating state secrets issues. To render the rulings plaintiffs seek

28

1    without even reviewing the evidence tendered personally to this Court by the Director of

2    National Intelligence and Director of the National Security Agency would be

3    unprecedented and wrong.  Regardless of what the government's classified submissions

4    contain – something we do not know – the better course is to review those submissions

5    before deciding whether this case may proceed.

6    **1.     Deciding A State Secrets Motion Routinely Entails Ex Parte Review Of**

7    **Classified Submissions.**

8          The state secrets privilege allows the government to prevent the unauthorized

9    disclosure of information during litigation that might harm national security interests.  *See*,

10   *e.g.*, *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953); *Kasza v. Browner*, 133 F.3d 1159,

11   1166 (9th Cir. 1998); *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983) ("the various

12   harms against which protection is sought by invocation of the privilege, include[e]

13   impairment of the nation's defense capabilities [and] disclosure of intelligence-gathering

14   methods or capabilities").  The invocation of state secrets must be made formally through

15   an affidavit by "the head of the department which has control over the matter, after actual

16   personal consideration by the officer."  *Reynolds*, 345 U.S. at 7-8.  The judgment of such

17   officers, who are constitutionally entrusted and empowered to protect the nation's security,

18   is due the "utmost deference" by the courts, and the scope of a reviewing court's discretion

19   to reject them is exceedingly narrow.  *Id.* at 10; *see also Kasza*, 133 F.3d at 1166.  A court

20   that does not review the government's filing cannot be giving proper consideration or

21   deference to the government's position.  "Once the privilege is properly invoked and the

22   court is satisfied as to the danger of divulging state secrets, the privilege is absolute," and

23   "even the most compelling necessity cannot overcome the claim of privilege."  *Kasza*, 133

24   F.3d at 1166-7 (quoting *Reynolds*, 345 U.S. at 11 n.26).

25         Where, as here, the government contends that "the 'very subject matter of the

26   action' is a state secret," the Court must "dismiss the plaintiff's action based solely on the

27   invocation of the state secrets privilege" as long as "'the court is ultimately satisfied that

28

1    there are military secrets at stake.'" *Kasza*, 133 F.3d at 1166 (quoting *Reynolds*, 345 U.S.

2    at 11 n.26); *see also Black v. United States*, 62 F.3d 1115 (8th Cir. 1995); *Fitzgerald v.*

3    *Penthouse Internat'l, Ltd.*, 776 F.2d 1236, 1239, 1241-42 (4th Cir. 1985); *Halkin v. Helms*,

4    690 F.2d 977, 999 (D.C. Cir. 1982). "While dismissal of an action based on the state

5    secrets privilege is harsh, the results are harsh in either direction and the state secrets

6    doctrine finds the greater public good – ultimately the less harsh remedy – to be dismissal."

7    *Kasza.* at 1167 (*quoting Bareford v. General Dynamics Corp.*, 973 F.2d 1138, 1144 (5th

8    Cir. 1992)).

9        In limited circumstances, state secrets assertions may be adjudicated without

10   reviewing the underlying state secrets information – but only where the government's

11   assertion is accepted. In *United States v. Reynolds*, 345 U.S. 1 (1953), the Supreme Court

12   indicated that:

13           It may be possible to satisfy the court, from all the
             circumstances of the case, that there is a reasonable danger
14           that compulsion of the evidence will expose military matters
             which, in the interest of national security, should not be
15           divulged. When this is the case, the occasion for the privilege
             is appropriate, and the court should not jeopardize the
16           security which the privilege is meant to protect by insisting
             upon an examination of the evidence, even by the judge
17           alone, in chambers.

18

19   *Id.* at 10; *see also Zuckerbraun v. General Dynamics Corp.*, 935 F.2d 544 (2d Cir. 1991)

20   (accepting privilege assertion without *in camera* review). Short of such a situation,

21   however, a reviewing court is obliged to satisfy itself that the threshold for proper

22   invocation of the privilege has been met – *i.e.*, "that there is a reasonable danger that

23   compulsion of the evidence will expose military matters which, in the interest of national

24   security, should not be divulged." *Kasza*, 133 F.3d at 1166 (internal quotations omitted).

