1  Karl Olson (SBN 104760)
   Erica L. Craven (SBN 199918)
2  LEVY, RAM & OLSON LLP
   639 Front Street, 4th Floor
3  San Francisco, CA 94111
   Telephone: 415-433-4949
4  Facsimile: 415-433-7311

5  Attorneys for Intervenors *San Francisco Chronicle*,
   *Los Angeles Times*, Associated Press,
6  *San Jose Mercury News*, Bloomberg News,
   and *USA Today*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T CORP., et al.<br><br>Defendants. | CASE NO. CV-06-0672-VRW<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTIONS FOR LEAVE TO INTERVENE AND UNSEAL RECORDS**<br><br>Date: June 23, 2006<br>Time: 9:30 a.m.<br>Place: Courtroom 6, 17th Floor<br>[The Hon. Vaughn R. Walker]<br><br>**Complaint Filed:** January 31, 2006 |

Case No. CV-06-0672-VRW – REPLY MEMORANDUM IN SUPPORT OF
MOTIONS FOR LEAVE TO INTERVENE AND UNSEAL RECORDS

**TABLE OF CONTENTS**

**Page #**

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. THE PRESS' MOTION TO INTERVENE SHOULD BE GRANTED, IN LIGHT OF ABUNDANT CASE LAW AFFIRMING THE RIGHT OF THE PRESS AND PUBLIC TO INTERVENE IN ORDER TO VINDICATE THE RIGHT OF ACCESS TO INFORMATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. AT&T HAS MADE NEITHER A LEGAL NOR A FACTUAL SHOWING JUSTIFYING SEALING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. This Court Has Made No Finding That Permanent Sealing Is Appropriate. . . . . 5

    B. AT&T Makes No Showing, Legally or Factually, That Either the Preliminary Injunction Motion or the Declarations Filed in Connection With It Contain Protectable Trade Secrets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1. The "Compelling Reasons" Standard, and the Strong Presumption of Access, Applies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2. No Showing of Trade Secrets, and in Any Event Widespread Disclosure Defeats Trade Secret Claim. . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. NATIONAL SECURITY INTERESTS DO NOT JUSTIFY CLOSURE OR SEALING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Cases**

Avirgan v. Hull
  118 F.R.D. 257 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bartnicki v. Vopper
  532 U.S. 514 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Beckman Industries v. International Ins. Co.
  966 F.2d 470 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

Detroit Free Press v. Ashcroft
  303 F.3d 681 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

DVD Copy Control Ass'n Inc. v. Bunner
  (2003) 31 Cal. 4th 864 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Foltz v. State Farm Mutual Auto. Ins. Co.
  331 F.3d 1122 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Hagestad v. Tragesser
  49 F.3d 1430 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

Kamakana v. City and County of Honolulu
  2006 U.S. App. LEXIS 12101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 13, 14

Leucadia, Inc. v. Applied Extrusion Technologies
  998 F.2d 157 (3rd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Nebraska Press Assn. v. Stuart
  427 U.S. 539 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

New York Times Co. v. United States
  (1971) 403 U.S. 713 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Phillippines v. Westinghouse Elec. Corp.
  949 F.2d 653 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Press-Enterprise Co. v. Superior Court
  464 U.S. 501 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Press-Enterprise Co. v. Superior Court
  478 U.S. 1 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Public Citizen v. Liggett Group
  858 F.2d 775 (1st Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Richmond Newspapers v. Virginia
  448 U.S. 555 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

San Jose Mercury News, Inc. v. United States District Court
    187 F.3d 1096 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

State of California ex rel. Lockyer v. Safeway, Inc.
    355 F. Supp. 2d 1111 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Moussaoui
    65 Fed. Appx. 881, 2003 U. S. App. LEXIS 9170 (4th Cir. 2003) . . . . . . . . . . . . . . . 14

United States v. Western Processing Co., Inc.
    133 F.R.D. 157 (W.D. Wash. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Statutes**

California Civil Code sections

    3426.1(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    3426.1(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**I.      INTRODUCTION**.

