| | |
|---|---|
| 1 | PILLSBURY WINTHROP SHAW PITTMAN LLP |
|   | BRUCE A. ERICSON  #76342 |
| 2 | DAVID L. ANDERSON  #149604 |
|   | JACOB R. SORENSEN  #209134 |
| 3 | MARC H. AXELBAUM  #209855 |
|   | BRIAN J. WONG  #226940 |
| 4 | DANIEL J. RICHERT #232208 |
|   | 50 Fremont Street |
| 5 | Post Office Box 7880 |
|   | San Francisco, CA  94120-7880 |
| 6 | Telephone:  (415) 983-1000 |
|   | Facsimile:  (415) 983-1200 |
| 7 | Email:  bruce.ericson@pillsburylaw.com |
| 8 | SIDLEY AUSTIN LLP |
|   | DAVID W. CARPENTER (admitted *pro hac vice*) |
| 9 | BRADFORD A. BERENSON (admitted *pro hac vice*) |
|   | DAVID L. LAWSON (admitted *pro hac vice*) |
| 10 | EDWARD R. McNICHOLAS (admitted *pro hac vice*) |
|   | 1501 K Street, N.W. |
| 11 | Washington, D.C.  20005 |
|   | Telephone:  (202) 736-8010 |
| 12 | Facsimile:  (202) 736-8711 |
| 13 | Attorneys for Defendants |
|   | AT&T CORP. and AT&T INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TASH HEPTING, GREGORY HICKS, CAROLYN JEWEL and ERIK KNUTZEN on Behalf of Themselves and All Others Similarly Situated, <br><br>                                  Plaintiffs, <br><br>     vs. <br><br> AT&T CORP., AT&T INC. and DOES 1-20, inclusive, <br><br>                                  Defendants. | No. C-06-0672-VRW <br><br> **OPPOSITION OF DEFENDANT AT&T CORP. TO MOTION OF LYCOS, INC. AND WIRED NEWS FOR ORDERS PERMITTING INTERVENTION AND UNSEALING DOCUMENTS** <br> **[DKT. 139]** <br><br> Courtroom: 6, 17th Floor <br> Judge:     Hon. Vaughn R. Walker <br> Hearing:   June 23, 2006 <br> Time:      9:30 a.m. |

700471386v2

AT&T's Opposition to Motion of Lycos, Inc. and
Wired News to Intervene and Unseal Documents
No. C-06-0672-VRW

Dockets.Justia.com

## TABLE OF CONTENTS

                                              **Page**

I.    INTRODUCTION. ................................................................................................1

II.   STATEMENT OF FACTS. ..................................................................................2

III.  ARGUMENT. ......................................................................................................5

      A.    Wired should not be granted leave to intervene. ......................................5

      B.    Wired offers no good reason why the Court should reverse its decision of May 17 and disclose AT&T's trade secrets. ...............................5

            1.    Wired's misconduct does not justify further erosion of AT&T's rights. ..................................................................................6

            2.    Wired's misconduct aside, much of AT&T's rights remain intact. ........................................................................................9

IV.  CONCLUSION. ................................................................................................10

700471386v2                         i                 AT&T's Opposition to Motion of Lycos, Inc. and
Wired News to Intervene and Unseal Documents
No. C-06-0672-VRW

**TABLE OF AUTHORITIES**

**Page**

**Cases**

Bartnicki v. Vopper,
    532 U.S. 514 (2001) .................................................................................................. 8

Harbor Insurance Co. v. Schnabel Foundation Co.,
    946 F.2d 930 (D.C. Cir. 1991) ................................................................................... 6

Kamakana v. City and County of Honolulu,
    No. 04-15241, 2006 U.S. App. LEXIS 12101, 2006 WL 1329926
    (9th Cir. May 17, 2006) ........................................................................................ 8, 9

Nixon v. Warner Communications, Inc.,
    435 U.S. 589 (1978) .................................................................................................. 9

Religious Tech. Center v. Netcom On-Line Comm. Servs.,
    923 F. Sup. 1231 (N.D. Cal. 1995) ........................................................................... 8

**Statutes and Codes**

California Civil Code
    Section 3426.1 ...................................................................................................... 7, 8

California Code of Civil Procedure
    Section 2019.210 ...................................................................................................... 8