25   Once such a determination is made, the court's job is at an end; the privilege is absolute and

26   cannot be overcome by any countervailing considerations. *See id.*

27

28

1    The standard and accepted means for a court to satisfy itself that the threshold has

2    been met is through *ex parte* and *in camera* review of privileged and/or classified

3    submissions by the government. *See, e.g., Kasza*, 133 F.3d at 1169; *Black v. United States*,

4    62 F.3d 1115, 1119 (8th Cir. 1995); *Fitzgerald v. Penthouse Internat'l, Ltd.*, 776 F.2d 1236

5    (4th Cir. 1985); *Halkin v. Helms*, 598 F.2d 1, 3 (D.C. Cir. 1978) ("It is settled that in

6    camera proceedings are an appropriate means to resolve disputed issues of privilege"). As

7    a practical matter, how else can the Court determine whether the privilege has been

8    properly invoked? The clear is answer is the Court cannot. Neither plaintiff nor defendant

9    is empowered or entrusted to review or comment on the privileged submission; both are

10   equally disabled from having access to national security secrets that, by definition, they are

11   not authorized to possess. *C.f., e.g., Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990)

12   (courts lack jurisdiction to interfere in security clearance determinations). Instead, only the

13   court is constitutionally entrusted with the responsibility to verify the bona fides of the

14   executive's assertion of state secrets. Such verification necessarily entails review of the

15   government's *ex parte, in camera* submission. Not surprisingly, plaintiffs are unable to cite

16   even a single case in which a reviewing court has rejected a state secrets submission

17   without reviewing it.

18       Nor is plaintiffs' effort to convince this Court that review of the classified

19   submission is a last resort—to be undertaken only if the government makes a

20   "particularized showing" of state secrets and the court determines "what information

21   properly falls within and without the state secrets privilege"—any more availing. The

22   whole purpose of the classified submission is to make the "particularized showing"

23   plaintiffs seek, such that the court can make the determination they request. To ask that the

24   government make public more of the information it is trying to keep secret or that the court

25   evaluate privilege claims and resolve discovery requests without access to the privileged

26   information is unreasonable and incorrect.

27

28

1    *Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983), and *Nixon v. Sirica*, 487 F.2d

2    700 (D.C. Cir. 1973) (en banc), mandate no such result. *Ellsberg* rejected "a strict rule that

3    the trial judge must compel the government to defend its claim publicly before submitting

4    materials *in camera*," *id.* at 63, holding only that "the trial judge should insist (1) that the

5    formal claim of privilege be made on the public record and (2) that the government either

6    (a) publicly explain in detail the kinds of injury to national security it seeks to avoid and the

7    reason those harms would result from revelation of the requested information or (b) indicate

8    why such an explanation would itself endanger national security," *id.* at 63-64. The

9    government's extensive submissions in this case easily satisfy this standard.

10   The *Ellsberg* court went out of its way "to make clear the limitations of our ruling:

11   The government's public statement need be no more (and no less) specific than is

12   practicable under the circumstances." *Id.* at 64. And even this rule only applied in a

13   limited class of cases, totally unlike this one, where "the surrounding circumstances did not

14   make apparent the likelihood that disclosure would lead to serious injury," *id.* at 61 – there,

15   because the surveillance at issue had admittedly stopped more than five years earlier. And

16   *Nixon* involved the wholly different context of a criminal prosecution of executive branch

17   officials, in which, in effect, the executive branch was on both sides of the case. The court

18   there rejected the notion that any public explanation had to be given regarding materials

19   that "relate[] to national defense or foreign relations." 487 F.2d at 721.

20   If the state secrets assertion in this case could be decided without recourse to the

21   government's classified submission, it could only be decided in favor of the government:

22   the threat to national security is obvious from permitting litigation of claims that, on their

23   face, place in issue the details of a highly classified intelligence program and almost

24   nothing else. But, unless this Court grants AT&T's motion to dismiss on non-state secrets

25   grounds, thereby avoiding the need to confront this issue at all, the better course of action is

26   for this Court to review the classified information the government has made available to it

27   for *ex parte* and *in camera* review.