AT&T's Opposition to these motions to intervene and to unseal records makes neither a factual nor a legal showing why the declarations filed with plaintiffs' preliminary injunction motion and the other records which are the subject of these motions should remain sealed.  Its opposition fails to overcome what the Ninth Circuit has called the "strong presumption in favor of access."  (Kamakana v. City and County of Honolulu, 2006 U.S. App. LEXIS 12101, at *10.)  AT&T nowhere establishes any of the fundamental elements of a "trade secret" and doesn't even try to argue that there is an actual or potential economic market in intercepting communications and turning them over to the government.  Even if there was a valuable "trade secret" in how AT&T intercepted communications – and AT&T makes no such showing – the basics of that "trade secret"  have been widely publicized by both Wired News and a host of general circulation newspapers, including those seeking unsealing here.

In short, the proverbial cat is out of the bag, and there is no reason why the documents which are the subject of this motion should not be unsealed.  The public interest in unsealing is at its zenith here, and the commercial or proprietary interests of AT&T in sealing are, at this point, nil.

The motions to intervene and unseal should be granted.[1]

---

[1] The day before this Reply Brief was to be filed, plaintiffs filed an administrative motion to file their Opposition to the Motion to Dismiss under seal, stating "AT&T has maintained that information discussed in plaintiffs' Opposition is trade secret information." (Docket No. 183 [motion to seal], 184 [Markman Declaration], 185 [proposed order], and 181 and 182 [notice of manual filing].  That Opposition should, for the reasons discussed *infra*, not be sealed.  Plaintiffs' counsel has indicated that the only alleged "trade secret" information referred to in the Opposition is the Klein and Marcus material which was also discussed in the preliminary injunction papers, and that plaintiffs themselves would not otherwise have tried to file the motion under seal. (Olson Reply Decl. ¶4.)  For reasons discussed *infra*, none of that material should be sealed and, *a fortiori*, there is no reason the entire opposition should be sealed merely because one party contends that part of it should be sealed.  Indeed, the fact that plaintiffs are trying to file an entire 60-page Opposition under seal in deference to AT&T's trade secret contention illustrates the problems being created by AT&T's insistence on sealing all of the Klein and Marcus material.

## II. THE PRESS' MOTION TO INTERVENE SHOULD BE GRANTED, IN LIGHT OF ABUNDANT CASE LAW AFFIRMING THE RIGHT OF THE PRESS AND PUBLIC TO INTERVENE IN ORDER TO VINDICATE THE RIGHT OF ACCESS TO INFORMATION.

It is well settled that the press has the right to intervene in order to vindicate its right, and the public's, of access to information. As the Ninth Circuit explained in <u>San Jose Mercury News, Inc. v. United States District Court</u>, 187 F.3d 1096, 1100 (9th Cir. 1999), "Nonparties seeking access to a judicial record in a civil case may do so by seeking permissive intervention under Rule 24(b)(2)." <u>San Jose Mercury News</u> cites numerous cases for that elementary proposition: <u>see</u>, <u>e.g.</u>, <u>Hagestad v. Tragesser</u>, 49 F.3d 1430, 1432 (9th Cir. 1995) [permissive intervention granted to nonparty pressing federal common law right of access]; <u>Beckman Industries v. International Ins. Co.</u>, 966 F.2d 470, 473 (9th Cir. 1992) [approving permissive intervention as method for challenging protective order under Rule 26(c)]; <u>Phillippines v. Westinghouse Elec. Corp.</u>, 949 F.2d 653, 657 (3rd Cir. 1991) [permissive intervention granted to non-party newspaper pressing both First Amendment and common law right of access].

Indeed, the landmark U.S. Supreme Court cases affirming the right of access to court proceedings were all pressed by newspapers. (<u>See</u>, <u>e.g.</u>, <u>Richmond Newspapers v. Virginia</u>, 448 U.S. 555 (1980) [finding right of access to criminal trials]; <u>Press-Enterprise Co. v. Superior Court</u>, 464 U.S. 501 (1984) [right of access to jury voir dire]; <u>Press-Enterprise Co. v. Superior Court</u>, 478 U.S. 1 (1986) [right of access to preliminary hearings].)