United States Code
    Title 18, section 2511(c) ........................................................................................... 8

**Rules and Regulations**

Civil Local Rules
    Rule 7-9 ..................................................................................................................... 6

700471386v2      - ii -      AT&T's Opposition to Motion of Lycos, Inc. and
Wired News to Intervene and Unseal Documents
No. C-06-0672-VRW

## I. INTRODUCTION.

The motion of Lycos, Inc. and Wired News (collectively, "Wired") for orders permitting Intervention and unsealing documents ("Wired Motion," Dkt. 139) reargues matters that have been fully briefed in no fewer than ten briefs and were fully argued at a hearing held six days before Wired filed its motion. The relief Wired seeks is but a subset of the relief sought by the *San Francisco Chronicle*, the *Los Angeles Times*, the Associated Press, the *San Jose Mercury News*, Bloomberg News and *USA Today* (collectively, the "Press") in their motion to intervene and unseal documents ("Press Motion," Dkt. 133), filed four days before Wired's motion. Wired seeks to unseal the Klein Declaration (Dkt. 31) and the Marcus Declaration (Dkt. 32) (collectively, the "Sealed Documents"). The Press Motion also seeks to unseal both (and much more). The anti-sealing viewpoint was well-represented by plaintiffs and *amici curiae* before Wired or the Press moved to intervene. Wired's motion to intervene (like the Press's motion) should be denied.

The Wired Motion says little that the parties, the Press and the *amici* have not already said – again and again. Wired offers no good reason why the Court should reconsider its May 17 ruling. Wired posted on its website documents that it claims to be among the documents belonging to **AT&T CORP.** ("AT&T") the Court had ordered sealed. Wired says it published excerpts of the documents a few hours before the Court ruled and more excerpts a few days after the Court ruled. Wired thus confesses to leaking documents it knew AT&T claims to be trade secrets and the Court had ordered to remain under seal. Wired argues that this misconduct—the misappropriation and publication of a portion of AT&T's trade secrets—requires the unsealing of the redacted or unpublished portions of the Sealed Documents. But Wired has no authority for this proposition.

The Wired Motion is also partially moot. With AT&T's consent, Plaintiffs have filed a redacted version of the Klein Declaration. Although the Court did not order the parties to do so, Plaintiffs and AT&T now are negotiating a redacted version of the Marcus Declaration, which they hope to file before the Court hears the Wired Motion.

The Court should deny Wired's motion, not reverse its order of May 17.

1    **II.    STATEMENT OF FACTS.**

2    Wired started covering this case the day it was filed—January 31, 2006.[1]

3    Plaintiffs filed the Klein Declaration and the Marcus Declaration under seal on
4    April 5, 2006. Dkts. 31-32. Two days later, Wired published two articles on the case. The
5    first, entitled "Whistle-Blower Outs NSA Spy Room," reporting that the EFF had filed
6    under seal certain AT&T proprietary documents and noted that AT&T "has until Thursday
7    to file a motion to keep the documents sealed." The second, entitled "Wiretap Whistle-
8    Blower's Account," purports to be a statement from Mark Klein.[2] We cannot in a public
9    document compare it to the Klein Declaration but the Court can do so and note that the two
10   are not the same document.

11   On April 12, 2006, Wired published another article. This one described AT&T's
12   motion seeking return of the Klein Documents from Plaintiffs.[3] On May 2, 2006, Wired
13   published an article reporting on the government's intent to invoke the military and state
14   secrets privilege.[4]

15   Meanwhile, the parties and *amici* filed eight briefs debating whether the Sealed
16   Documents should remain under seal. The matter was set for hearing on May 17.

17   At 2:00 a.m. on May 17, 2006, just hours before the hearing, Wired published two
18   more articles on the case, "Stumbling Into a Spy Scandal" and "AT&T Whistle-Blower's
19   Evidence."[5] The first describes a written statement purportedly written by Mark Klein and
20   quotes several "high-level network experts" who supposedly had reviewed "documents"
21   provided by Klein "to civil liberties groups and *The New York Times* . . . ."[6] The second
22   purports to be, verbatim and in its entirety, a statement written by Klein in January 2004,

---

[1] Ryan Singel, "AT&T Sued Over NSA Eavesdropping," Jan. 31, 2006, attached as Exhibit A to the Declaration of Bruce A. Ericson, filed herewith.
[2] Ericson Decl. Exs. B-C.
[3] Ryan Singel, "AT&T Seeks to Hide Spy Docs," Apr. 12, 2006, Ericson Decl. Ex. D.
[4] Ryan Singel, "Feds Go All Out to Kill Spy Suit," May 2, 2006, Ericson Decl. Ex. E.
[5] Ericson Decl. Exs. F-G.
[6] Id. Ex. F at 3.