28

1    **2.    Due Process Is Not Violated By Such Review.**

2        Although plaintiffs do not directly contend that due process would be violated by *in*

3    *camera, ex parte* review of the government's classified submissions in this case, they

4    nevertheless attempt to bolster their arguments by vague allusions to due process:  its

5    general requirements, its "very spirit," and its "disfavor" for "secret evidence [and]

6    arguments."  Plaintiffs' Memorandum ("Pltfs. Mem.") at 2-3.  Plaintiffs' due process

7    concerns are misplaced in the context of this case.  As detailed above, numerous courts,

8    including the Ninth Circuit, have found that review of *in camera, ex parte* classified

9    submissions is an appropriate procedure for determining whether a case can proceed after

10   invocation of the state secrets privilege.  *See supra* Section II.A.1.  Moreover, due process

11   claims have been consistently rejected in analogous contexts involving *in camera, ex parte*

12   review of classified submissions, including cases reviewing blocking orders issued under

13   the International Emergency Economic Powers Act ("IEEPA"),[2] designations of "foreign

14   terrorist organizations" under the Anti-Terrorism and Effective Death Penalty Act

15   ("AEDPA"),[3] and immigration deportation proceedings.[4]

16   _____

17   [2] *See, e.g., Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir.
18       2003), cert. denied 540 U.S. 1218 (2004); *Global Relief Found. v. O'Neill*, 315 F.3d 748,
         754 (7th Cir. 2002).

19   [3] *See, e.g., National Council of Resistance of Iran v. Dep't of State*, 373 F.3d 152, 158
         (D.C. Cir. 2004); *People's Mojahedin Organization of Iran v. Dep't of State*, 327 F.3d
20       1238, 1242 (D.C. Cir. 2003); *National Council of Resistance of Iran v. Dep't of State*, 251
         F.3d 192, 208 (D.C. Cir. 2001); *see also Jifry v. Fed. Aviation Admin.*, 370 F.3d 1174,
21       1184 (D.C. Cir. 2004) (holding that the same due process protections that apply to
         terrorism listing cases under AEDPA also apply to FAA revocation of airmen certificates
22       based on finding that pilots posed a security risk and rejecting argument that pilots' due
         process rights were violated because they did not have access to the specific, classified
23       evidence on which the agency relied in making its determination), cert. denied 543 U.s.
         1146 (2005).

24   [4] *See, e.g., Suciu v. Immig. and Naturalization Servs.*, 755 F.2d 127, 128 (8th Cir. 1985);
         *United States ex rel. Barbour v. District Director of the INS*, 491 F.2d 573, 578 (5th Cir.
25       1974); *see also Jay v. Boyd*, 351 U.S. 345 (1956) (government may rely on classified
         information to deny discretionary immigration relief); *Shaughnessy v. United States ex*
26       *rel. Mezel*, 345 U.S. 206 (1953) (government may rely on confidential information to
         exclude an alien from the United States); *United States v. Shaughnessy*, 338 U.S. 537
27       (1950)  (same); *Azzouka v. Meese*, 820 F.2d 585, 587 (2d Cir. 1987) (same); *Azzouka v.*
                                                                              (continued...)
28

1    Plaintiffs make no attempt to come to grips with any of this law. Instead, they rely

2    on several due process cases from unrelated and inapposite contexts. In *Lynn v. Regents of*

3    *Univ. Calif.*, 656 F.2d 1337 (9th Cir. 1981), for example, a garden-variety gender

4    discrimination case, the court held that the district court's *in camera, ex parte* review of the

5    tenure file of the plaintiff professor violated due process. Similarly, in *Guenther v. Comm'r*

6    *of Internal Rev.(Guenther II)*, 939 F.2d 758 (9th Cir. 1991), an appeal by taxpayers of an

7    IRS finding of tax deficiency, the court held that the district court's *ex parte* consideration

8    of the agency's trial memorandum violated due process.[5] It should come as no surprise that

9    neither *Lynn* nor *Guenther II* involved an assertion of the state secrets privilege or any

10   analogous national security consideration of the kind that has consistently led courts,

11   including the Ninth Circuit,[6] to approve *ex parte, in camera* review of classified

12   information.[7]

13

14   _____

15   (...continued)
     *Sava*, 777 F.2d 68, 72 (2d Cir. 1985) (same).

16   [5] Plaintiffs also cite *Guenther v. Comm'r of Internal Rev. (Guenther I)*, 889 F.2d 882 (9th
     Cir. 1989), a prior ruling in the same case in which the Ninth Circuit remanded the case
17   for an evidentiary hearing on the issue of the *ex parte* communication.