AT&T makes two arguments against intervention; neither has merit. First, AT&T argues that the press' interests are adequately represented by plaintiffs. (Opp. at 4.) Not so. Indeed, <u>San Jose Mercury News</u> illustrates why and how the press' interests are not adequately represented by a party to a lawsuit. In that case, the plaintiffs sued a municipality alleging maintenance of a hostile work environment. The defendants hired an expert to investigate the allegations. The plaintiffs sought production of the report; the district court ordered production of the report but the parties stipulated to a protective order which kept it from becoming public. (<u>San Jose Mercury News</u>, supra, 187 F.3d at 1098.) Thus, while the plaintiffs may have sought production of the report at one time, they eventually agreed to a protective order as a price for

obtaining the report. (Id. at 1101.) The facts of San Jose Mercury News are typical: the parties to a lawsuit are concerned first and foremost with their own interests and winning the case, not with the public's right of access to information. The press, on the other hand, is concerned with its and the public's right of access to information, and has no desire to take sides in a dispute. Accordingly, the press' interest here is independent of the parties' and permissive intervention is proper, as the courts have consistently held.[2]

The record of this case illustrates the above point that the interests of the press and parties are different. AT&T points out that the plaintiffs and AT&T met and conferred, as directed by the Court, and "reached agreement on redacting the text of the Klein Declaration and the Preliminary Injunction Memorandum. Accordingly, on May 25, plaintiffs filed lightly redacted versions of each (Dkt. 147, 149). . ." (AT&T's Opposition, Docket 160, at 3:13-16.) While it is true that the parties met on this issue, it is not true, as AT&T asserts, that the plaintiffs are representing the press' interests. Plaintiffs agreed to a redacted version of the Klein Declaration which still falls far short of what should be made public. Indeed, plaintiffs themselves support the press' motion (Docket No. 161), but for reasons of their own – presumably because they have been filing briefs on the merits – plaintiffs have not briefed this

---

[2] AT&T cites only one case in which a media entity was denied leave to intervene. That case, United States v. Western Processing Co., Inc., 133 F.R.D. 157, 158-59 (W.D. Wash. 1990), is a 16-year-old district court decision from Washington which in one paragraph which cited no case law found that the issue of whether a Special Master should grant a protective order "is merely a tangential element of the discovery process and is not itself an issue related to the claims and defenses in the main contribution/allocation action." (Id. at 159.) Western Processing is not persuasive in light of the Ninth Circuit's subsequent decisions in Beckman and San Jose Mercury News, and it is in any event distinguishable because the records sought here are far more than "a tangential element of the discovery process," they are important declarations filed in connection with a preliminary injunction motion. The other cases cited by AT&T on the intervention issue either granted intervention or did not involve press efforts to seek access to information. Indeed, Avirgan v. Hull, 118 F.R.D. 257 (D.D.C. 1987) granted intervention as of right to the Village Voice newspaper where, even though it "agreed substantially with plaintiffs' position, the Village Voice articulated at the hearing the interests of the press seeking access to Robinette's deposition sufficiently independent of plaintiff to warrant granting intervention as of right." (Id. at 258 fn. 2.) Avirgan supports granting intervention both as of right under Rule 24(a) and permissively under Rule 24(b).

motion while the press has. In short – as is invariably the case – the parties have tended to their own interests and left it to the press to vindicate the public's right of access to information.

AT&T also argues – apparently both as a reason to deny intervention and to deny the unsealing motion – that the press is guilty of "dilatory conduct." (Opposition at 7.) The Ninth Circuit has squarely rejected AT&T's "delay" argument. In San Jose Mercury News, supra, the newspaper waited 12 weeks after the entry of a protective order before seeking to intervene. The Ninth Circuit commented: "delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records." (187 F.3d at 1101, citing Beckman, 966 F.2d at 471 (affirming intervention 2 years after settlement); Public Citizen v. Liggett Group, 858 F.2d 775, 785 (1st Cir. 1988). Accordingly, intervention should be granted here, where the press waited, at most, a few weeks before formally seeking to intervene.[3]

Finally, AT&T argues that granting intervention to the press "may unnecessarily protract these proceedings." (Opposition at 6.) We respectfully submit that delay is neither the desired nor the likely outcome of intervention. Indeed, in San Jose Mercury News the newspaper could have appealed the denial of a motion for permissive intervention but it instead sought – and obtained – mandamus relief from the Ninth Circuit. The Ninth Circuit recognized, "In cases involving a request by the press for access to judicial records, this court has recognized that the delay entailed by a direct appeal can constitute an irreparable injury." (San Jose Mercury News, supra, 187 F.3d at 1099.) The court held, "the decay of newsworthiness would constitute an injury better addressed by a writ of mandamus than by a direct appeal." (Id. at 1100.) The press wants, and is entitled to, access to the records in question now, not later, and its intervention will not inject undesirable delay into these proceedings.[4]

---

[3] The press filed its papers an hour before the first hearing in this case on May 17, after its counsel had been told the day before that AT&T would be seeking to close the May 17 hearing. Olson Reply Declaration paragraph 2.