700471386v2          - 2 -          AT&T's Opposition to Motion of Lycos, Inc. and
                                    Wired News to Intervene and Unseal Documents
                                    No. C-06-0672-VRW

with a cover message dated December 31, 2005.  The statement purports to describe some AT&T documents.  Hyperlinked to the statement, however, are only two pages.[7]

On 10 a.m. on May 17, 2006, the Court heard argument on the sealing issues. Counsel for Wired appeared at the hearing.[8]  At the hearing, the Court ordered that "plaintiffs, plaintiffs' counsel and their consultants not further disclose [the Klein] documents to anyone or any entity without further order of the Court."[9]  Following the hearing, the Court entered a Minute Order, directing that:

> [a]ll papers heretofore filed or lodged under seal shall remain under seal pending further order of court.  Counsel for plaintiffs and AT&T are directed to confer and to submit by May 25, 2006, jointly agreed-upon redacted versions of the Preliminary Injunction Motion (Doc #30) and the Klein Declaration (Doc #31)."[10]

Later the same day, Wired published a third article describing the hearing and quoting the Court as saying, "'[i]t appears that there is a possibility that the documents contain significant trade secrets or proprietary information belonging to AT&T,' said Walker."[11]

Five days later, at 2 a.m. on May 22, 2006 Wired published an article entitled "Whistle-Blower's Evidence, Uncut."[12]  This article republishes Klein's statement. Hyperlinked was a .pdf of 29 pages, of which eight pages are said to be "select pages from the AT&T documents."[13]  Again, we cannot in a public document compare these "select pages" to the exhibits to the Klein Declaration but the Court can do so and note that the exhibits to the Klein Documents run not to eight pages but to over 120 pages.  Whether rightly or wrongly, Wired says it "understood" these documents were "among the

---

[7] Id. Ex. G at 4, 6.
[8] Transcript of May 17, 2006 Hearing ("Tr.," Dkt. 138), at 3.
[9] Tr. at 27-28.
[10] Civil Minute Order dated May 17, 2006 ("Minute Order," Dkt. 130).
[11] Ryan Singel, "Court Deals AT&T a Setback," May 17, 2006, Ericson Decl. Ex. H.
[12] Ericson Decl. Ex. I.
[13] Ericson Decl. Ex. G.

documents that were exhibits to the Klein Declaration and remain under seal."[14]

The same day, Wired published an article entitled "Why We Published the AT&T Docs," explaining its reasons for disclosing documents it knew to be covered by the Court's Sealing Order.[15] Wired knew the Court had said the documents might "contain significant trade secrets or proprietary information belonging to AT&T,"[16] and acknowledged that the documents remained under seal by court order, but Wired begged to differ:

> Based on what we've seen, Wired disagrees. In addition, we believe the public's right to know the full facts in this case outweighs AT&T's claims to secrecy.
>
> As a result, we are publishing the complete text of a set of documents from the EFF's primary witness in the case, former AT&T employee and whistle-blower Mark Klein – information obtained by investigative reporter Ryan Singel through an anonymous source close to the litigation. The documents, available on Wired as of Monday, consist of 30 pages, with an affidavit attributed to Klein, eight pages of AT&T documents marked "proprietary," and several pages of news clippings and other public information related to government-surveillance issues.[17]

Again, this eight pages compares to what Wired asserts are the over 140 pages of documents that are attached to the redacted Klein declaration.