18   [6] *See, e.g., Meridian Internat'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir.
     1991) (holding that ex parte review of declaration concerning whether employee was
19   acting within the scope of his employment was proper and adequately balanced the rights
     of the interested parties); *In re Grand Jury Proceedings*, 867 F.2d 539, 541 (9th Cir.
20   1988) (holding that party was not denied due process by district court's *in camera*
     inspection of the materials upon which the government based its showing of the crime-
21   fraud exception); *United States v. Sarkissan*, 841 F.2d 959, 965 (9th Cir. 1988) (stating
     that Classified Information Procedures Act permits *ex parte* submissions); *United States*
22   *v. Ott*, 827 F.2d 473, 476-77 (9th Cir. 1987) (holding that due process was not violated by
     *ex parte, in camera* proceeding under Foreign Intelligence Surveillance Act); *Pollard v.*
23   *Fed. Bureau of Investigation*, 705 F.2d 1151, 1153-54 (9th Cir. 1983) (stating that
     practice of *in camera, ex parte* review is appropriate in certain cases under the Freedom
24   of Information Act).

25   [7] Plaintiffs' reference to the principle articulated by Justice Frankfurter in his concurring
     opinion in *Joint Anti-Fascist Refugee Comm'n v. McGrath*, 341 U.S. 123, 170 (1951), is
26   just generalized flag-waving; it provides no more concrete support than *Lynn* or *Guenther*
     *II* for the proposition that due process concerns somehow alter the well-established
27   procedure for evaluating state secrets assertions by the United States in national security-
     related litigation such as this.

28
                                              - 9 -AT&T's REPLY MEM. IN RESPONSE TO COURT'S MAY 17
                                                                              MINUTE ORDER
                                                                          No. C-06-0672-VRW

1    **3.    The Provisions Of FISA Governing Disclosure Of FISA Materials Have No**

2    **Application Here.**

3    Plaintiffs point to two sections of FISA – 50 U.S.C. §§ 1806(f), 1845(f) – in arguing

4    that if the Court is going to review the government's *ex parte*, *in camera* submissions,

5    plaintiffs should also be able to do so.  Pltfs. Mem.. at 4 ("[T]he Court should do so under

6    conditions that provide for some form of appropriate access by plaintiffs' counsel.").  These

7    provisions of FISA are designed to apply primarily in circumstances in which the

8    government seeks to use evidence obtained through FISA warrants against individuals

9    whose communications were intercepted.  Plaintiffs have specifically alleged that the

10   purported surveillance they are challenging did not occur pursuant to FISA, *see* FAC ¶¶ 2,

11   35; they cannot and have not alleged that they themselves were subjected to government

12   surveillance, pursuant to FISA or otherwise; and the government is not, in any event,

13   attempting to use information derived from surveillance of plaintiffs against them in this or

14   any other proceedings. *See* 50 U.S.C. § 1806(c) (1806(f) procedures apply, *inter alia*,

15   "[w]henever the Government intends to enter into evidence or otherwise use or disclose in

16   any trial, hearing, or other proceeding . . . against an aggrieved person, any information

17   obtained or derived from an electronic surveillance of that aggrieved person").  Absent a

18   broad expansion of the traditional understanding of the purpose of these provisions, they

19   lend no support to plaintiffs' position.

20   Moreover, these FISA provisions specifically mandate the very thing plaintiffs are

21   attempting to resist:  *ex parte* and *in camera* review.  At most, Sections 1806(f) and 1845(f)

22   provide a court with some discretion to disclose to litigants certain evidence gathered

23   pursuant to FISA, but only after it first reviews the purported evidence *in camera* and *ex*

24   *parte*. *See* 50 U.S.C. § 1806(f) (District Court "*shall … review in camera and ex parte the*

25   *application, order, and such other materials* relating to the surveillance as may be

26   necessary to determine whether the surveillance of the aggrieved person was lawfully

27   authorized and conducted") (emphasis added); 50 U.S.C. § 1845.  Thus, plaintiffs'

28

1    threshold argument that the Court should not be able to review the government's

2    submissions flies in the face of the very statutes they cite.