[4] AT&T's citation to DVD Copy Control Ass'n Inc. v. Bunner (2003) 31 Cal. 4th 864 (AT&T Opposition at 5:12-18) is inapposite. That case involved an injunction against non-media internet web-site operators who allegedly knew or had reason to know that trade-secret DVDs had been acquired by improper means. (Id. at 870.) Bunner is distinguishable on several

## III. AT&T HAS MADE NEITHER A LEGAL NOR A FACTUAL SHOWING JUSTIFYING SEALING.

### A. This Court Has Made No Finding That Permanent Sealing Is Appropriate.

AT&T's first argument on the merits of sealing is that the Court has already permanently decided the question. (Opposition at 6-8.) Both the Court's comments at the May 17 hearing and its Minute Order following that hearing belie this contention. At argument, the Court evinced a desire to <u>temporarily</u> preserve the status quo and, far from deciding that the preliminary injunction motion, the Klein Declaration and exhibits or the Marcus Declaration (Docket #s 31, 32) merited permanent sealing, it directed the parties to <u>agree</u> on <u>unsealing</u> most or all of the documents. Indeed, AT&T <u>concedes</u> that the Court directed the parties to file a public version of the documents and AT&T characterizes the resulting public version as "lightly redacted." The Court would not have told the parties to <u>agree</u> on making at least some of the Klein Declaration and preliminary injunction motion public if it had concluded the entire documents merited sealing.

The Court's order that the parties agree on a public version, and AT&T's characterization of the result as "lightly redacted," is significant. It shows that AT&T originally tried to seal the <u>entirety</u> of documents which, at most, <u>might</u> merit "light redacting." Moreover, the Marcus Declaration (Docket # 32) remains sealed in its entirety though it would seem to cover the same subject matter as documents which are now, in AT&T's words, "lightly redacted."

AT&T asserts that the press was "rebuffed" by the Court at the May 17 hearing. (Opposition at 7.) Again, the record is to the contrary. The press' counsel was engaged on May 16 and E-filed a brief an hour before the May 17; the court apparently (and understandably) had not seen the brief before the May 17 argument and neither asked for nor received argument on

---

grounds: it involved a misappropriation of trade secrets (a program called DeCSS that decrypted movies stored on DVDs and enabled users to copy and distribute those movies) by the website operator not present here, the web site operator knew or had reason to know the secrets were acquired by improper means (no such allegation is made here), <u>and it did not involve court records as to which there is a strong presumption of access</u>. The press here has not "disregarded AT&T's property rights" (AT&T Opp. at 5) and in any event <u>Bunner</u> says nothing about either court records or press intervention, the point on which AT&T cites <u>Bunner</u>.

1  the merits of sealing from the press.  Rather, the Court's May 17 order simply kept papers under
2  seal "pending further order of court," it directed the parties to attempt to agree upon public
3  redacted versions of the Klein Declaration and preliminary injunction motion (Docket Numbers
4  30 and 31), and to "specifically identify the portions, if any, of these documents that each party
5  believes are sealable."  The Court also specifically directed that those seeking to intervene file a
6  written application to do so.

7  Accordingly, both the Court's comments on May 17 and its written order reflect that it
8  was only beginning – and not ending – the process of deciding whether any documents merited
9  permanent sealing.  Tellingly, the Court's May 17 Minute Order made no finding (as would be
10 required by Local Rule 79-5 and the case law) that any portion of the documents filed by AT&T
11 or the other parties was in fact a trade secret or otherwise protectable.  In fact, the Court
12 observed that "there is a great deal of information" in the preliminary injunction motion that
13 "can probably be unsealed" and directed the parties to meet with an eye toward unsealing most
14 or all of it.  (Transcript of May 17 hearing at 29:8-15.)  Most of the motion has now been filed
15 publicly.  (Docket No. 149.)  If the Court's May 17 order had been for permanent sealing, the
16 plaintiffs obviously would not have filed the public redacted versions of the Klein Declaration
17 and preliminary injunction motion as they did on May 25 (Docket Nos. 147 and 149).