Meanwhile, Plaintiffs and AT&T met and conferred pursuant to the Minute Order and agreed that much of the Klein Declaration and the Preliminary Injunction Motion could be publicly filed. On May 25, with AT&T's consent, plaintiffs filed redacted versions of each.[18] The next day, Wired published an article entitled "Court Filing Confirms Spy Docs," which argued that the redacted filings "mesh[ed] with" the Klein statement and the "select documents" previously published by Wired.[19]

Although the Minute Order did not address the Marcus Declaration, the parties are negotiating redactions of it and hope to file a redacted version before the June 23 hearing.

---

[14] Wired Motion at 1.

[15] Evan Hansen, "Why We Published the AT&T Docs," May 22, 2006, Ericson Decl. Ex. J.

[16] Ericson Decl. Ex. H.

[17] *Id.* Ex. J at 1-2.

[18] Dkts. 147, 149.

[19] Ericson Dec. Ex. K.

700471386v2 - 4 - AT&T's Opposition to Motion of Lycos, Inc. and
Wired News to Intervene and Unseal Documents
No. C-06-0672-VRW

1 **III. ARGUMENT.**

2 **A. Wired should not be granted leave to intervene.**

3 AT&T briefed this issue in its opposition to the Press Motion and will not burden

4 the Court by repeating those arguments here.[20] Suffice it to say that Wired's case for

5 intervention is even weaker than the Press's case for intervention because Wired made its

6 motion later and seeks narrower relief.

7 The documents Wired seeks to unseal are but a subset of the documents the Press

8 has moved to unseal. Wired does not explain what its motion – filed four days after the

9 Press filed its motion – adds to the mix. This is a critical failing, particularly in light of the

10 fact that the Press Motion itself says nothing that plaintiffs and *amici* didn't already say in

11 the eight briefs they filed before the Court ruled on the sealing issues.

12 Wired argues that it has a "unique perspective in this case."[21] If that is anything

13 other than hot air, it is a reference to the fact that Wired has leaked eight pages of what it

14 claims are AT&T Proprietary documents—and did so despite actual knowledge that AT&T

15 claims its documents contain trade secrets and the Court had ordered that such documents

16 remain under seal. A "unique perspective" indeed—that of the scofflaw.

17 **B. Wired offers no good reason why the Court should reverse its decision of**

18 **May 17 and disclose AT&T's trade secrets.**

19 Neither Wired nor the Press have explained how they get around the Court's well-

20 reasoned sealing order of May 17. Indeed, Wired's Motion fails to quote or address the

21 Court's sealing order head on.[22]

22 Like the Press Motion, Wired's Motion offers an exegesis of abstract legal

23

24 ───────────────

25 [20] See AT&T's Opp. to Press Motion (Dkt. 160) at 3:18-6:9, which we incorporate by reference.

26 [21] Wired Motion at 3.

27 [22] The Press Motion mentions the orders in passing, but minimizes them, characterizing them as the Court's off-hand comments. *See* Dkt. 160 at 6-7.

28

principles,[23] but no reason for the Court to reverse itself.  It is Wired's burden to explain why the Court should reconsider its rulings.  *See* Civ. L.R. 7-9 (requiring for a motion for reconsideration both leave of court and a showing of either a material change of law or facts or a failure of the Court to consider facts or law that were presented to it).  Like the Press, Wired has failed to carry that burden.

Burden aside, there are two principal reasons why Wired's position is wrong.  First, Wired (and the Press) incorrectly view this as a situation in which AT&T's rights (to its trade secrets and the integrity of its network) have been waived and thus no longer exist.  But AT&T has not waived anything; rather, Wired has misappropriated and misused AT&T's property—and willfully and repeatedly so.  Second, in an effort to support its erroneous claim that all this information is in the public domain, Wired (and the Press) grossly overstate the extent to which AT&T's interests have been compromised.  While they choose to characterize this as a situation in which all of AT&T's horses have left the barn (ushered out at 2 a.m. by them), that is very far from being the case.

**1.     Wired's misconduct does not justify further erosion of AT&T's rights.**

Wired maintains that the Klein and Marcus Declarations should be unsealed in their entirety because "*the course of events has overtaken the sealing order*."[24]  The "course of events" to which Wired refers is, of course, its own leaking of subsets of the information that the Court ordered remain under seal.  Wired's argument appears to be that because it has openly chosen to disregard the Court's order (not to mention AT&T's rights) the Court should reverse that order.  Talk about chutzpah.[25]

Wired knew that this Court had concluded that "[i]t appears that it is quite possible that those documents contain significant trade secret or proprietary information properly

---

[23] AT&T has already addressed those principles and need not burden the Court by repeating them here.  See Dkt. 160, at 8-11.