3         Further, even if these provisions were applicable – which they are not – sections

4    1806(f) and 1845(f) provide only that a court *may* disclose the secret material. *See* 50

5    U.S.C. § 1806(f); 50 U.S.C. § 1845(f). Such disclosure is not mandatory, and plaintiffs cite

6    no case in which those provisions have been held to permit or require disclosure of state

7    secrets. Indeed, the great weight of authority interpreting the FISA sections plaintiffs cite

8    mandates that even ordinary FISA surveillance information over which no formal state

9    secrets claim has been asserted should not be disclosed. *See ACLU Foundation of Southern*

10   *California v. Barr*, 952 F.2d 457, 469 (D.C. Cir. 1991) (noting that 50 U.S.C. § 1806(f) "is

11   designed to prevent disclosure of information relating to FISA surveillance in adversary

12   proceedings"); *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982) (rejecting

13   argument that disclosure was necessary and holding that under 1806(f) "[d]isclosure and an

14   adversary hearing are the exception, occurring *only* when necessary") (emphasis in

15   original); *United States v. Thomson*, 752 F. Supp. 75, 79 (W.D.N.Y. 1990) ("No court that

16   has been required to determine the legality of a FISA surveillance has found disclosure or

17   an adversary hearing necessary"); *United States v. Spanjol*, 720 F. Supp. 55, 59 (E.D. Pa.

18   1989) (refusing to disclose information where "discovery would reveal the targets of

19   electronic surveillance, thereby compromising intelligence sources and methods"); *United*

20   *States v. Ott*, 637 F. Supp. 62, 65-66 (E.D. Cal. 1986) (noting that "[i]n the sensitive area of

21   foreign intelligence gathering, the need for extreme caution and sometimes even secrecy

22   may not be overemphasized" and holding that "there is no need for disclosure to protect the

23   respondent's legitimate interests"), aff'd 827 F.2d 473 (9th Cir. 1987).

24        In support of the argument that they should be able to review the government's

25   submissions, plaintiffs cite a case where the Court declined to disclose the state secrets at

26   issue. Pltfs. Mem. at 4 (citing *DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327 (4th

27   Cir. 2001)). In *DTM Research*, the government invoked the state secrets privilege in

28

1    support of its motion to quash third-party subpoenas. The district court granted the motion

2    to quash, and the Court of Appeals affirmed. Despite having protected the state secrets

3    information, the *DTM Research* court declined to dismiss the case because, unlike here, that

4    case was not one in which "the very question upon which the case turns is itself a state

5    secret, or the circumstances make clear that sensitive military secrets will be so central to

6    the subject matter of the litigation that any attempt to proceed will threaten disclosure of the

7    privileged matters." 245 F.3d at 334 (internal quotations omitted). Instead, the state secrets

8    in that case were "not central" to the question of liability and could be excluded from trial

9    without fundamentally impairing the litigation. *Id.* Here, plaintiffs have alleged in their

10    complaint that AT&T has been authorized by the government to assist it with a secret

11    surveillance program. *Ipso facto*, then, "the very question upon which the case turns is

12    itself a state secret," *id.*, and the government has accordingly sought dismissal of the entire

13    action. *DTM Research* is irrelevant.

14    **B.**    **The Court Cannot Adjudicate Plaintiffs' Prima Facie Claims Until It Reviews**

15           **The Classified Submissions.**

16    Plaintiffs claim that their *prima facie* case can be fully presented and litigated based

17    solely on their existing evidence and that, therefore, this Court need not review any

18    classified materials to assess those claims. This argument fundamentally misconstrues the

19    state secrets doctrine, the significance of the Klein evidence, the law that would govern any

20    litigation of the merits of plaintiffs' claims, and, most importantly, the effect the

21    government's assertion of the state secrets privilege has on AT&T's ability to defend itself

22    in this action.

23    Plaintiffs contend that the Klein Declaration is itself sufficient to make out a prima

24    facie case on their statutory claims. But even if one focused only on the two claims as to

25    which plaintiffs make any argument, the Court could not determine the validity of those

26    claims without first evaluating information covered by the government's state secrets

27    assertion. ███████████████████████████████████████

28

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████

4    AT&T cannot confirm or deny any of the facts on which plaintiffs' complaint is

5 based. But it is certain that the Klein Declaration and its associated exhibits are insufficient

6 to demonstrate any illegal conduct by AT&T. ████████████████████████

7 ████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████ Plaintiff's purported expert, of course,

13 has no knowledge whether this is true or not.