18 In a related argument, AT&T complains that it shouldn't have to justify sealing and that
19 the press seeks to impose "the labor of Sisyphus on AT&T."  This argument lacks merit both
20 factually and legally.  First, AT&T has never established that any portion of the records which
21 remain sealed are in fact entitled to sealing, and it would not impose "the labor of Sisyphus" on
22 the team of at least nine lawyers representing AT&T to require a showing that overcomes what
23 the Ninth Circuit has recently (and repeatedly) called the "strong presumption in favor of
24 access".  (See Kamakana v. City and County of Honolulu, 2006 U.S. App. LEXIS 12101 at *10,
25 citing Foltz v. State Farm Mutual Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003) ["'strong
26 presumption in favor of access' is the starting point"].)

Case No. CV-06-0672-VRW – REPLY MEMORANDUM IN SUPPORT OF
MOTIONS FOR LEAVE TO INTERVENE AND UNSEAL RECORDS                                              Page 6

Indeed, it is common for documents once sealed to be unsealed at the behest of press intervenors. (Kamakana, supra, 2006 U.S. App. LEXIS 12101 at *2 ["during the litigation scores of documents were filed under seal in accord with a stipulated protective order"; Magistrate Judge after exhaustive review "unsealed virtually all of the pleadings and documents" upon motion of newspaper intervenor after case settled]; Foltz, supra, 331 F.3d at 1138 [on motion by intervenors after settlement of lawsuit, Ninth Circuit finds district court abused its discretion in sealing discovery materials].) In short, no finding has been – or should be – made that anything filed in this court merits further sealing.

**B.    AT&T Makes No Showing, Legally or Factually, That Either the Preliminary Injunction Motion or the Declarations Filed in Connection With It Contain Protectable Trade Secrets.**

AT&T accuses the press of "misconstru[ing] the law applicable to sealing" and spends three pages attempting to distinguish the unsealing cases cited by the press on the grounds that none involved protectable trade secrets. (Opposition at 8-11.) But AT&T cites not one case which holds that court records were properly sealed because of trade secrets. While Kamakana, supra, did acknowledge in dicta that trade secrets might in an appropriate case be a compelling enough reason to justify sealing court records (2006 U.S. App. LEXIS at *11), the Court's holding affirmed a decision unsealing "virtually all of the pleadings and documents" in the case. AT&T attempts to distinguish the raft of cases cited in the press' Opening Brief on the grounds that "all are distinguishable because the information sought to be sealed in those cases did not rise to the level of a trade secret and because the parties' other grounds for sealing were particularly weak." (AT&T Opposition at 9-10.) But those exact words describe the situation here: AT&T nowhere sets forth the elements of a trade secret and nowhere describes, even in general terms, how the sealed material in this case might meet those elements. Nor does AT&T cite a single case which found that a protectable trade secret merited sealing. Its failure to cite a single case affirming the sealing of trade secret material is fatal to its opposition to this motion to unseal.

### 1. The "Compelling Reasons" Standard, and the Strong Presumption of Access, Applies.

AT&T attempts to distinguish the Kamakana case on the grounds that a "compelling reasons" standard applies only to dispositive motions but only a "good cause" standard applies to other motions. (Opposition at 9.) AT&T's argument fails for three reasons. First, the distinction made in Kamakana is between "a 'sealed discovery document [attached] to a non-dispositive motion'" – as to which a good cause showing might be enough because "those documents are often 'unrelated, or only tangentially related, to the underlying cause of action'" – and documents which relate to "the resolution of a dispute on the merits," including dispositive motions, as to which the "strong presumption in of access to judicial records" applies. (Kamakana, supra, 2006 U.S. App. LEXIS 12101 at * 12 to *14.)

Under Kamakana, non-discovery documents submitted in connection with a preliminary injunction motion are certainly subject to the strong presumption in favor of access and the "compelling reasons" standard applies. "We adopted this principle of disclosure because the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring that 'public's understanding of the judicial process and of significant public events. (Id. at *12; see also Leucadia, Inc. v. Applied Extrusion Technologies, 998 F.2d 157, 164 (3rd Cir. 1993) [applying presumptive right of access to non-discovery motions including preliminary injunction motions]; Cal. Rules of Court 243.1 Advisory Committee Comment [distinguishing between discovery motions and documents submitted to the court as a basis for adjudication].)