[24] Wired Motion at 1 (emphasis in original).

[25] *Harbor Insurance Co. v. Schnabel Foundation Co.,* 946 F.2d 930, 937 n.5 (D.C. Cir. 1991) (quoting the "legal definition of chutzpah":  "a young man, convicted of murdering his parents, who argues for mercy on the ground that he is an orphan.").

700471386v2                                    - 6 -                        AT&T's Opposition to Motion of Lycos, Inc. and
                                                                                                       Wired News to Intervene and Unseal Documents
                                                                                                                                       No. C-06-0672-VRW

belonging to one or the other of the AT&T entities."[26] Wired knew that the Court had ordered that the documents remain sealed. Nonetheless, Wired "obtained and published many of the documents at issue" anyway.[27]

Section 3426.1 of the California Civil Code defines misappropriation of a trade secret as "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "[d]isclosure or use of a trade secret of another without express or implied consent by a person who: . . . At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: (i) Derived from or through a person who had utilized improper means to acquire it; . . . or (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use."[28] Wired's behavior fits both prongs of this definition perfectly.

Wired admits it obtained the documents in its possession from an "anonymous source close to the litigation."[29] The only possible sources "close to the litigation" that have copies of AT&T confidential documents are plaintiffs, their counsel, their retained experts and consultants, and Mr. Klein. Under the terms of the Minute Order, plaintiffs, their counsel, experts and consultants were all under a duty not to disclose the contents of the Sealed Documents.[30] Likewise, Mr. Klein was a party to a confidentiality agreement barring the retention or disclosure of any AT&T proprietary information.[31] And some of the pages published by Wired are stamped "AT&T Proprietary."[32]

---

[26] Tr. at 26:25-27:3. Wired knew this because its lawyer attended the hearing and because it quoted the Court's remarks in its article of May 22. Ericson Decl. Ex. H.

[27] Wired Motion at 3.

[28] Wired is familiar with this statute, citing it in its Motion. Wired Motion at 7.

[29] Ericson Decl. Ex. J.

[30] Minute Order at 1.

[31] *See* Declaration of James W. Russell in Support of Motion to Defendant AT&T Corp. to Compel Return of Confidential Documents (Dkt. 42) ¶ 9, Ex. A.

[32] Ericson Decl. Ex. I at 13-15, 17.

1   Under the plain language of section 3426.1, Wired's conduct in "obtain[ing] and publish[ing] many of the documents at issue" (*id.* at 3) was neither lawful nor innocent. "At the time of [Wired's] disclosure or use," Wired "knew or had reason to know that [its] knowledge of the trade secret was" either "[d]erived from or through a person who had utilized improper means to acquire it" or "[d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use."[33] By its own admission, Wired has avidly covered the sealing issues raised in this case. Thus, Wired was aware of the obligations that any source "close to the litigation" had to maintain the confidentiality of the Sealed Documents. By obtaining the materials from such a source and then publishing them on its website, Wired misappropriated trade secrets.

Wired offers no authority for its proposition that the unlawful publication of information it knew was covered by the Court's sealing order somehow merits the relief it seeks.[34] And none exists. The information contained in the Sealed Documents – including what remains sealed of the Marcus Declaration – remains valuable trade secrets.[35] AT&T has established that it has compelling interests in protecting the commercial value of its trade secrets and the integrity of its network. Wired, like the Press, may deride those interests, but they remain of utmost importance to AT&T. And, as the Court recognized in its sealing order, the law protects these interests.[36]

---

[33] Cal. Civ. Code § 3426.1.

[34] Wired cites *Bartnicki v. Vopper,* 532 U.S. 514 (2001) and *Religious Tech. Center v. Netcom On-Line Comm. Servs.,* 923 F. Sup. 1231, 1255-57 (N.D. Cal. 1995) but neither is on point. *Bartnicki* did not involve trade secrets and in fact expressly stated that it did not consider trade secret issues: "We need not decide whether that interest is strong enough to justify the application of [18 U.S.C.] § 2511(c) to disclosures of trade secrets or domestic gossip or other information of purely private concern." 532 U.S. at 533. *Religious Tech. Center* considers the elements of a damages claim for misappropriation of trade secrets, as specified by state law (Cal. Civ. Proc. Code § 2019.210). Nothing in either supports the notion that non-parties have any constitutional or common-law right to possess, review or use other peoples' trade secrets.