14    Even accepting their allegations as true, plaintiffs' declarations fail to establish their

15 claims. Key factual issues that bear directly on the viability of their legal claims and

16 AT&T's defenses are subject to the Government's state secrets assertion and are

17 unavailable. Without either confirming or denying the plaintiffs' assertions, ████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ████████████████████████████████████████████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28

1　██████████████████████████████████████████████████

2　███████████████████████████████████████████████

3　███████████████████████████████████████████████████

4　███████████████████████████████████████████████████

5　██████████████████████████████████████████████████

6　██████████████████████████████████████

7　███████████████████████████████████████████████████

8　████████████████████████████████████████████████████

9　████████████████████████████████████████████████████

10　███████████████████████████████████████████████████

11　███

12　　　　Accordingly, without admitting or denying any factual assertions by the plaintiffs, it

13　is clear they lack even prima facie evidence of any governmental interception or electronic

14　surveillance of any communications – much less any illegal activity.  No such evidence

15　could possibly be developed without delving deeply into matters covered by the

16　government's existing state secrets assertion.

17　　　　Plaintiffs' request that this Court nonetheless proceed based on their "evidence" –

18　and only their evidence – is essentially a request that the Court presume guilt on the part of

19　AT&T.  This is precisely the approach attempted in and rejected by *Halkin v. Helms*, 598

20　F.2d 1 (D.C. Cir. 1978), in which the Court refused to assume from the mere fact that

21　warrantless acquisitions of communications occurred that individuals on NSA watch lists

22　were actually being surveilled by the government.  *Id.* at 10.  There, as here, plaintiffs

23　attempted to circumvent the assertion of a state secrets privilege by asking the court to draw

24　unsupported inferences against private defendants, but the Court of Appeals recognized

25　that:

26　　　　　　The underlying premise of the argument is that the defendants
　　　　　　should not be permitted to avoid liability for unconstitutional
27　　　　　　acts by asserting a privilege which would prevent plaintiffs

28

1   from proving their case. The premise is faulty. The
    defendants are not asserting the privilege to shield allegedly
2   unlawful actions; the state secrets privilege asserted here
    belongs to the United States and is asserted by the United
3   States which is not a party to the action. It would be
    manifestly unfair to permit a presumption of acquisition of
4   the watchlisted plaintiffs' international communications to run
    against these defendants.
5

6   598 F.2d. at 10. As that court concluded, "[n]ot only would such a presumption be unfair to

7   the individual defendants who would have no way to rebut it, but it cannot be said that the

8   conclusion reasonably follows from its premise." *Id.* Plaintiffs' suggestion that they have

9   established a prima facie case requests exactly such a presumption and asks this Court to

10  draw unsupported factual and legal inferences AT&T would have no fair opportunity to

11  rebut in light the government's state secrets assertion.

12  **C.    Plaintiffs Cannot Obtain Any Discovery Or Litigate Any Facts Relating To**

13       **AT&T's Immunity Before This Court Has Resolved The Government's State**

14       **Secrets Motion.**

15       As Plaintiffs recognize, section 2511(2)(a)(ii) provides absolute statutory immunity

16  "[n]otwithstanding any other law" to any provider of wire or electronic communications

17  that provides the government with "information, facilities, or technical assistance" if such

18  provider has been provided with appropriate governmental authorizations. 18 U.S.C. §

19  2511(2)(a)(ii) ("No cause of action shall lie in any court against any provider  or wire or

20  electronic communications . . . for providing information, facilities or assistance in

21  accordance with the terms of a . . . certification under this chapter"). And, as AT&T Corp.

22  has explained in its motion to dismiss, a provider of wire or electronic communications also

23  enjoys both absolute and qualified common-law immunity for alleged assistance to the

24  government that the government has assured the provider is lawful. *See* AT&T Motion at

25  13-19.

26       Plaintiffs are wrong in suggesting that the Court could adjudicate as a factual matter

27  the question whether AT&T has immunity from suit or allow discovery of any government

28

1    authorizations or assurances AT&T may have received without reviewing the government's

2    classified state secrets showing.[8]  As the government explained in its motion to dismiss, its

3    state secrets assertion "covers *any* information tending to confirm or deny" whether "AT&T

4    was involved with any" of the "alleged intelligence activities."  Motion to Dismiss of the

5    United States at 17-18.

6          The existence or non-existence of any such government authorizations or assurances

7    is quite obviously information that would tend to confirm or deny AT&T's involvement

8    with the alleged government intelligence activities and is thus squarely within the

9    government's state secrets assertion.  Accordingly, the Court could not adjudicate, or allow

10   discovery on, the alleged existence of any such authorizations or assurances without first

11   considering and rejecting the government's state secrets assertion.  *See* Motion to Dismiss

12   of the United States at 23 ("even if Plaintiffs speculated and alleged the absence of section

13   2511(2)(a)(ii) authorization, they could not meet their burden of proof on the issue because

14   information confirming or denying AT&T's involvement in the alleged intelligence

15   activities is covered by the state secrets assertion").  And, as explained above, the Court

16   could not do that without first considering and rejecting the government's classified state

17   secrets submission.