Second, it appears that the Klein and Marcus documents have now been referred to in plaintiffs' Opposition to the Motion to Dismiss, which is undoubtedly "dispositive." Third, given that there has been no showing made of a trade secret and that any such material has now been publicly disclosed, AT&T could not meet even a lesser "good cause" showing if that were the standard (and that is not the standard).

The "strong presumption of access" applies, and it has not been overcome.

### 2. No Showing of Trade Secrets, and in Any Event Widespread Disclosure Defeats Trade Secret Claim.

A trade secret must (1) "[d]erive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (See California Civil Code section 3426.1(d), part of the Uniform Trade Secrets Act.)

AT&T has not established either of these fundamental elements of a trade secret. First, AT&T has not even attempted to argue that splitting a fiber optic cable to allow the government to intercept private communications – the general subject of the Klein and Marcus Declarations and the preliminary injunction motion (Docket #s 30, 31 and 32) – is a valuable trade secret. Indeed, given that there are now approximately 20 lawsuits throughout the country claiming that telecommunications providers <u>other than</u> AT&T do the same thing and cooperate with the government in the alleged spying program, it is difficult to see how "building a better wiretap" could be a commercially valuable trade secret.

Second, even if the technology had once been commercially valuable, it is no longer: the technology has been disclosed to the world at large by being posted by Wired News and other media. (See Exhibit A to Karl Olson Reply Declaration filed herewith, "Whistle-Blower's Evidence, Uncut," Wired News May 22, 2006, going into extensive detail about "a diagram showing the splitting of the light signal, a portion of which is diverted to 'SG3 Secure Room,'" i.e., the so-called 'Study Group' spy room," and describing in detail the equipment in the splitter cabinet including various Sun devices, Juniper M40e and M160 backbone routers, various tables, and a Narus STA 6400 which "consists of standalone traffic analyzers that collect network and customer usage information in real time directly from the message . . . These analyzers sit on the message pipe into the ISP (internet service provider) cloud rather than tap into each router or ISP

device.")⁵  In short, there is nothing "secret" about the material AT&T wants to keep sealed – it has been disclosed to the world at large.

Unable to dispute the fact that most, if not all, of the Klein Declaration and exhibits thereto have now been made public, AT&T bitterly complains about this state of affairs, comparing the press to a child who murders his parents.  (Opposition at 11.)  AT&T's over-the-top rhetoric is entirely misplaced.  The press has done nothing wrong and violated no court orders.  Reporting on matters of the utmost public interest – even AT&T concedes that "what the government allegedly is doing, or not doing, in the area of foreign surveillance" is a matter of understandable interest to the press and public (Opposition at 12) – is the time-honored function of the press and one at the heart of the First Amendment.  It may be inconvenient for AT&T, but it is not unlawful.  (See, e.g., Bartnicki v. Vopper, 532 U.S. 514, 528 (2000) [affirming right of press to publish information even if it was given to press by someone who acted illegally].)⁶

AT&T's argument on this point is especially misplaced given its own lack of effort to maintain its alleged secrets.  A trade secret must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  (Uniform Trade Secrets Act, Cal. Civil Code section 3426.1(d)(2).)  AT&T's Opposition nowhere explains what, if any, measures it took to prevent Mr. Klein from disclosing its alleged secrets to others, i.e., whether he signed a non-disclosure agreement or the terms thereof, and it is similarly silent on whether it has sought any

---

⁵ The Wired News May 22 posting occurred after this Court's May 17 Order, and was followed by several newspaper accounts which reported thereon.  Thus, even if AT&T had any trade secrets on May 17 – a point we vigorously dispute – it no longer has them.

⁶ AT&T cites USA Today's online link to copies of materials that may have been "the same as those at the heart of the lawsuit against AT&T."  (Opp. at 3:8-12; Ericson Decl., Ex. A; Opp. at 5:1-7.)  AT&T's suggestion that USA Today or any other newspaper acted improperly is misplaced.  The press linked to Wired News' documents, there is no contention that either Wired or the press obtained the materials illegally and this Court did not forbid the press from publishing information in its possession.  Nebraska Press Assn. v. Stuart, 427 U.S. 539, 559 (1976) [prior restraints are "the most serious and least tolerable" infringement on free speech]; New York Times Co. v. United States (1971) 403 U.S. 713, 714 [Supreme Court lifts prohibition on publishing the "Pentagon Papers," citing the heavy presumption that prior restraints are constitutionally impermissible].