[35] AT&T Opp. to Press Motion (Dkt. 160) at 12.

[36] *See also Kamakana v. City and County of Honolulu*, No. 04-15241, 2006 U.S. App. LEXIS 12101, 2006 WL 1329926, *4 (9th Cir. May 17, 2006) (stating that the protection of trade secrets is a "compelling reason" to seal court records: "In general, 'compelling
(continued…)

1   **2.    Wired's misconduct aside, much of AT&T's rights remain intact.**

2   Wired also errs by asserting that little, if anything, of AT&T's rights remain intact.

3   That is bluster, backed by nothing. In a public document we cannot compare what has

4   leaked with what hasn't, but the Court can and judge for itself how much has been leaked

5   and how much has not.

6   This much we can say: Wired has published eight pages of what it says are AT&T

7   documents (a point we will neither confirm nor deny). Taking that claim at face value, the

8   fact remains that Wired itself asserts that the exhibits to the Klein Declaration run to 140

9   pages (again, a point that we will neither confirm nor deny).[37] Thus, Wired, by its own

10  measure, has leaked under six percent of AT&T's property.

11  AT&T has at stake here its own commercial interests. AT&T has a genuine interest

12  in protecting its network from disruption—and so too do the millions of Americans who use

13  that network daily. AT&T also has a genuine interest in protecting its trade secrets. AT&T

14  has developed technology for splitting and cross-cutting fiber optics. While not the sort of

15  stuff that sells newspapers, that technology has commercial value, and it is technology in

16  which AT&T has a substantial lead over its competitors.[38] Wired should not confuse the

17  two sets of interests: the United States' interest in protecting its foreign surveillance

18  activities, whatever they might be; and AT&T's interest in protecting its network and its

19  commercially valuable trade secrets. The interests that AT&T seeks to protect are at most

20  of tangential interest to Wired or the public, but those interests are important to AT&T, and

21  they are interests that the law protects. This Court should protect them too.

---

22  (…continued)
    reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court
23  records exist when such 'court files might have become a vehicle for improper purposes,'
    such as the . . . release [of] trade secrets.") (citing *Nixon v. Warner Communications, Inc.*,
24  435 U.S. 589 (1978)).

25  [37] Ericson Decl. Ex. K at 1.

    [38] Wired says: "There is no 'market' for information on how to install splitters in a fiber-
26  optic network. The information in dispute here has no commercial value; rather it is
    simply *embarrassing* to AT&T . . . ." Wired Motion at 11. That simply is wrong. AT&T
27  has a substantial lead over its competitors in such technology and uses it to make money
    in ways that have nothing whatsoever to do with the subject matter of this litigation.
28

700471386v2                                      - 9 -                    AT&T's Opposition to Motion of Lycos, Inc. and
                                                                                          Wired News to Intervene and Unseal Documents
                                                                                                                      No. C-06-0672-VRW

**IV. CONCLUSION.**

For the foregoing reasons, the Court should deny Wired's motion to intervene and should not reconsider its previous order continuing the seal on documents other than those the parties have agreed to unseal in part.

Dated: June 12, 2006.

>PILLSBURY WINTHROP SHAW PITTMAN LLP
>BRUCE A. ERICSON
>DAVID L. ANDERSON
>JACOB R. SORENSEN
>MARC H. AXELBAUM
>BRIAN J. WONG
>DANIEL J. RICHERT
>50 Fremont Street
>Post Office Box 7880
>San Francisco, CA 94120-7880
>
>SIDLEY AUSTIN LLP
>DAVID W. CARPENTER
>BRADFORD A. BERENSON
>DAVID L. LAWSON
>EDWARD R. McNICHOLAS
>1501 K Street, N.W.
>Washington, D.C. 20005
>
>By      /s/ Bruce A. Ericson
>             Bruce A. Ericson
>
>Attorneys for Defendants
>AT&T CORP. and AT&T INC.