18          Plaintiffs nonetheless contend that the existence of any such certifications "cannot

19   be immunized from disclosure on the ground of the 'state secrets privilege.'"  Pltfs. Mem. at

20   8.  That is so, they claim, because "[d]iscovery of such certifications . . . is *required* by"

21   section 2511(2)(a)(ii).  *Id.* at 14 (emphasis added).  Both the premise and the conclusion are

22   wrong.  Section 2511(2)(a)(ii) does not require discovery of anything.  To the contrary, it

23   *forbids* providers from disclosing any such certifications "except as may otherwise be

24   required by legal process."  18 U.S.C. § 2511(2)(a)(ii).

25

26   _____

27   [8] The Court is, however, free to resolve these issues based on the fatal defects in plaintiffs'
     pleadings, as we have contended it should in our motion to dismiss.

28

1    But even if § 2511(2)(a)(ii) did generally require or authorize discovery of

2    certifications, that could not overcome the Executive's constitutionally-based privilege to

3    protect from disclosure information about the existence or non-existence of *particular*

4    certifications where it is necessary to protect military or state secrets – as the Ninth Circuit

5    squarely held in *Kasza v. Browner*, 133 F.3d 1159, 1167-68 (9th Cir. 1998). In *Kasza*, the

6    plaintiffs contended that a federal statute narrowly codified the scope of the President's

7    privilege to exempt federal facilities from environmental information disclosure

8    requirements and that no broader exemption could be asserted under the state secrets

9    privilege. The Court rejected that argument, equating it to an assertion that Congress had

10   "preempted" the President's federal common law state secrets privilege. *Id.* at 1167. The

11   Court explained that any such argument must necessarily fail unless "the statute speaks

12   directly to the question otherwise answered by the common law," *id.* (*quoting County of*

13   *Oneida v. Oneida Indian Nation*, 470 U.S. 226, 236-37 (1985)), and it cautioned that

14   statutes "are to be read with a presumption favoring the retention of long-established and

15   familiar principles, except when a contrary statutory purpose to the contrary is evident." *Id.*

16   at 1167 (*quoting United States v. Texas*, 507 U.S. 529, 434 (1993)). The Court then

17   rejected the preemption claim, finding "no Congressional intent to replace the government's

18   evidentiary privilege to withhold sensitive information in litigation by providing" a

19   statutory exemption. *Id.* at 1168 ("At times the purposes of the privilege and the exemption

20   may overlap, but that does not mean that [the statute] 'speaks directly' to the existence, or

21   exercise, of the privilege in every RCRA action"; "if a facility hasn't been exempted . . . it

22   might still be the case that disclosure of discrete items of relevant information would affect

23   the national interest").

24       The same conclusion is compelled here. Nothing in section 2511(2)(a)(ii) remotely

25   suggests that Congress intended to deprive the Executive Branch of the ability to assert its

26   privilege to deny discovery that would risk harm to national security – even assuming that

27   Congress could do so consistent with core constitutional separation of powers principles.

28

1  *See, e.g., Frost v. Perry*, 161 F.R.D. 434, 439 (D. Nev. 1995) ("the Court finds it

2  implausible that Congress, without 'more explicit statutory language and legislative

3  comment,' intended to preempt or supersede a common law privilege with constitutional

4  underpinnings) (*quoting Fogerty v. Fantasy, Inc.*, 510 U.s. 517, 534 (1994)). Indeed, §

5  2511 evinces precisely the opposite intent: its principal thrust is to *forbid* any disclosure of

6  a certification until after the Attorney General has been notified and thereby given an

7  opportunity to interpose the kinds of privileges or objections he has asserted in this case. In

8  other words, the statute is, on its face, designed to *preserve* the very privilege the plaintiffs

9  claim it overrides. *See* H.R. Rep. No. 95-1283, at 99 n.53 (1978) ("The notice provision is

10  intended to provide sufficient time for the Government to intervene to quash a subpoena or

11  otherwise take legal action to prevent disclosure if it so desires.").