Case No. CV-06-0672-VRW – REPLY MEMORANDUM IN SUPPORT OF
MOTIONS FOR LEAVE TO INTERVENE AND UNSEAL RECORDS    Page 10

legal recourse against Mr. Klein for disseminating its alleged trade secrets to the world at large and the World Wide Web. AT&T's silence in this regard dooms its argument. (See, e.g., In re Providian Credit Card Cases, 96 Cal. App. 4th 292, 308 [citing company's failure to give alleged trade secret material heightened "Confidential" designation].

AT&T's arguments against this motion suffer from inconsistency. On the one hand, AT&T argues that "[t]he isolated pieces of information that the Press and other members of the media have leaked to the public are not the same as the material that remains under seal." (Opposition, Docket No. 160, at 12:3-5.) On the other hand, AT&T argues that the parties have agreed on a "lightly redacted" version of the Klein Declaration and preliminary injunction motion and that "the process worked" without the press' involvement.

Neither of AT&T's arguments hold water. The public redacted version of the Klein Declaration (Docket 147) which resulted from the meeting between plaintiffs and AT&T is a document with significant redactions making it difficult to read but which, on its face, reveals that no true "trade secrets" would be revealed in a completely unsealed version. For example, paragraph 8 of the still-redacted Klein Declaration (Document number 147) says that between 1998 and 2003 Mr. Klein worked in an AT&T office located on a "redacted" street in a "redacted" city as one of a "redacted" number of Computer Network Associates in the office. The site manager was a management-level technician with the title of "redacted" (hereafter referred to as FSS # 1). How is the street or the city where Mr. Klein worked for five years a trade secret? How is the title of his site manager a trade secret particularly when we know his abbreviation, FSS #1? AT&T never explains any of this.

And even if such prosaic and obvious information was once a trade secret – a point the press must vigorously contest – it surely isn't a trade secret any more. Wired News on May 22 stated, "In San Francisco, the 'secret room' is Room 641A at 611 Folsom Street, the site of a large SBC phone building, three floors of which are occupied by AT&T. High-speed fiber-optic circuits come in on the eighth floor and run down to the 7th floor where they connect to routers for AT&T's WorldNet service, part of the latter's vital 'Common Backbone.' In order to snoop

on these circuits, a special cabinet was installed and cabled to the 'secret room' on the 6th floor to monitor the information going through the circuits. (The location code of the cabinet is 070177.04, which denotes the 7th floor, aisle 177 and bay 04.) The 'secret room' itself is roughly 24-by-48 feet, containing perhaps a dozen cabinets including such equipment as Sun servers and two Juniper routers, plus an industrial-size air conditioner." (Exhibit A to Karl Olson Reply Declaration filed herewith, page 4 of 8.)

Thus, we already know the "location code of the cabinet", but AT&T – for reasons we find difficult to fathom – is still telling the Court that it has a "trade secret" in the block and city on which a large AT&T facility in San Francisco is located. Similarly, AT&T is still trying to redact Mr. Klein's declaration's reference to the "location code" (Docket No. 147, paragraph 27, page 5 of Klein Declaration), even though that same information is revealed by the Wired article.

In short, the redacted version of the Klein Declaration at this point serves only to make it difficult to read and to keep the public from assessing Mr. Klein's veracity and whether Wired and the press are publishing the same version of the declaration that was filed in court. The redactions do not, however, protect any legitimate trade secrets, and AT&T does not even attempt an explanation of how the still-redacted information contains protectable trade secrets in light of what has now been made public. The entire declaration, along with the entire preliminary injunction motion papers (Docket No. 149) and the still-sealed Marcus Declaration (Docket No. 32), should be made public.

Having conceded that the horse is pretty much out of the barn, AT&T argues in cryptic fashion that "[t]he isolated pieces of information that the Press and other members of the media have leaked to the public are not the same as the material that remains under seal." (Opposition at 12.) But AT&T doesn't even attempt to explain how what Wired and the print media have already disclosed differs from what is filed under seal. Indeed, <u>it doesn't even come forth with any declaration from AT&T personnel</u> attempting to explain the difference, if any, between what is filed under seal and what has now been disclosed.