12      Here, of course, the government already has exercised its discretion to invoke the

13  state secrets privilege to deny discovery of any information that would confirm or deny

14  AT&T's participation in the alleged government intelligence activities or any certifications

15  or other authorizations that AT&T may or may not have received. The Court accordingly

16  cannot adjudicate the question whether AT&T has section 2511(2)(a)(ii) immunity from

17  plaintiffs' claims or allow discovery of the existence or non-existence of any certifications

18  AT&T may have received without reviewing the government's classified state secrets

19  showing. Because plaintiffs acknowledge that the existence of a certification could provide

20  AT&T with complete immunity from suit or, alternatively, a good-faith defense to all their

21  claims, it is apparent that, for this reason alone, plaintiffs' claim that they "can make their

22  case based on the public record," Pltfs. Mem. at 5, is flat wrong.

23      In all events, AT&T has numerous other legal and factual defenses that would be

24  implicated by litigation of this case, regardless of whether or not certifications exist. To

25  take just one example already cited in AT&T's motion to dismiss, even if one assumes that

26  AT&T participated in the terrorist surveillance program as alleged and that it did not enjoy

27  statutory immunity, AT&T would still be entitled to assert the common law immunities

28

1    from suit that are available to telecommunications carriers who are alleged to be

2    cooperating with surveillance activities that the government has assured the carrier are

3    lawful. *See, e.g., Smith v. Nixon*, 606 F.2d 1183, 1191 (D.C. Cir. 1979); *Halperin v.*

4    *Kissinger*, 424 F. Supp. 838, 846 (D.D.C. 1976), *rev'd on other grounds*, 606 F.2d 1192

5    (D.C. Cir. 1979). Consideration of absolute or qualified common law immunity, to the

6    extent they did not provide a basis for dismissal on the pleadings, would entail detailed

7    consideration of the facts and circumstances of the carrier's cooperation, including the

8    representations made to the carrier, what specific actions were taken by the carrier's

9    employees, what role the carrier had in the surveillance, and what, if any, use was made of

10    any data. All of this is within the scope of the United States' existing claim of privilege,

11    and evaluation of these issues could not possibly occur without first confronting that claim.

12

*   *   *   *

13

14         The appropriate way to resolve the state secrets issue in this case is the normal and

15    accepted way: this Court should review the classified submission of the United States,

16    decide whether it satisfies the legal criteria for invoking the state secrets privilege and

17    supports the government's request for dismissal of this case, and rule accordingly. There is

18    no reason to deviate from this established procedure or to accept plaintiffs' invitation to

19    engage in legal contortions in an attempt to avoid confronting the threshold question on

20    which most other questions in this case depend. Until that question is resolved, no

21    discovery of information covered by the government's assertion of privilege, including the

22    existence *vel non* of certifications, should be ordered.

23

24

25

26

27

28

AT&T's REPLY MEM. IN RESPONSE TO COURT'S MAY 17
MINUTE ORDER
No. C-06-0672-VRW

1 **III.    CONCLUSION.**

2        For the foregoing reasons, the Court should adhere to its current plan and review the

3 government's classified submissions prior to argument on the pending motions to dismiss

4 on June 23, 2006.  No discovery should be ordered unless and until those motions are

5 denied.

6

7 Dated: May 24, 2006.

8

9 PILLSBURY WINTHROP                    SIDLEY AUSTIN LLP
    SHAW PITTMAN LLP                      DAVID W. CARPENTER
10 BRUCE A. ERICSON                      DAVID L. LAWSON
    DAVID L. ANDERSON                     BRADFORD A. BERENSON
11 JACOB R. SORENSEN                     EDWARD R. MCNICHOLAS
    BRIAN J. WONG                         1501 K Street, N.W.
12 50 Fremont Street                     Washington, D.C.  20005
    Post Office Box 7880
13 San Francisco, CA  94120-7880

14

    By ____/s/ Bruce A. Ericson____       By ___/s/ Bradford A. Berenson____
15      Bruce A. Ericson                       Bradford A. Berenson

16
                *Attorneys for Defendants AT&T CORP. and AT&T INC.*
17

18

19

20

21

22

23

24

25

26

27

28
AT&T's REPLY MEM. IN RESPONSE TO COURT'S MAY 17
                                    MINUTE ORDER
                                    No. C-06-0672-VRW