A party seeking to overcome the "strong presumption in favor of access" (<u>Kamakana</u>, <u>supra</u>, 2006 U.S. App. LEXIS 12101 at *10) bears the burden of overcoming this strong presumption by meeting the "compelling reasons" standard and must "articulate compelling reasons supported by specific factual findings." (<u>Id.</u> at *10.) A court must "conscientiously balance the competing interests" and "'base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture.'" (<u>Id.</u> at *11, citing <u>Hagestad v. Tragesser</u>, 49 F.3d 1430, 1434 (9th Cir. 1995).) AT&T makes neither a specific nor even a generalized showing of any trade secret or of the difference, if any, between what has been publicly disclosed and what remains filed under seal.

Finally, AT&T asserts that the interests it seeks to protect are "at most of tangential interest to the press or the public, but those interests are important to AT&T." (Opp. at 13.) Once again, AT&T's argument lacks either factual or legal merit. Factually, it cannot be said that the public has no interest in knowing how or whether its telephone calls or Internet usage are being intercepted or spied upon by the government or the nation's largest telecommunications provider.

AT&T's paternalistic "this isn't really all that interesting" argument lacks legal merit as well. U.S. District Judge King of the Central District of California recently explained in eloquent terms the public and press' interest in access to court records:

> "The public interest in access to the court records addressed in these cases does not turn on how titillating a story is, how many newspapers a company sells, how many articles are published about a story, or how many members of the public come forward to express their personal interest in learning more details about it. The presumption of access exists because the citizens are entitled to observe, monitor, understand and critique their courts – even in the most mundane of cases that excite *no* media interest – because what transpires within our courtrooms belongs to our citizens in a fundamental way. This is why we require not just a showing of some possible reason to justify closure of the court to the public, but a showing of a *compelling* one."

(<u>State of California ex rel. Lockyer v. Safeway, Inc.</u>, 355 F. Supp. 2d 1111, 1125 (C.D. Cal. 2005) [unsealing, on motion of newspaper, all of a Mutual Strike Assistance Agreement entered

into between grocery stores and rejecting claims of confidentiality; emphasis in original].) In short, AT&T's "this isn't all that interesting" argument fails both factually and legally.

## IV. NATIONAL SECURITY INTERESTS DO NOT JUSTIFY CLOSURE OR SEALING.

The press' Opening Brief on this motion (Docket No. 133, pages 11-16) explained the importance of public access to these proceedings and the fact that these access principles – and the "compelling reasons" standards enunciated by the Ninth Circuit in Kamakana and other cases – apply if the Court decided to review the government's classified memorandum and declarations. AT&T "leave[s] it to the government to defend its privilege" and states that access to the government's *ex parte, in camera* submissions "is the government's fight rather than AT&T's fight." (Opposition, Docket No. 160, at 12:11-17.) The government, meanwhile, has apparently not opposed the press' motion.

We will, therefore, not repeat the points advanced in our opening brief. The central point is this: "[T]he mere assertion of national security concerns by the Government is not sufficient reason to close a hearing or deny access to documents." (United States v. Moussaoui, 65 Fed. Appx. 881, 887, 2003 U. S. App. LEXIS 9170 at *9 (4th Cir. 2003). The reason is as old as the Republic: "Democracies die behind closed doors. The First Amendment, through a free press, protects the people's right to know that their government acts fairly, lawfully, and accurately... When government begins closing doors, it selectively controls information rightfully belonging to the people. Selective information is misinformation. The Framers of the First Amendment 'did not trust any government to separate the true from the false for us.'" (Detroit Free Press v. Ashcroft, 303 F.3d 681, 683 (6th Cir. 2002).) Those principles apply to, and should govern, this Court's review of any classified material including the classified memorandum and classified declarations of Messrs. Negroponte and Alexander.

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

AT&T cites not a single case which has affirmed a court record sealing on grounds of a trade secret, and it makes neither a general nor the required specific showing of how the sealed records were a trade secret in the first place or how they could be now in the face of widespread disclosure of the Klein material. The public has a paramount public interest in knowing whether and how its calls or Internet usage may have been intercepted, and AT&T has shown no commercial interest – much less a compelling one – in keeping sealed the material in question. The motions to intervene and to unseal records should be granted.

Dated: June 9, 2006                  LEVY, RAM & OLSON LLP

By:      */s/ Karl Olson*
Karl Olson
Attorneys for *San Francisco Chronicle*, *Los Angeles Times*, The Associated Press, *San Jose Mercury News*, Bloomberg News and *USA Today*